**EXHIBIT D
TO DECLARATION
OF BRIAN WILD**



**State of Oregon Department of Environmental Quality**

# Oregon Environmental Quality Commission Meeting

**Nov. 16-17, 2023**

## Rulemaking, Action Item G
Plastic Pollution and Recycling Modernization Act

## Table of Contents

DEQ Recommendation to the EQC ............................................................................. 1

Introduction ............................................................................................................... 2

Statement of Need ..................................................................................................... 3

Rules Affected, Authorities, Supporting Documents .................................................. 6

Fee Analysis .............................................................................................................. 7

Statement of Fiscal and Economic Impact ............................................................... 10

Racial Equity ........................................................................................................... 25

Environmental Justice Considerations ..................................................................... 28

Federal Relationship ............................................................................................... 29

Land Use ................................................................................................................. 30

EQC Prior Involvement ............................................................................................ 31

Advisory Committee ................................................................................................. 32

Public Engagement .................................................................................................. 34

Implementation ........................................................................................................ 40

Five-Year Review ..................................................................................................... 41

Accessibility Information .......................................................................................... 42

# DEQ Recommendation to the EQC

DEQ recommends that the Environmental Quality Commission adopt the proposed rules and rule amendments seen in Attachment 2 as part of Chapter 340 of the Oregon Administrative Rules.

**Proposed EQC motion:**
*"I move that the commission adopt the proposed rules and rule amendments as seen in Attachment 2 as part of Chapter 340 of the Oregon Administrative Rules."*

1

# Introduction

DEQ proposes new and amended rules, as part of Chapter 340, Division 90 of the Oregon Administrative Rules, for the implementation of the Plastic Pollution and Recycling Modernization Act (2021).

DEQ invited public input on the proposed new and permanent rule amendments. Parameters and requirements for the proposed rules specific to the Plastic Pollution and Recycling Modernization Act were established by Senate Bill 582, enacted by the 2021 Oregon Legislature.

# Statement of Need

| Proposed Rule or Topic | Discussion |
|---|---|
| **Local Government Compensation** ||
| What need would the proposed rule address? | The proposed rules address local governments' need for financial support for recycling services. The proposed rules related to local government compensation topics clarify when and how Producer Responsibility Organizations will provide funding or reimbursements to local governments or their collection service provides for:<br>• Transportation costs<br>• New or expanded on-route collection start-up costs<br>• New or expanded depot collection start-up and operational costs<br>• Programs to reduce contamination |
| How would the proposed rule address the need? | For transportation costs, the rules clarify that the transportation of covered recyclable products needing to travel 50 miles or more from a recycling depot or recycling reload facility to a commingled recycling facility or responsible end market are eligible for funding or reimbursement upon request.<br><br>For recycling services expansion, the rules clarify the eligible expenses for the local governments that indicated interest in service expansion through the voluntary completion of the 2023 needs assessment survey. These expenses include:<br>• Expenses for new or expanded on-route start-up costs, including:<br>  o Collection trucks<br>  o Containers or roll carts<br>  o Monitoring equipment<br>  o New program promotional literature<br>  o Staff safety equipment<br>  o Recycling reload facility if none is available or existing facilities are inadequate.<br><br>• Eligible expenses for new or expanded depot collection programs start-up and operational costs, including but not limited to:<br>  o Land acquisition<br>  o Containers<br>  o Signage |

3

| Proposed Rule or Topic | Discussion |
|---|---|
| | o On-site monitoring equipment<br>o Equipment to move, compact, bale, and load recyclables for shipment<br>o Site preparation or other start-up costs<br>o Hiring and training staff, staff safety equipment<br><br>For contamination reduction programming, the rules describe the reimbursement procedures and specify the source of census data that must be used to calculate the annual per capita funding a local government, the local government's service provider or other person authorized by the local government has authorized, to receive. |
| How will DEQ know the rule addressed the need? | The proposed rules in OAR Chapter 340, Division 90, establish the criteria for local governments or their collection service providers to receive funding from PROs to fund recycling collection services. Information provided through the annual reporting requirements and the periodic requirements for PROs to update their operating program plans will allow DEQ to track and review funding disbursement to local governments and/or their service providers over time. |
| **Producer Responsibility Organization Obligations** | |
| What need would the proposed rule address? | The proposed rules address the need to clarify PRO obligations. The rules clarify a variety of elements related to how PROs will establish and operate in Oregon. This includes:<br>• Establishing the initial and annual review fees paid to DEQ<br>• Establishing methods for determining market share and coordination if there are multiple PROs<br>• Clarifying the schedule for program plan updates and amendments<br>• Defining responsible end markets and how PROs will ensure compliance with these standards. |
| How would the proposed rule address the need? | These proposed rules address a need to clarify statutory language involving producer responsibility obligations and requirements for implementing act. The rules require that the PROs implement and meet the responsible end market standards, pay administrative fees to DEQ, and coordinate with other PROs when needed. Additionally, the rules address the need for ensuring confidentiality of specific proprietary |

| Proposed Rule or Topic | Discussion |
|---|---|
|  | information and provides methods for calculating market share and for estimating covered products. |
| How will DEQ know the rule addressed the need? | PROs will report annually on actions to implement an approved program plan and related outcomes. This will provide DEQ the information required to know if the rules are addressing the need. |
| **Recycling Acceptance Lists** | |
| What need would the proposed rule address? | The proposed rule addresses the need for standardization of recycling services in Oregon, including the types of materials collected, and level of collection service across the state regardless of location. |
| How would the proposed rule address the need? | The act describes several different lists and types of materials. These include "covered products," "specifically identified materials," and multiple lists of materials designated as suitable for recycling and which PROs or local governments must collect for recycling. The rules define each list and clarify standards regarding collection targets, performance standards and convenience standards. |
| How will DEQ know the rule addressed the need? | The PROs will have to report to DEQ how they are meeting the specific performance and convenience standards. DEQ Regional Specialist staff will perform compliance inspections. |

# Rules Affected, Authorities, Supporting Documents

## Lead division
Land Quality Materials Management Program

## Program or activity
Plastic Pollution and Recycling Modernization Act

## Chapter 340 actions
- Adopt new rule language
- Amend existing rule language
- Repeal existing rule language

## OAR Chapter 340, Division 90

| Adopt | | | | |
|---|---|---|---|---|
| 340-090-0610 | 340-090-0660 | 340-090-0710 | 340-090-0760 | 340-090-0810 |
| 340-090-0620 | 340-090-0670 | 340-090-0720 | 340-090-0770 | 340-090-0600 |
| 340-090-0630 | 340-090-0680 | 340-090-0730 | 340-090-0780 | |
| 340-090-0640 | 340-090-0690 | 340-090-0740 | 340-090-0790 | |
| 340-090-0650 | 340-090-0700 | 340-090-0750 | 340-090-0800 | |
| **Amend** | | | | |
| 340-090-0005 | 340-090-0030 | 340-090-0090 | 340-090-0380 | |
| 340-090-0010 | 340-090-0040 | 340-090-0110 | 340-090-0410 | |
| 340-090-0015 | 340-090-0042 | 340-090-0140 | 340-090-0430 | |
| 340-090-0020 | 340-090-0080 | 340-090-0190 | | |
| **Repeal** | | | | |
| 340-090-0041 | | | | |
| 340-090-0070 | | | | |

| Statutory Authority - ORS | | | | |
|---|---|---|---|---|
| 459A.975 | | | | |

| Statutes Implemented - ORS | | | | |
|---|---|---|---|---|
| 459A.860- 459.975 | | | | |

## Legislation
Senate Bill 582 (2021)

6

# Fee Analysis

These proposed rules would establish new fees, as directed by legislation.

## Brief description of proposed fees

The Plastic Pollution and Recycling Modernization Act (Senate Bill 582, 2021) requires certain producers[1] of packaging, food serviceware and printing and writing paper to join a Producer Responsibility Organization, which is a nonprofit membership organization that will administer this producer responsibility program. The PRO will propose to DEQ, and then implement, an approved program plan that describes how this will be achieved, including how the PRO will satisfy a wide variety of financial and operational obligations that are contained in statute.

DEQ is required to establish a one-time plan review fee and an annual fee calculated to cover DEQ's administrative costs specific to many elements of the Act. These fees will be paid by PROs, not directly by businesses directly. PROs in turn will recover these and other expenses by assessing membership fees to producers of covered products.

The program plan and annual fees will pay for DEQ's review of the PROs' program plan and DEQ's annual expenses for administering, implementing, and enforcing provisions of act as described in ORS 459A.938(1)(b).

## Reasons

The proposed fees would address policy changes and fees established by statute. The act outlines the obligations of PROs and the proposed fees will allow DEQ to implement the act as directed by the Legislature.

## Fee proposal alternatives considered

DEQ did not consider alternatives. The proposed fee model was established in legislation and DEQ is proposing to implement the model as directed.

## Fee payers

Only Producer Responsibility Organizations would pay these fees to DEQ.

## Affected party involvement in fee-setting process

The proposed fee model, including types of fees and overall structure, was established through collaborative discussions with relevant parties during the legislative development of Senate Bill 582. No PROs for printed paper, packaging, and food serviceware exist within

---

[1] For the purposes of this rulemaking "producers" are largely businesses as defined in ORS 459A.866. Importantly, they are not always the manufacturer of packaging, food serviceware, or printing and writing paper (also referred to as "covered products") but are more often the business users of such products that purchase them from the manufacturer and then sell them in Oregon.

Oregon at this time. However, DEQ's consultations with PROs from other jurisdictions informed the development of these proposed fees.

## Summary of impacts

The proposed fees would be paid by PROs, as established in legislation. PROs in turn will recover their expenses using membership fees paid by entities defined in the act (producers) that produce certain types of products for sale in Oregon.

The proposed fees would support DEQ's administration of the act, specifically:

- Review of program plan and program plan amendment submissions from prospective and existing PROs per ORS 459A.875 and 459A.878 (the program plan review fee); and
- Ongoing administration, implementation, and enforcement of provisions ORS 459A.860 to 459A.975, but excluding ORS 459A.955, 459A.956 and 459A.959 (the annual administration fee). Also excluded is the implementation of ORS 459A.941, which directs DEQ to establish a new program to reduce the environmental impacts of covered products through means other than recycling. That program will be established through a separate fee as required by ORS 459A.941(4). That new fee will be established in a subsequent rulemaking.

The proposed fees are critical to DEQ being able to successfully implement the act, as directed by the Legislature, and to modernize Oregon's recycling systems.

## Fee payer agreement with fee proposal

No PROs for producers of packaged items, paper products and food serviceware were established in Oregon during the first rulemaking so DEQ was not able to solicit direct feedback from these entities as part of the rulemaking process. Representatives of two PROs who operate in Canada did review these rules through their participation on the RAC.

## Links to supporting documents for proposed fees

| Plastic Pollution and Recycling Modernization Act (Senate Bill 582, 2021) | Oregon Legislature website, SB 582 |
|---|---|

## Fee Amount Details

The proposed fee amounts are as follows:

- Program plan review fee: a $150,000 fee paid by a PRO when submitting an initial or renewal program plan program plan. If there are multiple PROs, each will pay the fee. Due to a statutory 10 percent market share minimum for PROs, DEQ expects up to three PROs will initially operate in the system, although it could, theoretically, contain up to 10 PROs.

8

- Annual administration fee: up to $4 million per year paid for the first four program years (2025-2028) and up to $3 million paid per following year (2029 onward).[2] If there are multiple PROs, the fee will be divided among the PROs in proportion to the market share held by each producer participating in each PRO. DEQ may adjust the fee downward in any given year to reflect actual operating costs.

## Fee schedule

The proposed fees include a one-time plan review fee for each PRO established in Oregon and an annual fee for continued improvement and ongoing implementation of recycling modernization programs and activities at DEQ. The plan review fee will become effective in 2024 when prospective PROs submit their plans for a March 31, 2024, deadline. The annual fee will be paid for the first time in 2025 when approved PROs launch their programs on July 1, 2025.

---

[2] The first four annual fees are higher than the later annual fees because they encompass reimbursement of DEQ's start-up costs incurred in 2021-2025.

# Statement of Fiscal and Economic Impact

## Overview

This proposed rulemaking will clarify and implement portions of act, passed by the Legislature in 2021. The act requires producers of covered products to support and expand recycling services for their products in Oregon and requires local governments and the facilities that process commingled (mixed) recyclables to adhere to several new requirements.

These proposed rules address specific topics, including:
- PRO program plan content,
- DEQ administrative fees,
- funding and reimbursement for local governments related to eligible recycling-related expenses,
- creating a materials acceptance list for materials eligible for collection in Oregon,
- collection targets,
- convenience standards, and
- performance standards for recycling of certain materials by PROs

The Materials Management Program started a second rulemaking in July 2023 to implement additional elements of act by building on the foundational structures created in this proposed rulemaking.

The proposed rules and rule revisions included in the rulemaking are based on discussions and input provided by DEQ's Rulemaking Advisory Committee. The RAC included representatives from waste collectors and commingled recycling processing facilities, local governments, non-profit organizations, waste generators, PROs and producers of covered products.

## Fiscal and Economic Impacts Overview

The proposed rules support the actions directed by the Legislature. The proposed local government compensation, materials acceptance lists and PRO obligation rules establish and implement recycling programs and regulatory structures that provide more uniform and equitable access to recycling opportunities for communities across the state.

The proposed rules would address specific barriers to access, such as high transportation costs for rural and remote communities and non-standardization of materials accepted by on-route recycling collection services and drop-off-style depots. Additionally, these rules clarify how PROs will distribute funding to local governments and their service providers[3] across the state for the expansion of recycling collection service.

---

[3] For the purposes of this rulemaking, a local government's service provider is defined in the Act (ORS.459.863(12)) as:
    (a) A collection service franchise holder under ORS 459A.085;

This expansion of services, accompanied by culturally specific outreach and education materials, would provide equitable access to recycling service for all communities across Oregon.

I. **Fiscal Impacts of Local Government Compensation Rules**

A portion of the membership fees collected by the PROs from the producers of covered products would be directed to local governments and their respective service providers. DEQ anticipates several positive impacts related to the requirements in ORS 459A.890 and the proposed rules for this section.

Local governments will be eligible for compensation from the PROs to pay for:
- Specific costs associated with on-route collection
- Specific startup and operational costs at recycling collection depots
- The costs for transporting collected materials from a recycling depot or recycling reload facility to a commingled recycling processing facility or a responsible end market that is 50 miles or further away
- Contamination reduction efforts up to $3 per year per capita. While statute dictates the amount payable to local governments, the proposed rules clarify which census data must be referenced and clarifies the administrative procedures for reimbursement

II. **Fiscal Impacts of Recycling Acceptance Lists Rules**

Proposed rules related to material acceptance lists will require local governments, their service providers, and commingled recycling processing facilities, to collect and process higher volumes and a more complex mix of recyclable materials than is currently the case outside of the Portland metro tri-county region. These higher volumes will increase the costs of collecting and processing recyclables. However, cost increases will be partially offset by reductions in garbage collection and disposal costs in some communities, and some costs will shift from local governments and processing facilities to PROs.

Separately, other proposed rules related to material acceptance lists will impose additional fiscal impacts on PROs to provide convenient recycling services for materials that are not currently collected. These proposed rules will benefit Oregon households and businesses with additional opportunities to recycle and reduced waste management expenses in some communities.

Finally, increased recycling would reduce the pollution associated with virgin resource extraction and manufacturing, which in turn would reduce a wide variety of societal costs such as those associated with climate change, air and water pollution, habitat disruption, and depletion of non-renewable resources.

---

(b) Any person authorized by a city or county to provide recycling collection services described in subsection (25)(a) to (d) of this section; or

(c) Any person authorized by a metropolitan service district to provide recycling collection services described in subsection (25)(d) of this section.

**III.    Fiscal Impacts of Producer Responsibility Organization Obligation Rules**
The proposed rules governing PRO obligations would primarily impact and impose costs upon PROs themselves, with costs passed on to their member producers through membership fees. The rules requiring PROs to meet convenience and performance standards for recycling certain items, along with rules requiring that waste collected for recycling is sent to responsible end markets are likely the most financially impactful to PROs among the proposed rules.[4] Anticipated costs from the responsible end market rules include auditing recycling supply chains and the cost of implementing any improvements identified through the auditing process.

Through the proposed rules, PROs must also pay administrative costs for DEQ's implementation of the act, including the cost of interim coordination among multiple PROs if DEQ approves multiple PRO plans. The rules impose costs on the PROs, which will recoup the expenses by charging producers a membership fee. Related PRO obligation rules will provide several benefits, including:
- Responsible end markets:
  - increased public confidence that materials collected for recycling are recycled
  - maximum environmental benefits and reduced environmental and public harm risk from recycling activities
- Market share and modified market share: fair allocation of costs among PROs and producers
- Fees and PRO coordination: effective administration of the act by DEQ

# Statement of Cost of Compliance

## State agencies
DEQ does not anticipate that state agencies other than DEQ will incur costs or benefits different than those described under the public section, below.

## Local governments
The act provides funding opportunities for all communities, regardless of size, and has some new requirements for cities with populations over 4,000 and other regulated local governments.

DEQ anticipates that local governments may incur compliance costs related to:
- Recordkeeping and invoicing PROs for compensation
- Ongoing operational costs of expanded recycling service that are not eligible for reimbursement
- Collecting the materials on the Local Government Recycling Acceptance List

---

[4] Rules requiring PROs to compensate local governments and their service providers will also impose significant financial impacts on the PROs. However, those requirements are already largely established in statute, whereas the materials on the PRO Recycling Acceptance List, convenience and performance standards for the recycling of such materials, and responsible end market requirements are discretionary and more subject to EQC approval.

Due to variability between local government operations, DEQ is not able to quantify the specific costs of compliance. Most local governments recover oversight and administration expenses through a franchise fee, such as a percentage-of-revenue or percentage-of-expenditure surcharge on franchised services.

### A. Local Government Compensation Rules
### I.        Transportation Costs Reimbursement
Local governments and service providers will work with the PROs directly to determine the method to be used for calculating transportation costs. Local governments may incur some costs associated with recordkeeping and invoicing for compensation.

### II.       Recycling Services Expansion
DEQ anticipates that this proposed rule will result in additional reporting and recordkeeping requirements for those local governments that choose to voluntarily request reimbursement for costs associated with recycling service expansion. These costs will most likely be related to the opportunities for local governments to participate in periodic needs assessment surveys, administered by DEQ or a contractor to DEQ. These surveys determine exact needs and negotiate compensation details with the PROs, while documenting recycling costs and procedures to request reimbursement from PROs. In most cases, any ongoing operational costs that are not eligible for reimbursement by the PRO will likely be recovered through user fees (e.g., garbage bills) as opposed to being an expense to the local government itself.

### III.      Contamination Reduction Programming
DEQ anticipates some fiscal impact created by the proposed rules due to associated recordkeeping costs. Local governments will be responsible for documenting costs and establishing reimbursement procedures with the PROs.

### B. PRO Obligation Rules
DEQ does not anticipate that local governments will incur costs from the rules on PRO obligations. Local governments will benefit from the responsible end market obligation by having increased confidence that the materials accepted for recycling in their communities are being recycled responsibly. Such transparency in turn will increase public confidence in the recycling system. It is difficult to quantify these benefits in direct financial terms.

### C. Recycling Acceptance List
DEQ anticipates that there may be compliance costs for local governments or their service providers for costs associated with collecting the materials on the Local Government Recycling Acceptance List. In most cases, the costs incurred by local governments will be relatively low, because most recycling services are paid for by ratepayers (system users), and not local government funds. The fiscal impacts of the proposed Recycling Acceptance List rules can be categorized by costs associated with on-route collection, collection at disposal sites or depots, and administrative compliance costs.

13

## Producer Responsibility Organizations

As defined in ORS 459A.863, a Producer Responsibility Organization is a nonprofit organization established to administer a producer responsibility program. PROs will have the highest costs of compliance relative to all other parties.

It is important to distinguish between the cost of compliance with statute, and the cost of compliance with the proposed following rules:

### A. Local Government Compensation Rules

DEQ proposes three rules associated with local government compensation: transportation costs reimbursement, recycling service expansion and contamination reduction programming. Currently DEQ is unable to quantify the fiscal impacts of these rules.

#### I.    Transportation Costs Reimbursement

PROs are required to pay for eligible transportation costs established in statute and most of these are not related to this proposed rule.

The proposed rules establish that transportation costs also include administrative costs including, but are not limited to, costs related to staffing and the hiring and managing of staff. The proposed rules shift these costs from local governments and service providers to PROs. DEQ anticipates that administrative costs will be low relative to the magnitude of the transportation costs themselves.

#### II.    Recycling Service Expansion

DEQ anticipates that this proposed rule will result in additional reporting and recordkeeping requirements in those cases where local governments choose to request reimbursement for costs associated with recycling service expansion. The act requires that PROs pay for specific costs related to expanding and providing recycling collection services for covered products, per ORS 459A.890(5)(a). This includes both on-route collection and recycling depot service.

#### III.    Contamination Reduction Programming

The rules related to contamination reduction programming require PROs to establish documentation and reimbursement methods for local governments that request reimbursement.

### B. Recycling Acceptance List Rules

DEQ's estimate of the compliance costs to the PRO compare the costs of DEQ's rule concept against a set of hypothesized alternatives, as opposed to the costs of Oregon's current recycling system. This is because continuation of the current system is not a viable alternative under the act. The act requires the use of a uniform statewide collection list and the provision of programming such as contamination reduction efforts and processing of mixed recyclables at permitted facilities. The discretion available to the EQC as part of this rulemaking is limited to what materials are on that uniform list and how are they collected.

14

An evaluation of option comparisons and associated costs, and an estimate of the costs of Oregon's current recycling system is provided in the Cascadia Consulting Group's 2023 report, "Overview of Scenario Modeling: Oregon Plastic Pollution and Recycling Modernization Act."

The proposed rules establish the contents and complexity of the materials acceptance lists. These proposed rules implement only a portion of the act but may result in financial impacts to PROs if existing recycling services need to expand to accommodate materials added to the list. Expanding services will create new and increased costs related to:
- Collection and processing of materials on the Local Government Recycling Acceptance List
- "Responsible end market" disposition requirements for materials on the Uniform Statewide Collection List
- Recycling materials and achieving collection targets, convenience standards and performance standards for covered products on the PRO Recycling Acceptance List, and requirements to send such materials to "responsible end markets."

**I. Local Government Recycling Acceptance List: Costs associated with the collection and processing of materials on the Uniform Statewide Collection List**
DEQ is not able to fully quantify the specific fiscal impacts of these proposed rules. Fiscal impacts to PROs associated with collection and processing costs for materials on the Uniform Statewide Collection List are limited to the following:
- Reimbursement to local governments and their service providers under ORS 459A.890(5) for expansion of collection service *only to the extent that such expansion is a consequence of a more expansive commingled list than what is currently collected.* In some cases, expansion will be for other reasons, and so will not be a fiscal impact of the Local Government Recycling Acceptance List rule.
- Reimbursement to local governments and their service providers under ORS 459A.890(2) for transportation of collected materials to distant processing facilities or end markets *only to the extent that such transport costs increase due to a more expansive Local Government Recycling Acceptance List.* These impacts are estimated at about $300,000 annually.
- Reimbursement to commingled processing facilities under ORS 459A.920 and .923 *only to the extent that costs (net of revenue) increase due to a more expansive Uniform Statewide Collection List.* DEQ is unable to estimate the extent of the impacts because of the act's integrated components and the concurrent changes (e.g., new permitting requirements for commingled recycling processing facilities) and system efficiencies that will occur.

**II. Impacts associated with responsible end market disposition requirements for materials on the Uniform Statewide Collection List**
Materials in the Uniform Statewide Collection List include most of the materials proposed for the Local Government Recycling Acceptance List, and prompts additional requirements on PROs to ensure that they:
1. Are sent to responsible end markets,

15

2.  Are managed according to the hierarchy of materials management options in ORS 459A.015 and
3.  Are managed in an environmentally protective way through to final disposition.

These requirements may impose compliance costs on PROs because there is a joint obligation for PROs and commingled recycling processing facilities to ensure that materials reach responsible end markets. Currently DEQ does not have sufficient information to estimate associated compliance costs with these requirements.

**III. PRO Recycling Acceptance List: Impacts associated with the recycling of materials and the achievement of collection targets, convenience standards and performance standards for covered products**
This proposed rule requires PROs to provide for recycling materials on the PRO Recycling Acceptance List, and to meet collection targets, convenience standards and performance standards for such recycling. All materials on the PRO Recycling Acceptance List and all targets and standards are the subject of this rulemaking. DEQ is unable to quantify all the fiscal impacts of these rules on PROs due to several unknown variables, including:

- The expenses PROs will incur because the act (ORS 459A.896(1)(a)) includes a requirement that PROs first contract with existing depots "where possible." DEQ cannot guarantee how many existing depots will choose to, and successfully contract with, a PRO. DEQ has instead applied professional judgment to estimate a range of how many such facilities might take this opportunity. If DEQ's estimate is incorrect, costs may be higher or lower than shown here.
- Compliance costs, because it is unknown how PROs will respond to this mandate. The act provides PROs significant flexibility in how they may achieve convenience standards.

DEQ estimates that major costs to PROs of the proposed rules for PRO Recycling Acceptance Lists, including collection targets, convenience standards, and performance standards may be on the order of $25 million to $36 million annually (in 2021 dollars with capital costs amortized). These include:

- Approximately $24 million to $35 million annually to provide recycling service for 10 different materials at several hundred different locations across the state. If PROs can optimize collection points more efficiently than modeled, their compliance costs may be lower. If the number of existing depots that choose to opt into this system is higher than estimated, PRO compliance costs may be higher.
- Approximately $1 million annually to cover increased operational costs at commingled recycling processing facilities.

Additionally, PROs or their contractors will benefit from approximately $800,000/year in commodity revenues, and other users of the system will benefit from approximately $800,000 per year due to reduced garbage collection, transfer and disposal costs[5].

---

[5] [5] The estimated increase in commodity revenue is derived by comparing estimates of commodity sales for the proposed acceptance lists against an alternative scenario with less robust acceptance lists. Commodity values are based on average prices, and may be lower or higher in any given year

16

**C. PRO Obligations Rules**

DEQ anticipates that PROs will incur costs to comply with the rules governing their obligations. Costs associated with the two PRO fees are described above. Costs to PROs associated with other PRO obligation rules are as follows:

- Responsible end markets
- PRO coordination
- Market share and modified market share

### I.    **Responsible end markets**

PROs must ensure that materials collected for recycling are sent to responsible end markets and are managed in an environmentally protective way through final disposition.

DEQ is currently unable to estimate to potential cost of compliance with these provisions for these materials. To implement this obligation, PROs will incur costs for auditing or certifying recycling supply chains. If out of compliance, PROs may incur costs to come into compliance by implementing solutions, such as the development of alternative markets. DEQ cannot provide an estimate the costs associated with implementing solutions until after July 1, 2025. This is when data on existing recycling supply chains for Oregon's recyclables will be submitted to DEQ.

### II.    **PRO coordination**

The proposed rules clarify the coordination requirements if multiple PROs submit program plans to DEQ and receive approval. DEQ proposes to serve as interim coordinator until a PRO coordination plan has been approved or until Dec. 31, 2026, whichever comes sooner. PROs would pay DEQ's associated costs, approximately $1.1 million, from April 2024 through to December 2026.

### III.    **Market share and modified market share**

Proposed rules include a formula - "modified market share" - to fairly divide system costs among multiple PROs. The potential fiscal impacts for PROs will be proportional to the product-specific financial burden to Oregon's recycling system of the products sold into the state by their member producers.

PROs will be responsible to cover DEQ's costs to develop an index of material-specific financial burden factors to be used in calculating modified market share in the first year of the program.

## Public

The proposed rules establish no compliance obligations directly on the public. However, impacts of the rule will result in some indirect fiscal impacts, both negative and positive.

As discussed previously, many of the costs associated with the proposed rules are largely set in the act. Any fiscal impacts of proposed rules on PROs will be paid by producer members. One potential negative impact on the public depends on whether and how producers pass on

17

additional costs to consumers in Oregon. This has been difficult to estimate. Economic theory predicts that a portion of producer costs will be passed on to consumers in the form of higher shelf prices, although producers that sell into multiple states may recover these costs across customers in multiple states, thereby reducing price impacts on the public in Oregon. A DEQ-commissioned study comparing shelf prices for the same items sold by the same retailers in Canadian provinces with and without packaging PROs and producer fees found minimal correlation between product-specific fees (paid by producers) and differences in retail shelf prices.

Another negative impact on the public involves their cost to deliver materials on the PRO Recycling Acceptance List to collection points. Some of these collection points will be co-located with existing solid waste and recycling facilities, while others will be sited in other locations to provide enhanced convenience (and reduce additional driving requirements). DEQ estimates that Oregon households and businesses may incur approximately $11 million to $14 million annually due to added personal vehicle use associated with delivering recyclables to PRO collection points. This estimate is limited to costs of vehicle ownership and operations and excludes the value of user time. Importantly, such personal vehicle use is voluntary; the rules do not require households or other waste generators to take advantage of and participate in these recycling opportunities.

Anticipated positive impacts for the public from the rules include:
- Improvements to Oregon's recycling system will transfer certain expenses from collection and processing companies currently paid by the ratepayers to PROs. This may reduce the rates charged to some ratepayers, such as households and businesses.[6]
- Oregon households and businesses will also have new opportunities to further reduce expenses for disposing of garbage or paying for a subscription or similar recycling service. For example, households and others currently transporting materials such as expanded polystyrene to distant collection points would benefit from a more convenient network of collection sites.
- Compensation for long distance (50 miles or more) transportation costs may benefit recycling programs and system users in rural and other areas that are far from end markets and processing infrastructure. These rules may transfer certain expenses currently paid by ratepayers.
- More and improved recycling will reduce environmental impacts, a central objective of the act. DEQ estimated the potential changes in environmental outcomes for 13 different types of impacts, such as emissions of greenhouse gases and air toxics. For each of these outcomes, impacts are then converted to estimates of "social costs." DEQ estimates that transitioning from the current recycling system to the system contained in the act, and these proposed rules, could reduce social costs by $28 million or $29 million annually (net of

---

[6] It should be noted that in some communities, such as those that make significant expansions or changes to on-route recycling services, rates paid by ratepayers may rise as a result of the Act. In addition, waste collection rates reflect a number of factors which these rules do not effect, such as the price of diesel and the cost of disposal. For that reason, rates charged to users in various Oregon communities may go up or down for reasons largely unrelated to the Act.

18

additional environmental impacts, such as emissions from vehicles used to collect and transport recyclables). This likely understates the full magnitude of benefits, as DEQ's social cost assessment is limited to only 13 types of environmental impacts. Not included, for example, is one of the more profound impacts of these rules (and the act), which is to reduce Oregon's contribution of plastics waste into the oceans, rivers, and disadvantaged communities that may currently result from inadequate separation, processing and exports.

- Implementation will reduce such societal costs, but not all of those benefits have been quantified. Similarly, the stability offered to collection programs and waste generators associated with uniform, statewide acceptance lists, and the emotional benefits that individuals realize from increased confidence that the materials they separate for recycling will be managed in responsible ways, offer the potential for additional economic benefits that DEQ has not attempted to quantify.

## Anticipated Business Impacts

The impacts of these rules are anticipated to be proportionately similar for most businesses regardless of their size. The act provides exemptions for small businesses, although the definition of "small business" in the act differs from the definition used for this document. The proposed rules do not address those exemptions.

## Large businesses: Businesses with more than 50 employees

The estimates of cost of compliance by the proposed rules to large businesses apply to the following industry sectors: producers of covered products, processors of materials, and waste service providers. Based on membership data provided by the Oregon Refuse and Recycling Association on March 6, 2023, DEQ can provide an estimate of the service providers that would be considered a large business for the purposes of this section and are anticipated to be impacted by the proposed rules. DEQ estimates that there are 11 commingled recycling processing facilities operating in the state, but currently does not have the information to distinguish how many fall under the "large" or "small" category.

| Large Business/ Sector Type | Business Count |
|---|---|
| Service Providers | 8 |
| Commingled recycling processing facilities | This information is currently unavailable. |
| Producers of covered products | This information is currently unavailable |

### A. Local Government Compensation Rules

DEQ proposes three rules associated with local government compensation: transportation costs reimbursement, recycling service expansion and contamination reduction programming. These rules are anticipated to have fiscal impacts to large businesses.

### I.    Transportation Costs Reimbursement

At this time, DEQ is unable to determine the total cost associated with the transportation cost reimbursement rule to large businesses.

19

The proposed transportation costs reimbursement rules are anticipated to have positive fiscal impacts on "large" service providers operating within Oregon. Companies operating a recycling depot and/or a recycling reload facility will receive transportation compensation from the PRO when they must transport recyclable materials 50 miles or more to reach a commingled recycling processing facility or a responsible end market. This ensures that it will not be cost prohibitive for a collection company to move low-value material(s) to market.

Commingled recycling processing facilities or processors that are considered large businesses should benefit from the transportation cost reimbursement. The provision of freight reimbursement should make it more viable for distant communities to collect materials for recycling. This should increase the tonnage of material ultimately directed to commingled recycling processing facilities, and the financial opportunity associated with processing and marketing such materials.

DEQ anticipates indirect fiscal impacts of the transportation costs reimbursement rules on large businesses that meet the act's definition of a producer. The act requires that producers pay fees for the total amount of eligible covered product(s) they sell, offer to sell or distribute in or into Oregon to the PROs. Expenses incurred by PROs will be compensated by the PRO's members, but DEQ is unable to provide an estimate of those membership fees at this time. The majority of these costs are established in statute and not in this rulemaking.

## II.    Recycling Service Expansion

At this time, DEQ is unable to determine the total fiscal impacts to large businesses associated with service expansion. A Needs Assessment survey was conducted and is currently under review. Any newly established PRO will review the results and gather additional information as they draft and revise their PRO Program Plan. The anticipated costs for expansion will not be available until the plans are revised.

The proposed recycling service expansion rules are anticipated to have positive fiscal impacts for service providers. PROs will be responsible for certain costs associated with the expansion and provision of recycling collection services, including for on-route and at depots. For on-route expansion, ongoing labor costs are not an eligible expense and may impose fiscal impacts. However, for depot expansion, ongoing operational costs, such as labor, will be eligible for funding from the PROs.

It is anticipated that commingled recycling processing facilities will experience a positive fiscal impact from the proposed service expansion rules because newly established or expanded on-route and depot collection programs, statewide, will lead to an increased volume of material being brought to commingled recycling processing facilities. This will result in more material for commingled recycling processing facilities to handle, market and profit from.

## III.    Contamination Reduction Programming

20

The proposed rules clarify which census data must be referenced and clarifies the administrative procedures for reimbursement. DEQ does not anticipate fiscal impacts to large businesses related to these rules.

### B.  Recycling Acceptance Lists Rules

The proposed materials acceptance list rules will create fiscal impacts on waste and recycling collection companies. Costs associated with collecting materials on the proposed Uniform Statewide Collection List are expected to be several million dollars higher each year than collection costs would be for a less comprehensive list. At the same time, as materials shift from the garbage stream into the commingled collection system, garbage collection, transfer and disposal costs are expected to decrease.

The materials acceptance list rules are anticipated to have fiscal impacts on commingled recycling processing facilities. DEQ expects that new facilities may be built, and existing facilities will be required to invest in upgrades such as new equipment and implement new procedures to process the materials proposed for inclusion in the Uniform Statewide Collection List. The higher costs associated with processing larger volumes and a more complicated list should be compensated by fees paid by PROs to processing facilities under ORS 459A.920 (Contamination Management Fee) and 459A.923 (Processor Commodity Risk Fee).  In some cases, higher costs associated with equipment will be offset by savings as mechanization replaces manual labor.

The proposed rules will have fiscal impacts on businesses that are classified as "producers" of covered products. PROs will charge membership fees to their producer members based on the quantities of different materials they sell into Oregon and the costs that each material imposes upon PROs. The membership fee schedule will be established by PROs, and DEQ is unable to estimate the impact of proposed rules on the producer membership fees. (Please see "PRO Obligations Rules" below for additional discussion of these impacts.)

### C.  PRO Obligations Rules

The proposed rules related to the PRO obligations are anticipated to have indirect fiscal impacts on large businesses that are producers of covered products and do not qualify for a small producer exemption. Producers of covered products will be required to join and pay membership fees to PROs that will establish the membership fee schedule and administer a producer responsibility program.

The proposed rules require that a PRO structure its fee schedule to cover its costs, and in a multi-PRO scenario, the PRO's overall costs will be proportional to its modified market share, the formula being proposed in rule.

PROs will establish the membership fees and at this time, DEQ has not estimated the projected costs to individual producers.

## Small businesses: Businesses with 50 or fewer employees

The impacts of the proposed rules on small businesses will be similar to large businesses as discussed above, although the impacts should be proportionately smaller. Additionally, the

act provides for an exemption for small producers from the requirement to join and pay fees to a PRO. The exemption applies to producers that sell less than one metric ton of covered product into Oregon each year, or which have global revenues of $5 million or less.

### *ORS 183.336 Cost of Compliance Effect on Small Businesses*

**a. Estimated number of small businesses and types of businesses and industries with small businesses subject to proposed rule.**

| Small business/sector type | Count of Small Businesses |
|---|---|
| Service Providers | 40 |
| Commingled Recycling Processing facilities | This information is not currently available. |
| Producers of covered products | This information is not currently available. |

The types of industries subject to the requirements of these proposed rules include service providers, processing facilities, and producers of covered products, as those terms are defined in ORS 459A.863 and 459A.866. DEQ has not performed a market analysis to estimate the number of businesses, small or large, who meet these defined criteria as part of this proposed rulemaking. Of the small business sectors that will be impacted by proposed rules, the producers of covered products will be obligated to pay a PRO membership fee.

**b. Projected reporting, recordkeeping, and other administrative activities, including costs of professional services, required for small businesses to comply with the proposed rule.**
Reporting obligations are established under statute. The costs incurred by small businesses that are producers of covered products will be based on the fees and processes established by the PROs, not DEQ. DEQ expects that there will be costs associated with the labor and administration of providing PRO-requested information, to be incurred by small businesses but is unable to estimate those costs at this time.

**c. Projected equipment, supplies, labor, and increased administration required for small businesses to comply with the proposed rule.**
The costs incurred by small businesses will be based on the fees and processes established by the PROs, not DEQ. DEQ does anticipate some costs associated with the labor and administration of providing PRO-requested information, to be incurred by small businesses.

**d. Describe how DEQ involved small businesses in developing this proposed rule.**
The RAC convened for this rulemaking included representatives of small businesses and membership organizations. The proposed rules are based on legislation that included significant engagement with potentially affected parties, including small businesses.

## Documents relied on for fiscal and economic impact

| Document title | Document location |
|---|---|
| Plastic Pollution and Recycling Modernization Act (Senate Bill 582, 2021) | Oregon Legislature website, SB 582 |
| Overview of Scenario Modeling: Oregon Plastic Pollution and Recycling Modernization Act (Cascadia Consulting Group, Mar. 14 2023) | DEQ Recycling website |
| Memo: Impact of Extended Producer Responsibility Fees for Packaging and Printing Paper on Price of Consumer Packaged Goods (RRS, Feb. 19 2021) | DEQ Recycling website |
| Supplemental Information: Selected Responses to DEQ's Recycling Acceptance Lists Request for Information | DEQ Recycling website |
| Supplemental Information: Recyclability of Paper Cans | DEQ Recycling System Advisory Council website |
| Materials Lists Technical Workgroup: Comparative Life Cycle Assessment of Expanded Polystyrene Dispositions | DEQ website |
| Materials Lists Technical Workgroup: Comparative Life Cycle Assessment of Glass Collection and Recycling | DEQ website |

23

## Advisory committee fiscal review

DEQ appointed an advisory committee for this rulemaking process. The advisory committee met on April 11, 2023, to discuss the fiscal impact statement.

As ORS 183.33 requires, DEQ asked for the committee's recommendations on:
- Whether the proposed rules would have a fiscal impact,
- The extent of the impact, and
- Whether the proposed rules would have a significant adverse impact on small businesses; if so, then how DEQ can comply with ORS 183.540 reduce that impact.

Advisory committee members were asked to review and provide comment on a draft fiscal impact statement. The current draft has been revised in response to some of the comments received. Overall, committee members did not find that there would be significant impact on small businesses in Oregon but that the analysis could go further in examining impacts to the informal sector, depots, consumers, and rate payers. A summary of their comments can be found in the April 11, 2023, written meetings notes from the sixth RAC meeting, available on the Recycling 2023 rulemaking webpage. The comments included:
- DEQ should provide the reference documents' page numbers in the citations.
- DEQ should consider the potential for job loss.
- Acknowledgement that it is difficult for policy makers to fully understand the full economic impacts of such an undertaking.
- Processors and small business will be impacted, however, they have been included throughout this process. An advantage for some small businesses is that they will be well positioned to adapt.
- Anticipation that there may be fewer jobs but the jobs that remain will be more specialized and will pay higher wages.
- The analysis did not consider potential changes for rate payers, and the statement should be more nuanced to reflect the differences across communities, where some may experience rate increases while others may not.
- The analysis should consider the impacts to consumers.
- The potential for automation does not necessarily need to eliminate jobs, and more work could be done to sustain current employment regardless of automation.
- Impacts on depots should be addressed more directly in this analysis.

The committee determined the proposed rules would not have a significant adverse impact on small businesses in Oregon. During the RAC meeting held on April 11, 2023, the committee was asked to consider the following questions:
- Is there a fiscal impact for certain entities, and if so, what is the extent of those impacts?
- Is there a significant impact on small businesses, and how can they be mitigated?

Overall, the committee did not object to the fiscal impacts of the proposed rules. Relatedly, there was some discussion and questions about DEQ's evaluation process and other impacts that the act will have on job loss, depots, impacts to costs to consumers and on collection rates.

24

# Racial Equity

ORS 183.335(2)(a)(F) requires state agencies to provide a statement identifying how adoption of this rule will affect racial equity in Oregon.

The scope of this racial equity impact statement is for the proposed rules developed for the first rulemaking of the Plastic Pollution and Recycling Modernization Act. This is the first of two planned rulemakings, and the proposed rules would change Oregon's recycling requirements to meet the directives and objectives of the act (Senate Bill 582, 2021). Each change or new provision may have an individual impact while also having an overall, cumulative impact.

This state- and system-wide update will make recycling easier for the public to use, expand access to recycling services, result in upgrades to the facilities that sort recyclables, and create environmental benefits while reducing social and environmental harms, such as plastic pollution. This rulemaking addresses multiple topics including PRO obligations, local government compensation, and the materials acceptance lists. Within each topic, DEQ finds that there are likely positive racial equity impacts and does not anticipate any negative racial equity impacts.

## I.    Producer Responsibility Organization Obligations: Responsible End Markets

The discrepancy between the quantity of materials generated and marketed to end markets, and the ability of those markets to deal with the materials in ways that do not harm public health or the environment, is an on-going issue within the recycling industry. DEQ's proposed rules regarding responsible end markets support the act's objectives to benefit Oregon's environment and minimize risk to public health and worker safety. By requiring that materials collected for recycling in Oregon all go to responsible end markets, as defined in the law and further subject to criteria established by DEQ through this rulemaking, the proposed rules are designed to improve the environmental and social benefits of recycling.

These proposed rules could address negative impacts of recycling facilities upon adjacent communities, which are more likely to include communities of color due to systemically racialized zoning and land use practices. By requiring PROs and commingled processing recycling facilities to send waste only to responsible end markets, as defined in the proposed rules, DEQ expects to achieve public health, social and environmental benefits for communities disproportionately burdened by the processing and disposition of recycled materials.

## II.    Local Government Compensation

The proposed rules would create funding structures to improve recycling opportunities, particularly for communities and individuals across Oregon underserved by the current system. This includes tenants in multifamily buildings, and residents in exurban and rural communities and other areas that are located far from major recycling infrastructure, which

25

is primarily located in the Portland area. In Oregon, these groups make up 12.5 percent of low income and minority community members [7], who are disproportionately non-white.

The funding structures established through the act, and clarified in these proposed rules will benefit underserved communities by:

- Providing local governments or a local government's service provider(s) with funding to cover the capital costs associated with either establishing or expanding an on-route program for collection of recyclable materials or covering start-up and operational costs associated with recycling depots.
- Reducing financial barriers for getting recyclables from distant areas to commingled recycling processing facilities or responsible end markets by providing financial support for the transportation of collected materials. This should significantly equalize recycling costs between different areas of the state.
- Creating standards and requirements for non-urban communities to provide recycling services to their residents, consistent with services available in urbanized portions of the state.

### III.    Recycling Acceptance Lists

These proposed rules would improve equity of service for all communities across Oregon by requiring the acceptance of materials on a uniform statewide collection list, regardless of location or proximity to recycling facilities. The recommended convenience standards for materials on the PRO Recycling Acceptance List will further expand recycling communities in all counties of Oregon. Additional standards ensure that at least some collection points will be accessible to users of public transit, and that cities with multiple collection points must have those collection points distributed throughout the community. Performance standards will help to ensure that collection points are maintained and avoid litter or other hazards, regardless of neighborhood or location. The creation of uniform lists also allows for clear and consistent information and messaging to all people across Oregon, including the availability of information in languages other than English to ensure compliance with state and federal laws for meaningful and equitable access to government services. The intent is to distribute more standardized benefits, including improved access to recycling, and reduce disproportionate burdens across communities.

# Advisory committee review of racial equity impact

DEQ asked for the committee's input on how adoption of this rule would affect racial equity in this state.

---

[7] Kaiser Family Foundation, 2021, Poverty by Race/Ethnicity:
 https://www.kff.org/other/state-indicator/poverty-rate-by-raceethnicity/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D

26

The committee members were asked to review and provide comment on the draft racial equity statement and their comments are also summarized in the sixth RAC written meeting summary. The comments provided during the meeting included:

- DEQ was asked to consider impacts to economic opportunities for the informal collection sector.
- DEQ was asked to consider potential job loss at material recovery facilities for positions typically filled disproportionately by people of color.
- A question about whether the rules have unintentionally excluded tribal governments from being eligible for funding.
- A question about whether DEQ's process for conducting this analysis include any consultation with groups representing impacted Black, Indigenous and People of Color (BIPOC) communities.
- The analysis did not include impacts to laborers and collectors from the informal sector.
- A question about whether the analysis should consider the limited availability of data and difficulty collecting data around multi-family recycling.
- A question about whether there was any analysis conducted on the potential cost to consumer goods and the impacts that may have.

# Environmental Justice Considerations

ORS 182.545 requires natural resource agencies to consider the effects of their actions on environmental justice issues.

DEQ defines environmental justice as the fair treatment and meaningful involvement of all people regardless of race, color, national origin, culture, education or income with respect to the development, implementation and enforcement of environmental laws, regulations and policies.

The Plastic Pollution and Recycling Modernization Act was created to center and create more equitable recycling services for underserved communities and communities who are overburdened by the environmental and health impacts caused by the recycling industry. The resources and opportunities created by the act will distribute new funding, invest in community education and reduce some of the financial barriers that created limited or no recycling service in rural and remote communities. Improved transparency and new criteria for the markets where Oregon's recyclables can be sold will provide more assurances to residents that their materials are being recycled with decreased environmental and social harm.

Throughout the development of this rule proposal, DEQ considered the statutory direction of the act to improve equity across a modernized recycling system in Oregon. The proposed rules would contribute to more equitable outcomes for communities with environmental justice concerns.

# Federal Relationship

ORS 183.332, 468A.327 and OAR 340-011-0029 require DEQ to attempt to adopt rules that correspond with existing equivalent federal laws and rules unless there are reasons not to do so.

The proposed rules are not different from or in addition to federal requirements.

## What alternatives did DEQ consider if any?

DEQ did not consider alternatives because this rulemaking is proposing new rules.

# Land Use

## Considerations

In adopting new or amended rules, ORS 197.180 and OAR 340-018-0070 require DEQ to determine whether the proposed rules significantly affect land use. If so, DEQ must explain how the proposed rules comply with statewide land-use planning goals and local acknowledged comprehensive plans.

Under OAR 660-030-0005 and OAR 340 Division 18, DEQ considers that rules affect land use if:

- The statewide land use planning goals specifically refer to the rule or program, or
- The rule or program is reasonably expected to have significant effects on:
- Resources, objects, or areas identified in the statewide planning goals, or
- Present or future land uses identified in acknowledge comprehensive plans

DEQ determined whether the proposed rules involve programs or actions that affect land use by reviewing its Statewide Agency Coordination plan. The plan describes the programs that DEQ determined significantly affect land use. DEQ considers that its programs specifically relate to the following statewide goals:

| Goal | Title |
|------|-------|
| 5 | Natural Resources, Scenic and Historic Areas, and Open Spaces |
| 6 | Air, Water and Land Resources Quality |
| 11 | Public Facilities and Services |
| 16 | Estuarine Resources |
| 19 | Ocean Resources |

Statewide goals also specifically reference the following DEQ programs:

- Nonpoint source discharge water quality program – Goal 16
- Water quality and sewage disposal systems – Goal 16
- Water quality permits and oil spill regulations – Goal 19

## Determination

DEQ determined that these proposed rules do not affect land use under OAR 340-018-0030 or DEQ's State Agency Coordination Program.

# EQC Prior Involvement

DEQ shared rulemaking updates with the EQC as informational items at the September 2022 and the September 2023 EQC meetings.

# Advisory Committee

## Background

DEQ convened the Plastic Pollution and Recycling Modernization Act rulemaking advisory committee. The committee included representatives from local governments, collection service providers, industry, and environmental groups and met six times. For more information, please visit the committee's web page.

| Recycling Modernization Act Rulemaking Advisory Committee | |
|---|---|
| **Name** | **Representing** |
| Trevor Beltz | Tillamook County Creamery Association |
| Udara Abeseykera Bickett (replaced by Mike Riley for meeting 2 and Lindsay Hardy for meeting 5) | The Environment Center |
| Tim Brownell (replaced Katy Nesbitt, Wallowa County) | Deschutes County |
| Rosalynn Greene | Metro |
| Sydney Harris (replaced by Scott Cassell meetings 4-6) | Product Stewardship Institute |
| Allen Langdon | Circular Materials |
| Michael McHenry (replaced by Stephen Henry meeting 2) | Pendleton Sanitary Service, Inc. |
| Kristan Mitchell | Oregon Refuse and Recycling Association |
| Jeff Murray | EFI Recycling Inc. |
| Deveron Musgrave | City of Eugene |
| Jerry Powell | Residents |
| Mallorie Roberts (replaced by Michael Burdick meetings 3-6) | Association of Oregon Counties |
| Jared Rothstein (replaced by Lauren Janes meetings 3-6) | Consumer Brands Association |
| John Salvador | Georgia-Pacific Professional |
| Craig Smith (replaced by Pam Barrow meetings 5 and 6) | Food Northwest |
| Paloma Sparks (replaced by Scott Bruun meetings 4-6) | Oregon Business and Industry |
| Taylor Cass Talbott | Trash for Peace |
| Nicole Willett (replaced by Maria Constantinou meetings 4 and 5) | Green for Life |

## Meeting notifications

To notify people about the advisory committee's activities, DEQ:

- Sent GovDelivery bulletins, a free e-mail subscription service, to the following lists:
    - Rulemaking
- Reminded all attendees at each rulemaking advisory committee meeting that they could sign-up for the GovDelivery bulletin to receive updates about the rulemaking.
- Posted information regularly on DEQ's recycling rulemaking webpage
- Added advisory committee announcements to DEQ's calendar of public meetings at DEQ Calendar.

## Committee discussions

In addition to the recommendations described under the Statement of Fiscal and Economic Impact section above, the committee was asked to discuss and provide input on proposed rule concepts and the draft rules. Agendas, meeting materials, and meeting summaries are available on the rulemaking webpage.

# Public Engagement

## Public notice
DEQ provided notice of the proposed rulemaking and rulemaking hearing by:
- On May 25, 2023, filing notice with the Oregon Secretary of State for publication in the June 2023 Oregon Bulletin;
- Posting the Notice, Invitation to Comment and Draft Rules on the web page for this rulemaking, located at: Recycling Updates 2023;
- Emailing approximately 23,906 interested parties on the following DEQ lists through GovDelivery:
  - Rulemaking
  - DEQ Public Notices
  - Recycling Modernization Act
- Emailing the following key legislators required under ORS 183.335:
  - Senator Michael Dembrow, Chair, Senate Education Committee, Co-Chair, Joint Committee on Ways and Means Subcommittee on Natural Resources, Co-Chair, Environmental Caucus
  - Senator Janeen Sollman, Co-Chair, Joint Committee on Ways and Means Subcommittee on General Government
  - Senator Lynn P. Findley
  - Representative Pam Marsh
  - Representative Susan McLain
- Emailing advisory committee members,
- Posting on the DEQ event calendar: DEQ Calendar

## How to comment on this rulemaking proposal
DEQ asked for public comment on the proposed rules. Anyone could submit comments and questions about this rulemaking through email, postal mail or verbally at the public hearing(s).
- Email: Send comments by email to recycling.2023@deq.oregon.gov
- Postal mail: Oregon DEQ, Attn: Roxann Nayar/Materials Management, 700 NE Multnomah Street, Suite 600, Portland, Oregon 97232-4100
- At the public hearing(s): 11 a.m., Tuesday, June 27, 2023, or, 5 p.m., Thursday, June 29, 2023.

## Comment deadline
DEQ considered all comments received by 4 p.m. on July 28, 2023. DEQ extended the comment period for 22 days, by request, from an initial deadline of July 6, 2023.

## Note for public university students:
ORS 192.345(29) allows Oregon public university and OHSU students to protect their university email addresses from disclosure under Oregon's public records law. If you are an Oregon public university or OHSU student, notify DEQ that you wish to keep your email address confidential.

34

# Public Hearing

DEQ held two public hearings. DEQ received two comments at each hearing. Attachment 1 of this document include a summary of the 46 comments received during the public comment period and DEQ's responses. A list of commenters is noted below, and original comments are on file with DEQ.

## Presiding Officers' Record

### Hearing 1

| Date | June 27, 2023 |
|---|---|
| Place | Zoom (online meeting) |
| Start time | 11:03 a.m. |
| End time | 11:32 a.m. |
| Presiding Officer | Arianne Sperry |

### Hearing 2

| Date | June 29, 2023 |
|---|---|
| Place | Zoom (online meeting) |
| Start time | 5:03 p.m.. |
| End time | 5:50 p.m. |
| Presiding Officer | Arianne Sperry |

### Presiding Officer's report

The presiding officer convened the hearing, summarized procedures for the hearing, and explained that DEQ was recording the hearing. The presiding officer asked people who wanted to present verbal comments to sign the registration list, or if attending by phone, to indicate their intent to present comments. The presiding officer advised all attending parties interested in receiving future information about the rulemaking to sign up for GovDelivery email notices.

As Oregon Administrative Rule 137-001-0030 requires, the presiding officer summarized the content of the rulemaking notice.

121 people attended hearing 1 and 74 people attended hearing 2, both hosted via Zoom meeting. Two people commented orally at each hearing.

35

# Summary of Public Comments and DEQ Responses

## Public comment period

DEQ accepted public comment on the proposed rulemaking from May 25, 2023, until 4 p.m. on July 28, 2023. Upon request, DEQ extended the original comment period by 22 days, from July 6 to July 28.

Attachment 1 organizes comments and DEQ's response to comments into 27 categories with cross references to the commenter number. Original written comments are on file with DEQ and are posted to the Recycling 2023 webpage.

| List of Commenters Who Provided Verbal Comments | | | |
|---|---|---|---|
| # | Name | Organization | Hearing # |
| 1 | Andrew Jolin | Direct Pack | 1 |
| 2 | Dan Felton | AMERIPEN | 1 |
| 3 | Josh Weiss | Brownstein Hyatt Farber Schrek LLP on behalf of PakTek | 2 |
| 4 | Rosalynn Greene | Metro | 2 |

| List of Commenters Who Provided Written Comments | | |
|---|---|---|
| # | Name | Organization |
| 1 | Katie Hubler | No affiliation provided |
| 2 | Gail Sabbadini | No affiliation provided |
| 3 | Linda Meier | No affiliation provided |
| 4 | Sergey Yurcha | H2 Compliance |

36

| List of Commenters Who Provided Written Comments | | |
|---|---|---|
| # | Name | Organization |
| 5 | Grace Dietrich | No affiliation provided |
| 6 | Anna Greenberg | No affiliation provided |
| 7 | Linda Tharp | No affiliation provided |
| 8 | Kathi Goldman | James Recycling |
| 9 | Josh Simpson | Little Kamper LP |
| 10 | Jonathan Clark | No affiliation provided |
| 11 | Elizabeth Remley, Jeff Stone | Oregon Association of Nurseries |
| 12 | Dakota Tangredi | Marion County |
| 13 | Kristan Mitchell | Oregon Refuse and Recyclers Association |
| 14 | Joshua Weiss | Brownstein Hyatt Farber Schrek, LLP on behalf of PakTek |
| 15 | Andrew Jolin | Direct Pack |
| 16 | Robert Waldher | Umatilla County |
| 17 | Renee Yardley | Sustana Fiber |
| 18 | Jonathan Levy | AMP Robotics |
| 19 | Curt Wells | Aluminum Association |
| 20 | Marta McGuire | Metro |
| 21 | Jacob Cassady | Association of Home Appliance Manufacturers |
| 22 | Jim Spahr | Cascade Steel Rolling Mills Inc. |

37

| List of Commenters Who Provided Written Comments | | |
|---|---|---|
| **#** | **Name** | **Organization** |
| 23 | Gavin Pechey | Sporadicate |
| 24 | Deveron Musgrave | City of Eugene |
| 25 | Adam Peer | American Chemistry Council |
| 26 | Scott Byrne | Sonoco |
| 27 | Terry Webber | American Forest and Paper Association |
| 28 | Doug Mander | Circular Action Alliance |
| 29 | Thomas Egleston | Washington County Solid Waste and Recycling |
| 30 | Andriana Kontovrakis | Reverse Logistics Group |
| 31 | Paul Snyder | Tillamook County Creamery Association |
| 32 | Ken Jenke | Reynolds Consumer Products |
| 33 | Coke Williams | The Aluminum Foil Containers Manufacturers Association |
| 34 | Brennan Georgianni | American Cleaning Institute |
| 35 | Ally Peck | Consumer Technology Association |
| 36 | Taylor Cass Talbott | Ground Score |
| 37 | Zoe Serrano | Waste Free Advocates |
| 38 | Eben Polk | City of Portland |
| 39 | Kate Eagles | Association of Plastics Recyclers |
| 40 | Carol Patterson | Foodservice Packaging Institute |

38

| List of Commenters Who Provided Written Comments | | |
|---|---|---|
| # | Name | Organization |
| 41 | Dan Felton | AMERIPEN |
| 42 | Trina Matta | The Recycling Partnership |

39

# Implementation

## Notification

The proposed rules would become effective upon filing, with effective and filing dates as indicated in the rule language. DEQ would notify affected parties by:

- Sending GovDelivery notice
- Updating the Rulemaking 2023 webpage

40

# Five-Year Review

## Requirement

Oregon law requires DEQ to review new rules within five years after EQC adopts them. The law also exempts some rules from review. DEQ determined whether the rules described in this report are subject to the five-year review. DEQ based its analysis on the law in effect when EQC adopted these rules.

## Exemption from five-year rule review

The Administrative Procedures Act exempts some of the proposed rules from the five-year review because the proposed rules would:

- Amend or repeal an existing rule. ORS 183.405(4).

## Five-year rule review required

No later than Nov. 16, 2028, DEQ will review the newly adopted rules for which ORS 183.405 (1) requires review to determine whether:
- The rule has had the intended effect
- The anticipated fiscal impact of the rule was underestimated or overestimated
- Subsequent changes in the law require that the rule be repealed or amended
- There is continued need for the rule.

| Rules Subject to 5-Year Review | | | | |
|---|---|---|---|---|
| 340-090-0610 | 340-090-0660 | 340-090-0710 | 340-090-0760 | 340-090-0810 |
| 340-090-0620 | 340-090-0670 | 340-090-0720 | 340-090-0770 | 340-090-0600 |
| 340-090-0630 | 340-090-0680 | 340-090-0730 | 340-090-0780 | |
| 340-090-0640 | 340-090-0690 | 340-090-0740 | 340-090-0790 | |
| 340-090-0650 | 340-090-0700 | 340-090-0750 | 340-090-0800 | |

DEQ will use "available information" to comply with the review requirement allowed under ORS 183.405 (2).

DEQ will provide the five-year rule review report to the advisory committee to comply with ORS 183.405 (3).

41

# Accessibility Information

Español  |  한국어  |  繁體中文  |  Русский  |  Tiếng Việt  |  العربية

Contact: 800-452-4011  |  TTY: 711  |  deqinfo@deq.state.or.us

DEQ does not discriminate on the basis of race, color, national origin, disability, age or sex in administration of its programs or activities.

Visit DEQ's Civil Rights and Environmental Justice page.

42