**EXHIBIT E
TO DECLARATION
OF BRIAN WILD**



June 4, 2025

Ms. Leah Feldon
Director
Oregon Department of
Environmental Quality
700 NE Multnomah Street
Portland, OR 97232

**Subject: Request for Delay of Effective Date for the Plastic Pollution and Recycling Modernization Act**

Dear Ms. Feldon,

On behalf of the National Association of Wholesaler-Distributors, I am writing to request a one-year delay of the July 1, 2025 effective date or, at a minimum, enforcement of the Plastic Pollution and Recycling Modernization Act (RMA) due to widespread confusion and a substantial number of outstanding questions from parties who must register, with what organization they must register, and what products are covered by the law. This law will have a substantial financial impact nationally on businesses throughout the supply chain who sell or distribute products in Oregon.

NAW is the "national voice of wholesale distribution," an association comprised of employers of all sizes and national, regional, state, and local line-of-trade associations spanning the $8 trillion wholesale distribution industry that employs over six million workers in the United States. NAW is made up of direct member companies and a federation of 57 national, regional, and state associations across 19 commodity lines of trade which together include approximately 35,000 companies operating nearly 150,000 locations throughout the nation, including companies distributing in Oregon who are impacted by the law.

Wholesale distribution is a business-to-business industry: wholesaler-distributors purchase inventory, generally from manufacturers, and sell it to their customers, generally retailers. Wholesaler-distributors buy inventory in large quantities, warehouse it, break it down into the quantities their customers want (called "breaking bulk"), and repackage it, and ship to those customers. Distinct from warehouse logistics companies, which move someone else's product from seller to buyer, wholesaler-distributors purchase inventory, take title to it, and then re-sell it to customers.

Most wholesaler-distributors are small- to mid-sized private companies with minimal in-house legal and compliance resources as compared to larger corporations. While only a few have recognized name brands (unlike the manufacturers and retailers which are their supply-chain partners) many do have name brands for the products they distribute.

Wholesale distribution's role in the economy is often underestimated, but the industry represents approximately one-third of U.S. gross domestic product and a key component of our economic supply chain. Wholesaler-distributors are recognized as essential critical infrastructure, as they provide manufacturers with the ability to grow and develop their business. Additionally, distributors simplify logistics and create efficiency for the buyer by providing product expertise, resizing and repackaging products, and bundling purchases from multiple manufacturers and product lines so the buyer has all the items they need in one delivery.

NAW has heard from many of our member companies, who, just a month before the RMA is set to take effect, have important questions as to how it applies to their business, the fees that they will be charged, and under who's authority they are responding to. Indeed, one member reported that the first time it received any notification from Oregon DEQ about the RMA was April 28, 2025, just two days before the extended reporting deadline to the CAA. Below are just a handful of the most frequent questions NAW is hearing from its members:

1) Who is the "producer" when a product is manufactured by one company but distributed under the brand of another company? While the statute attempts to answer that question, it does not account for practical realities that will make this analysis difficult for many wholesaler distributors. Manufacturers and brand owners (producers) who sell through distribution channels (such as wholesale) do not necessarily know into which states their products are ultimately sold to end-users and so are unable to provide accurate reports of, by example, packaging shipped into and consumed in Oregon. For instance, NAW has been informed of a manufacturer/national brand (who bears EPR reporting responsibility) but knows only that they ship to one of five distribution centers. The manufacturer does not know where in the distributors 300+ location retail network (spanning 46 states) those products will ultimately land.
2) Additionally, NAW has been told that distributors have received contradictory answers from state officials and staff within Oregon DEQ regarding who qualifies as a "producer" under the law. And it is easy to understand why, since for products distributed under the brand of another company it is extremely difficult, if not impossible, for the wholesaler to know where the retail products are ultimately sold and consumed. As a result, the hundreds of wholesaler-distributors in this category would struggle to provide estimated quantities of recyclable materials to Oregon DEQ. And this uncertainty is amplified for companies that have multiple roles and channels in the supply chain.
3) Are all regulated companies required to use the same methodology to assess the weight of "covered products"? If yes, what is that methodology? How does that apply to packages using multiple recyclable materials (e.g., a cardboard box filled with twenty plastic sleeves of plastic cups) and how does a company assure compliance without double or even triple counting the same materials?
4) There is a significant lack of clarity related to exemptions and how they may apply across the supply chain. For example, there is an exemption for entities that meet the "small producer"

criteria. However, it is not clear if the exemption applies across the entire supply chain and who is responsible for asserting such exemption. Similarly, what is the scope of the restaurant exemption? Does it apply to carryout containers and cups?

Answers to these questions are critical given that NAW members operate on thin margins and over-reporting to ensure compliance is not an option without companies having to make significant cuts in operational costs, including staff.

Finally, neither the law nor its contemplated implementation provides any clarity regarding how fees are established and the amounts to be charged. ORS 459.884(1) simply delegates all fee-setting to a third-party, "producer responsibility organization," giving it wide berth to set membership fees and assess costs. But what those fees are and how they are assessed have been fluid since the law was enacted and remains a mystery just a month before it is set to take effect. Even worse, it appears fees may be retroactive, which creates its own legal questions.

To date, businesses have only been provided with access to an estimate calculator, which in certain situations gives a range of anticipated fees with a variance up to 200%. (Circular Action Alliance, Oregon Program Plan (2025-2027) at 103.) Businesses have not received adequate time to budget or plan for this process and expense, but will be expected to pay significant sums with less than 30 days' notice of the actual fee. That is extremely concerning considering penalties for noncompliance are excessively high -- $25,000/day per violation.

Answers to these questions are critical to ensure compliance with the Oregon RMA law. Respectfully, one distributor said for all but the largest firms there was "chaos" in the industry when it came to implementation of Oregon's RMA proclaiming, "No one knows what to do."

Given the number of outstanding legal and practical questions, NAW urges Oregon DEQ delay the effective date or, at a minimum, enforcement of the RMA by at least one year to July 1, 2026.

NAW appreciates your consideration of this request. If you have any questions or would like to discuss this further, please do not hesitate to contact me at (202) 872-0885.

Sincerely,

Brian Wild
Chief Government Relations Officer
National Association of Wholesaler-Distributors

**To:** Lauren Williams <lwilliams@naw.org>; Brian Wild <bwild@naw.org>
**Cc:** KUCINSKI Michael * DEQ <Michael.KUCINSKI@deq.oregon.gov>; GRABHAM Cheryl * DEQ <Cheryl.GRABHAM@deq.oregon.gov>
**Subject:** Re: Request to delay implementation of the RMA

Hi Lauren,

Id be glad to schedule a call. I have that 8am PST slot available M-Th next week. Afternoons Tu-Th next week are also looking pretty good. Feel free to send a calendar invite my way.
Best,

Nicole

---

**From:** Lauren Williams <lwilliams@naw.org>
**Sent:** Wednesday, June 25, 2025 11:51:00 AM
**To:** PORTLEY Nicole * DEQ <Nicole.PORTLEY@deq.oregon.gov>; Brian Wild <bwild@naw.org>
**Cc:** KUCINSKI Michael * DEQ <Michael.KUCINSKI@deq.oregon.gov>; GRABHAM Cheryl * DEQ <Cheryl.GRABHAM@deq.oregon.gov>
**Subject:** RE: Request to delay implementation of the RMA

Hi Nicole,

Thank you for the response. We appreciate the offer of a consultation call and would like to find a time to set that up. With the holiday next week, I wanted to check with you on your availability.

Thanks,
Lauren


**Lauren Williams**
*Vice President of Government Relations*
National Association of Wholesaler-Distributors (NAW)
202-263-4085
LWilliams@NAW.org

---

**From:** PORTLEY Nicole * DEQ <Nicole.PORTLEY@deq.oregon.gov>
**Sent:** Monday, June 23, 2025 7:51 PM
**To:** Brian Wild <bwild@naw.org>
**Cc:** Lauren Williams <lwilliams@naw.org>; KUCINSKI Michael * DEQ

<[Michael.KUCINSKI@deq.oregon.gov](mailto:Michael.KUCINSKI@deq.oregon.gov)>; GRABHAM Cheryl * DEQ <[Cheryl.GRABHAM@deq.oregon.gov](mailto:Cheryl.GRABHAM@deq.oregon.gov)>
**Subject:** Re: Request to delay implementation of the RMA

Dear Brian,

We have received your request for extension on the July 1, 2025, start date (first producer fee due date) of the Recycling Modernization Act pursuant to 2021 c.681 §60, sent on June 4, 2025, to our director Leah Feldon. I am responding on Director Feldon's behalf together with our Land Administrator Mike Kucinski, who is in cc.

I'm afraid that Oregon DEQ cannot grant an extension on this deadline because it is fixed in statute and can only be changed by the legislature, and not by DEQ.

We recommend that you liaise with our approved Producer Responsibility Organization Circular Action Alliance (CAA) at [Producer.Support@circularaction.org](mailto:Producer.Support@circularaction.org) to seek guidance on your reporting questions and outline a timeline whereby your member producers can register with CAA, report their 2024 supply into the state to CAA, and pay their 2025 program year fees to CAA by the end of July, thereby avoiding being subject to any late fees.

You cited several outstanding questions that are obstacles to your producers' ability to meet the compliance deadlines and that may be questions of statutory or rule interpretation. If it would be helpful for you and your member producers to participate in a consultation call with DEQ during which you could seek assistance with interpreting our requirements, I can make myself available on short notice for such a call -- 8-9am PST is a reliably-available slot in my calendar M-Th. Feel free to send me a meeting invitation for an upcoming day during this slot.

Thank you for your efforts to help producers to comply with our regulations and successfully launch the program. Best,

Nicole



**Nicole Portley**
Program Plan Lead, Paper and Packaging EPR
Materials Management ⍰ Product Stewardship Team
Oregon Department of Environmental Quality
Cell: 503-839-9323

---

**From:** Brian Wild <[bwild@naw.org](mailto:bwild@naw.org)>
**Sent:** Wednesday, June 4, 2025 11:52 AM
**To:** FELDON Leah * DEQ <[feldon.leah@deq.state.or.us](mailto:feldon.leah@deq.state.or.us)>
**Cc:** Lauren Williams <[lwilliams@naw.org](mailto:lwilliams@naw.org)>
**Subject:** Request to delay implementation of the RMA

You don't often get email from bwild@naw.org. Learn why this is important

Ms. Feldon,

Attached is a letter requesting a one-year delay of the July 1, 2025 effective date of the Plastic Pollution and Recycling Modernization Act (RMA) due to widespread confusion and a substantial number of outstanding questions from member companies of the National Association of Wholesaler-Distributors regarding who must register, with what organization they must register, and what products are covered by the law. As you know, this law will have a substantial financial impact nationally on businesses throughout the supply chain who sell or distribute products in Oregon.

Please confirm receipt of this letter, thank you.

- Brian Wild

**BRIAN WILD**

*Chief Government Relations Officer*

National Association of Wholesaler-Distributors (NAW)
202-263-4062 (direct)
202-422-8740 (cell)
bwild@naw.org