Darin Sands, OSB No. 106624
dsands@bradleybernstein.com
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Ste 204
Portland, OR 97209
Telephone: +1 503-734-2480

David R. Carpenter*
drcarpenter@sidley.com
Caleb J. Bowers*
cbowers@sidley.com
Alexandra T. Mushka*
amushka@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213-896-6000
Facsimile: +1 213-896-6600

[Additional counsel on following page]

Attorneys for Plaintiff
NATIONAL ASSOCIATION OF
WHOLESALER-DISTRIBUTORS

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS, <br><br> Plaintiff, <br><br> v. <br><br> LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity; MATT DONEGAN, KAREN MOYNAHAN, MARK WEBB, AND SILVIA TANNER, in their official capacities as members of the Oregon Environmental Quality Commission, <br><br> Defendants. | Case No. 3:25-cv-01334-SB <br><br> **DECLARATION OF ED ALLEN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER** <br><br> **[REDACTED-PUBLIC VERSION OF DOCUMENT TO BE FILED UNDER SEAL]** |

Additional counsel for Plaintiff
National Association of Wholesaler-Distributors

Gordon D. Todd*
gtodd@sidley.com
SIDLEY AUSTIN LLP
1501 K. Street, N.W.
Washington, D.C. 20005
Telephone: +1 202-736-8000
Facsimile: +1 202-736-8711

*Pro hac vice

# DECLARATION OF ED ALLEN

I, Ed Allen, declare the following:

1.      I am President of WCP Solutions ("WCP"). I submit this declaration in support of the National Association of Wholesaler-Distributors' Motion for a Preliminary Injunction and/or Temporary Restraining Order in the above-captioned case. The following facts are within my own personal knowledge and, if called upon as a witness, I could and would competently testify thereto.

2.      WCP is a regional wholesale distributor with approximately ███████ in annual revenue. ██████████████████████████████████ WCP operates four locations in Oregon and has six product divisions that sell into Oregon. Portland serves as WCP's principal hub; a significant portion of product flows into Portland and is then transferred to other locations across WCP's network, which includes distribution into nine states.

3.      WCP purchases finished, packaged products from suppliers and sells those products to customers, the majority of whom are end users. WCP does not control primary packaging design or materials for the vast majority of the products it distributes. In limited instances, WCP may apply secondary or tertiary packaging necessary for handling and shipment, such as stretch film or tape, but it does not undertake product-level packaging redesign.

4.      WCP is partnered with premier packaging manufacturers in North America. With the support of our suppliers, we have been reducing the amount of packaging by downgauging and downsizing for several years. In regard to WCP's sustainability efforts, we customize our packaging to minimize waste for the end user.

5.      Although WCP generally does not make packaging decisions, it has been treated as a "producer" under Oregon's Extended Producer Responsibility ("EPR") program for certain products introduced into Oregon and required to join Circular Action Alliance ("CAA"). There remains substantial confusion in the marketplace about which entity is the producer for any given product—particularly for items where the seller has not acknowledged responsibility as the brand owner. That confusion extends across suppliers and customers and creates a risk of duplicative reporting.

6.      WCP's initial EPR-related fee expectations based on information provided by CAA, were materially lower than charges ultimately assessed. In addition to this unexpected cost in WCP's July 2025 invoice, CAA's fees are set and invoiced in arrears based on past data, hampering WCP's ability to project, accrue, or rationally adjust pricing to cover program costs in the ordinary course of business.

7.      WCP's main distribution hub is in Portland, Oregon. Operating a distribution business centered in Oregon and shipping both in-state and out-of-state has resulted in considerable confusion based on Oregon's EPR requirements. Many products arrive in Portland then are transferred to other locations and states that lack packaging EPR programs or which are currently implementing their own EPR programs with different requirements than Oregon's EPR.

8.      WCP competes in nine states (excluding Colorado) and cannot viably segregate product at scale by destination state to prevent EPR cost spillover and double counting. One potential methodology for trying to track and accrue against Oregon's EPR fees is, by reference to products received at WCP's Oregon facilities. However, many of these Oregon-bound products are later transported out of state by downstream entities without notice to WCP, meaning that our Oregon intake can exceed the portion of material ultimately consumed in Oregon. There is no apparent mechanism under Oregon's EPR program to confirm which upstream producer has paid fees for a given product, or to reconcile cross-border movements, increasing the risk of overpayment by WCP. The resulting increases in fees, and higher costs from our suppliers, hinders our ability to maintain competitiveness especially when transferring products from or through Oregon to other states.

/ / /

9.    The following provides a sample of examples of individual products (by stock keeping unit #) where the EPR fee exceeds our profit for sales this year:

| Row Labels | Sum of Quantity Shipped | Sum of Extended Price | Sum of Margin $ | Sum of Extended EPR Fee | Sum of Margin Less EPR | Sum of % EPR Increase |
|---|---|---|---|---|---|---|
| FL16CC 16OZ CLEAR COLD CUP PET 1000/CS 311698-CL | ▮ | ▮ ▮▮▮ | ▮ ▮▮ | ▮ ▮▮▮ | ▮ ▮▮ | 52% |
| SW002108 16OZ PET CLEAR COLD CUP 1000/CS SW002108 | ▮ | ▮ ▮▮▮ | ▮ ▮▮ | ▮ ▮▮ | ▮ ▮▮ | 57% |
| FL12CC 12OZ - 14OZ CLEAR COLD CUP PET 1000/CS 3121298-CL | ▮ | ▮ ▮▮▮ | ▮ ▮▮ | ▮ ▮▮ | ▮ ▮▮ | 49% |
| FL20CC 20OZ CLEAR COLD CUP PET 1000/CS 312098-CL | ▮ | ▮ ▮▮▮ | ▮ ▮▮ | ▮ ▮▮▮ | ▮ ▮▮ | 50% |
| SW002115 20OZ PET CLEAR COLD CUP 1000/CS SW002115 | ▮ | ▮ ▮▮▮ | ▮ ▮▮ | ▮ ▮▮▮ | ▮ ▮▮ | 54% |

10.    Overpayments further present a serious risk to our business competitiveness when considered alongside duplicative reporting and supplier/customer fees being charged for EPR. Duplicative reporting occurs when suppliers or customers charge their own EPR fees (i.e., to recoup EPR fees they are themselves paying) yet WCP is unaware that these other producers have claimed responsibility for the product. This is because neither Oregon nor CAA provides any centralized database or repository for product reporting, making it impossible to determine which products have been reported without individually contacting every potential supplier and customer in our supply chain—and determining that supplier/customer's potential producer responsibility in relation to our own.

11.     Suppliers have responded to Oregon's EPR mandate by implementing substantial price increases—some on the order of 50 percent—often without identifying whether increases reflect EPR fees or other factors. I anticipate additional increases from other suppliers. Suppliers are not providing detail sufficient for WCP to determine which line items on their invoices reflect EPR fees. WCP has asked suppliers to break out EPR fees as separate line items; some can, many cannot due to business system limitations. As a result, WCP cannot discern whether or to what extent supplier invoices include EPR charges, thereby preventing accurate handling of fees and WCP's ability to communicate clearly with its own customers.

12.     The EPR fees that WCP has had to begin charging, and the price increases we are experiencing from our suppliers/manufacturers, put our company at an extreme competitive disadvantage. ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████WCP's margins have eroded as it has been unable to fully capture rising costs from customers, particularly for sales shipped outside of Oregon where competitors are not subject to similar fees.

13.     In addition, certain suppliers have imposed price increases on goods flowing through Oregon both to recover fees paid on July 2025 invoices and to accrue against future fees to be paid on January 2026 invoices (and other future invoices). In at least one instance, a supplier added a 20 percent surcharge on its products for the next five years. When WCP moves products out of Oregon into states without EPR, WCP is forced to either pass along those fees or absorb them itself, thereby devastating our margins and making WCP uncompetitive in the marketplace.

14.     Beginning in January 2025, in advance of the producer reporting obligation, WCP began engaging suppliers to identify their status as producers under Oregon EPR and obtain detailed packaging data that Oregon requires producers to report, such as material types and weights. Few suppliers had knowledge of the Oregon EPR program at that time. Many have since been unable or unwilling to provide complete data—some treat packaging specifications as

proprietary—or simply unresponsive to our efforts to obtain information. WCP's inability to obtain information from suppliers makes it impossible to accurately report product and packaging information. Other difficulties with tracking packaging characteristics abound. For example, the use of tertiary packaging such as tape and stretch film requires weight calculations that are subjective and impracticable to track at scale. In many cases there is simply no practicable way for WCP to quantify inputs reliably.

15.     WCP has expended substantial internal resources attempting to comply with Oregon's EPR requirements. Company officers and staff personnel have dedicated significant time throughout the year to navigating Oregon's EPR requirements, coordinating with buyers in Portland, troubleshooting supplier reporting, and responding to inconsistent treatment of EPR charges on invoices. This has substantially disrupted day-to-day operations.

16.     The EPR program inhibits our ability to service surrounding states with competitive pricing and some of our suppliers have significantly raised their Oregon pricing to cover EPR fees. The EPR law also gives an unfair competitive advantage to smaller business with less than $5 million in annual sales because they are exempt from reporting.

17.     WCP's customers in Oregon have generally been unaware of EPR requirements and have limited capacity to absorb EPR-related price increases. ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████WCP has likely lost business and has certainly lost its profit margin due to these dynamics under the Oregon EPR program.

18.     Oregon's program recently doubled certain packaging fees from CAA's original estimate, leaving WCP guessing about forward exposure (in addition to present-day impacts). Fee assessments rely on 2024 data even for upcoming periods, failing to account for material changes in 2025 that may reduce packaging impacts. WCP's ability to plan for and mitigate fees through packaging changes is constrained because it does not control most packaging decisions, and, where

alternatives exist, they frequently conflict with food safety, shelf-life, or performance requirements.

19.    In interactions with CAA, WCP has encountered inconsistent and unhelpful guidance. CAA has been unable to answer basic categorization questions on public webinars; when confronted with gray areas, CAA's default guidance has been, in effect, to "pay it" and figure out nuances later. While CAA eventually credited WCP for certain reporting errors, WCP was initially told to wait until the next year to take credits, and ultimately was forced to proceed by submitting payment under protest using WCP's own corrected calculation.

20.    The practical difficulties of Oregon compliance are exacerbated by interstate inconsistencies. California and Colorado have, to date, proven clearer and more workable for WCP than Oregon, including with respect to definitions of recyclability and treatment of plastic substrates, but issues with interstate supply networks abound. For example, Oregon's treatment of coated paper and multi-layer films—materials commonly used to ensure food safety, prevent leakage, and preserve shelf life—creates acute conflicts between EPR objectives and necessary product performance, particularly for food service ware and temperature-sensitive products where no FDA-compliant, fully recyclable alternatives presently exist.

21.    WCP's beverage-related supply chain highlights additional burdens. Numerous Oregon wineries ship product to other states and rely on protective inserts and additional packaging for export. The current system provides no clear mechanism for accounting for this export packaging, which is required for safe interstate transport but may be charged as Oregon-bound volume without detailed measures to track and account for these goods downstream—which is not practicable once they leave WCP's control.

22.    Competitive dynamics further disadvantage WCP. Several competitors appear not to be reporting at all or may qualify for small producer exemptions; some suppliers are pushing the entire burden onto WCP despite being the appropriate first-obligated producer for branded goods. This asymmetry in reporting and cost allocation undermines parity and harms WCP's

ability to compete, particularly where fees assessed in Oregon must be reflected in prices for sales routed outside Oregon to states without EPR.

23.     The brand owner, and not distributors, can control decisions about product packaging and materials. In practice, under the current EPR scheme, the combination of unclear producer hierarchies, lack of transparent confirmation of upstream payments, retroactive and changing fee levels, and inconsistent supplier billing practices, forces WCP to shoulder costs that it neither controls nor can reliably verify.

24.     Based on all the above, Oregon's EPR program has imposed and will continue to impose burdens on WCP that are unworkable given WCP's role in the supply chain, the thin margins in distribution business, and the realities of multi-state distribution from a Portland hub. The program's structure results in fees and supplier pass-throughs that exceed margins on many products, creates substantial risk of double counting and overpayment, and deprives WCP of a reliable means to validate or contest charges.

25.     WCP treats its information regarding pricing, margins, customer prices, and revenue are kept confidential in the ordinary course of business. WCP keeps such information confidential for the benefit of its customers and for its own strategic purposes. As a result, WCP keeps strict controls on how such information may be accessed internally. If such information were publicly disclosed, it would expose WCP's business strategy to competitors, impair WCP's relationships with its customers, and harm WCP's business prospects.

I hereby declare under penalty of perjury of the laws of the United States that the foregoing statements are true and correct.

Executed on this 21st day of November 2025, in Portland, Oregon.

/s/ *Ed Allen*
_____
Ed Allen