DAN RAYFIELD
Attorney General
SARA D. VAN LOH #044398
Senior Assistant Attorney General
ALEXANDER C. JONES #213898
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Sara.VanLoh@doj.oregon.gov
        Alex.Jones@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS , <br><br> Plaintiff, <br><br> v. <br><br> LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity; MATT DONEGAN, KAREN MOYNAHAN, MARK WEBB, AND SILVIA TANNER, in their official capacities, <br><br> Defendants. | Case No.  3:25-CV-01334-SB <br><br> DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES <br><br><br> Hearing: February 6, 2026, at 9:00 a.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ........................................................................................iii

LOCAL RULE 7-1 CERTIFICATION ........................................................................ 1

MOTION......................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................... 1

       A.     The Plastic Pollution and Recycling Modernization Act......................... 1

             1.     Overview: The law requires producers to share the cost of managing environmental impacts of their products.................................. 1

             2.     The RMA specifies which products are covered and how to identify the responsible producer of each product. ..................................... 2

             3.     Producers' three obligations: join a PRO, report information to the PRO, and pay PRO membership fees. ........................................... 4

             4.     The PRO must meet its statutory obligations in accordance with a program plan reviewed and approved by DEQ............................. 4

             5.     The PRO must assess membership fees using a method reviewed and approved by DEQ................................................................. 7

             6.     DEQ has authority to enforce the RMA. .................................... 9

             7.     Administrative Rules further implement the RMA. .................................. 9

III.    LEGAL STANDARDS ....................................................................................... 11

       A.     Motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) ......................................................................................... 11

       B.     Motion to dismiss for failure to state a claim under Rule 12(b)(6) ...................... 11

IV.    ARGUMENT...................................................................................................... 12

       A.     The Eleventh Amendment bars this suit against the Oregon Environmental Quality Commission Defendants. ........................................................ 12

       B.     The Eleventh Amendment bars Plaintiff's state-law claims under *Pennhurst*. ........................................................................................ 14

       C.     The complaint fails to state a dormant Commerce Clause claim.......................... 16

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

D.      The complaint fails to state an unconstitutional conditions claim. ........................ 19

E.      The complaint fails to state a procedural due process claim. .............................. 20

F.      The complaint fails to state an equal protection claim. ........................................ 22

        1.      The Act's exemption of small producers is rationally related to a legitimate governmental purpose. ............................................................. 23

        2.      Plaintiff does not identify any disparate treatment between mid-sized producers and large producers. ....................................................... 25

**V.**      CONCLUSION ........................................................................................................... 27

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

## CASES

*Adams v. Johnson,*
    355 F.3d 1179 (9th Cir. 2004) ........................................................................................11, 12

*Akhtar v. Mesa,*
    698 F.3d 1202 (9th Cir. 2012). ...............................................................................................11

*Arizona Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014) ........................................................................................25, 26

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................................11

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013) ..................................................................................................16

*City of Damascus v. Brown,*
    266 Or. App. 416 (Or. Ct. App. 2014) ...................................................................................15

*Country Classic Dairies, Inc. v. State of Mont., Dep't of Commerce Milk Control Bureau,*
    847 F.2d 593 (9th Cir. 1988) ..................................................................................................23

*Dep't of Revenue of Ky. v. Davis*
    553 U.S. 328 (2008) ................................................................................................................16

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ................................................................................................................13

*Ex parte Young,*
    209 U.S. 123 (1908) ................................................................................................................13

*Exxon Corp. v. Governor of Maryland,*
    437 U.S. 117 (1978) ........................................................................................................17, 18

*Fayer v. Vaughn,*
    649 F.3d 1061 (9th Cir. 2011). ...............................................................................................11

*Flint v. Dennison,*
    488 F.3d 816 (9th Cir. 2007) ..................................................................................................13

*Gen. Motors Corp. v. Tracy,*
    519 U.S. 278 (1997) ................................................................................................................17

*Green v. Mansour,*
    474 U.S. 64 (1985) ..................................................................................................................14

*Hale v. State of Ariz.,*
    967 F.2d 1356 (9th Cir. 1992) ................................................................................................15

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Heller v. Doe,*
  509 U.S. 312 (1993) ...................................................................................24

*Idaho v. Coeur d'Alene Tribe of Idaho,*
  521 U.S. 261 (1997) ...................................................................................13

*Johnson v. Brown*
  567 F. Supp. 3d 1230 (D. Or. 2021) .........................................................15

*Legacy Health v. Hoyle,*
  2023 WL 34692 (D. Or. Jan. 3, 2023) ......................................................15

*Leite v. Crane Co.,*
  749 F.3d 1117 (9th Cir. 2014) ...................................................................11

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008) ...................................................................11

*Mecinas v. Hobbs,*
  30 F.4th 890 (9th Cir. 2022) ......................................................................13

*Minnesota v. Clover Leaf Creamery Co.,*
  449 U.S. 456 (1981) ...................................................................................25

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) ...................................................................................17

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
  429 U.S. 274 (1977) ..............................................................................12, 13

*Nat'l Audubon Soc'y, Inc. v. Davis,*
  307 F.3d 835 (9th Cir. 2002) .....................................................................13

*Nat'l Pork Producers Council v. Ross,*
  598 U.S. 356 (2023) ..............................................................................16, 18

*New Energy Co. of Ind. v. Limbach,*
  486 U.S. 269 (1988) ...................................................................................16

*New Orleans v. Dukes*
  427 U.S. 297 (1976) ...................................................................................23

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality,*
  511 U.S. 93 (1994) ................................................................................16, 17

*Pac. Merch. Shipping Ass'n v. Goldstene,*
  639 F.3d 1154 (9th Cir. 2011) ...................................................................24

*Papasan v. Allain,*
  478 U.S. 265 (1986) ...................................................................................12

*Planned Parenthood of Idaho, Inc. v. Wasden,*
  376 F.3d 908 (9th Cir. 2004) .....................................................................13

Page iv

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ................................................................................12, 15

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ....................................................................................16

*Rivera v. Anderson*,
   2025 WL 606212 (W.D. Wash. Feb. 25, 2025) .......................................14

*Rivera v. United States*,
   924 F.2d 948 (9th Cir. 1991) .....................................................................13

*Recinto v. U.S. Dep't of Veterans Affairs*,
   706 F.3d 1171 (9th Cir. 2013) ...................................................................27

*Rocky Mountain Farmers Union v. Corey*,
   730 F.3d 1070 (9th Cir. 2013) ...........................................................16, 19

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...................................................................11

*Seminole Tribe of Florida v. Florida*,
   517 U.S. 44 (1996)................................................................................13, 14

*Sopcak v. N. Mountain Helicopter Serv.*,
   52 F.3d 817 (9th Cir. 1995). ......................................................................11

*Spoklie v. Montana*,
   411 F.3d 1051 (9th Cir. 2005) ...................................................................15

*Stormans, Inc. v. Wiesman*,
   794 F.3d 1064 (9th Cir. 2015) ...................................................................23

*United States v. Lopez-Flores*,
   63 F.3d 1468 (9th Cir. 1995) ...............................................................22, 23

*United States v. Salerno*,
   481 U.S. 739 (1987)......................................................................................17

*Vance v. Bradley*,
   440 U.S. 93 (1979)........................................................................................25

## STATUTES, RULES, REGULATIONS

Oregon Constitution Article I
   § 10......................................................................................................10, 15
   § 20......................................................................................................11, 15
   § 21......................................................................................................11, 15

Oregon Constitution Article III
   § 1 ........................................................................................................11, 15

Oregon Constitution Article IV
   §1...............................................................................................................11

Page v

§ 1(1)...................................................................................................................15

ORS ch. 459A
    860.................................................................................................................1, 24
    863...............................................................................................................*passim*
    866.................................................................................................................3, 18
    869...............................................................................................................*passim*
    872.................................................................................................................4, 23
    875...............................................................................................................*passim*
    878.......................................................................................2, 6, 9, 20, 21
    881.............................................................................................2, 6, 9, 21
    884...............................................................................................................*passim*
    887.............................................................................................4, 6, 7, 21
    890.................................................................................................................2, 5
    896.................................................................................................................4, 5
    899....................................................................................................................6
    938....................................................................................................................5
    944.................................................................................................................8, 10
    962....................................................................................................................9

OAR ch. 340 div. 090
    0070....................................................................................................................4
    0840.................................................................................................................9, 10
    0910.................................................................................................................10

U.S. Const. art. I
    § 8.................................................................................................................10, 16

U.S. Const. amend. XIV
    § 1...................................................................................................................22

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# LOCAL RULE 7-1 CERTIFICATION

Counsel for Defendants Leah Feldon, Matt Donegan, Karen Moynahan, Mark Webb, and Silvia Tanner certify that the parties made a good faith effort to resolve the disputed issues raised below and were unable to do so.

# MOTION

Defendants move for an order dismissing this action for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion is supported by the Memorandum of Law below and the pleadings on file in this case.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff National Association of Wholesaler-Distributors filed this action challenging on constitutional grounds Oregon's Plastic Pollution and Recycling Modernization Act, a comprehensive statutory scheme designed to address a growing, global recycling and waste-disposal problem. The law does that by requiring the companies who bring packaging into this state to share the responsibility for managing the disposal of those products. Defendants move to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim.

## II.      BACKGROUND

### A.      The Plastic Pollution and Recycling Modernization Act

### 1.      Overview: The law requires producers to share the cost of managing environmental impacts of their products.

In 2021, the legislature enacted the Plastic Pollution and Recycling Modernization Act (RMA), to modernize Oregon's recycling programs, reduce negative impacts of products sold in or into the state, and to require producers of the products themselves "to share in the responsibility to reduce those impacts." ORS 459A.860(4). Producers share in that responsibility by forming or joining a producer responsibility organization (PRO): a nonprofit organization

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

formed by producers that pools the resources of its members to implement certain obligations on their behalf. ORS 459A.869(1); ORS 459A.863(23). If a business is a producer of certain types of products, that producer must join a PRO, report how much of each type of product they have sold in or into Oregon, and pay PRO membership fees based on what they sell. ORS 459A.869(1)–(2); ORS 459A.869(5)(b); ORS 459A.884(1). The PRO then uses those funds to cover costs associated with the recycling of those products, including by paying for recycling services provided by local governments and service providers. ORS 459A.890.

Before it begins operating, a PRO must submit a producer responsibility program plan, in which it explains how it will "[e]stablish, calculate and charge membership fees" in accordance with statutory requirements, how it will use those fees to provide for and fund recycling services, and how it will otherwise meet the obligations imposed by the RMA. ORS 459A.875(1)–(2). DEQ reviews the PRO's program plan, solicits and responds to feedback from an Oregon Recycling System Advisory Council (whose members must include representatives of producers or producer trade associations or suppliers), and makes the program plan available for public comment, before finally accepting or rejecting the plan. ORS 459A.878(1)–(2); ORS 459A.902(1)(c). The PRO must then implement the plan as approved by DEQ and must get DEQ approval before making changes to how it calculates membership fees or how it compensates local governments and service providers for recycling services. ORS 459A.875(3); ORS 459A.881(1)(b)–(c).

How the RMA applies to producers and PROs is further explained below.

## 2. The RMA specifies which products are covered and how to identify the responsible producer of each product.

The RMA applies to "producer[s]," meaning producers of "covered product[s]." ORS 459A.863(6), (22). Covered products include packaging, printing and writing paper, and food serviceware. ORS 459A.863(6)(a), (7), (18), (20). Certain products are exempt, such as beverage containers covered by Oregon's Bottle Bill. ORS 459A.863(6)(b) (exclusions from definition of

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"covered product"), (6)(b)(A) (beverage container exclusion). Covered products only include items that are ultimately disposed of within Oregon. ORS 459A.863(6)(b)(J). A business must join a PRO only if it is the "producer," for RMA purposes, of one or more covered products. ORS 459A.869(1).

The RMA specifies how to identify the producer of each category of covered product:

**Packaging:** For packaging, the producer of the packaging is generally the brand-holding manufacturer of the packaged item or (if there is no such manufacturer within the U.S.) the importer of the item. ORS 459A.866(1)(a)(A)–(C) (for packaged items sold at physical retail locations in Oregon, producer of packaging is manufacturer, licensee, or importer of the item); ORS 459A.863(9) (defining "licensee" as one who "manufactures" a branded product under license). For packaging used to ship an item for remote sale in or into Oregon, the producer of that packaging is the entity that packages and ships that item. ORS 459A.866(1)(b)(B). For the inner, original packaging of the item itself, the producer of that packaging is still the manufacturer or the importer—the same as if the item were sold at a physical retail location in Oregon. ORS 459A.866(1)(b)(A). For any packaging that does not fall into the categories of physical retail sale or remote sale, or for which a producer is otherwise not identified, the producer of the packaging is the entity that first distributes the packaged item in or into Oregon. ORS 459A.866(1)(c).

**Printing and writing paper:** For magazines, newspapers, catalogs, telephone directories, and similar publications, the producer is the publisher. ORS 459A.866(2)(a). For any other printing and writing paper, the producer is the brand-holding manufacturer or the importer—similar to how the producer of packaging is determined. ORS 459A.866(2)(b).

**Food serviceware:** For food serviceware, the producer is the entity that first sells the food serviceware in or into Oregon. ORS 459A.866(3).

For each covered product sold or distributed in or into Oregon, only one entity needs to fulfill producer responsibilities for RMA purposes. That is, a producer need not join a PRO if,

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

for each covered product the producer sells, another entity has already registered with a PRO as the producer responsible for that product. ORS 459A.869(4). And a producer need not pay membership fees for a covered product if another entity has registered as the producer responsible for that product. ORS 459A.869(3)–(4).

A producer need not join a PRO if it is a "small producer." ORS 459A.872(1). Small producers include businesses that had a gross revenue of less than $5 million for the most recent fiscal year and businesses that sold in or into Oregon less than one metric ton of covered products for use in the state in the most recent calendar year. ORS 459A.863(32)(c)–(d).

### 3. Producers' three obligations: join a PRO, report information to the PRO, and pay PRO membership fees.

The RMA imposes three obligations on producers. First, the producer must register with and be a member of a PRO. ORS 459A.869(1). Second, the producer must report information to the PRO as necessary to enable the PRO to meet its obligations under the RMA. ORS 459A.869(5)(b). That involves reporting to the PRO the total weight of each type of covered product the producer sold or distributed into the state in the prior calendar year, so that the PRO can report to DEQ the total amounts sold or distributed by the PRO's members collectively. ORS 459A.887(2)(c); *see* OAR 340-090-0070(1)(d). That information also enables the PRO to determine the costs of fulfilling the PRO's obligations with respect to each product type, and to calculate the membership fees owed by each producer to cover those costs. ORS 459A.884(1)–(2). Third, the producer must pay an annual membership fee to the PRO. ORS 459A.869(2), (5)(a). That fee is what funds the PRO's ability to meet its statutory obligations under the RMA and to implement its DEQ-approved program plan for meeting those obligations. ORS 459A.884(1); ORS 459A.875(3).

### 4. The PRO must meet its statutory obligations in accordance with a program plan reviewed and approved by DEQ.

The RMA imposes a number of specific obligations on the PRO. Those obligations include providing for the collection and responsible recycling of covered products identified by

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the EQC for inclusion on the PRO Recycling Acceptance List. ORS 459A.896(1). Where possible, the PRO must contract with existing recycling depots or drop off centers to provide for the collection of these covered products. ORS 459A.896(1)(a). The PRO must pay local governments and their service providers to cover certain recycling-related costs, including costs associated with the expansion and provision of recycling collection services, which enables local governments of over 4,000 residents to fulfill their obligation to collect the Uniform Statewide Collection List of materials, and costs of transporting covered products to recycling processing facilities. ORS 459A.890(1), (2)(a), (5)(a); ORS 459A.914(4); OAR 340-090-0030 (7)(a). The PRO must also enable the flow of materials to responsible end markets, if practicable, ORS 459A.896(2)(a), and enable modernization of Oregon's waste-sorting infrastructure by paying the contamination management fee and the processor commodity risk fee to commingled recycling facilities, ORS 459A.920; ORS 459A.923.

The PRO carries out these obligations by administering a producer responsibility program: a statewide program for the responsible management of covered products, pursuant to a plan approved by DEQ. ORS 459A.863(24). Before the PRO can begin operating, it must submit a producer responsibility program plan to DEQ for review, along with a fixed, one-time fee for the review of that plan. ORS 459A.875(1); ORS 459A.938(1)(a).

The RMA lists a number of requirements for what a program plan must address and include, and it requires that each element of the plan be set out "[u]sing objective and measurable criteria whenever possible." ORS 459A.875(2). The plan must describe how the PRO will administer its producer responsibility program to meet its obligations under the RMA. ORS 459A.875(2)(a). As part of that description, the program plan must specifically address several obligations listed in the statute and describe how the PRO will meet each obligation. ORS 459A.875(2(a)(A)–(J). Among those obligations, the program plan must describe how the PRO will: support the collection and recycling of covered products; provide for the collection of covered products and meet convenience and performance standards for those products; establish,

Page 5 -    DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND
            AUTHORITIESAND AUTHORITIES
        SV1/jc4/1004171948

                        Department of Justice
                        100 SW Market Street
                        Portland, OR 97201
                    (971) 673-1880 / Fax: (971) 673-5000

calculate, and charge membership fees; encourage producers to make continual reductions in the environmental and human health impacts of covered products through a graduated fee structure; and ensure that covered products collected for recycling will be transferred to responsible end markets. ORS 459A.875(2)(a)(A), (B), (E), (F), (H). Among other requirements, the program plan must also "[d]escribe the membership fee structure of the producer responsibility organization, including a schedule of the membership fees actually charged to members." ORS 459A.875(2)(h).

DEQ must review the program plan, solicit and respond to feedback on the plan from the Oregon Recycling System Advisory Council, and make the program plan available for public comment. ORS 459A.878(1)–(2); *see* ORS 459A.899(2) (designating how the 19 members of the Advisory Council are appointed and who must be included as members, including "[f]our representatives of producers of covered products or producer trade associations or suppliers"). DEQ will approve the plan only if it determines that it complies with the requirements of the RMA. ORS 459A.878(1)(a). If DEQ approves the plan, the PRO then must implement that DEQ-approved plan. ORS 459A.878(3). The PRO may not change the methods used to establish membership fees, or make various other changes listed in the statute, without first proposing an amendment to the program plan, which will be subject to DEQ review and approval before it can be put into effect. ORS 459A.881(1) (listing types of changes for which an amendment is required); ORS 459A.878 (DEQ review provisions, applying to both program plans and program plan amendments).

Each year, the PRO must submit an annual report to DEQ. ORS 459A.887(1). That report must include, among other things: a description of the PRO's efforts to ensure that collected covered products were responsibly managed and delivered to responsible end markets; a complete accounting of payments made to local governments; a summary of the PRO's financial status, including annual expenditures, revenues, and assets; a summary of all payments made to satisfy the PRO's obligations under the RMA; the PRO's membership fee schedule, the fees

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

collected by the PRO, and a description of how the fee schedule meets statutory requirements; and a report by an independent certified public accountant on the accountant's audit of the PRO's financial statements. ORS 459A.887(2)(d), (e), (g)–(j), (k), (v). DEQ must review each annual report, solicit feedback on each report from the Oregon Recycling System Advisory Council, and make each report available for public comment. ORS 459A.887(4). DEQ will approve the report only if it determines that the report meets the requirements of the RMA. ORS 459A.887(4). Otherwise, DEQ will provide the PRO with written notice of revisions necessary for approval. ORS 459A.887(5). If the PRO fails to submit a revised report, or if the revised report does not meet the statutory requirements to the satisfaction of DEQ, DEQ may bring an enforcement action against the PRO. ORS 459A.887(5).

5.    **The PRO must assess membership fees using a method reviewed and approved by DEQ.**

Producers fund their PROs through membership fees, in order to enable the PRO to meet its financial obligations under the RMA. ORS 459A.884(1). The RMA provides requirements for how those fees must be set. ORS 459A.884(1)–(7). The PRO's fee schedule and its method for establishing, calculating, and charging the fees must be reviewed and approved by DEQ. ORS 459A.875(2)(a)(E), (2)(h).

All PRO membership fees "[m]ust be designed to differentiate between types of covered products, and the materials and formats that comprise those covered products." ORS 459A.884(1). "Membership fees charged for different covered product types, materials and formats must be proportional to the costs to the producer responsibility organization for that covered product type, material or format." ORS 459A.884(1). No producer is required to pay fees for any covered product for which another entity has registered as the responsible producer. ORS 459A.869(3). Further, the PRO must establish uniform membership fees for members that have low gross revenues or sell low volumes of covered products. ORS 459A.884(6) (applying to "members that had a gross revenue of less than $10 million for the organization's most recent

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

fiscal year, or sold in or into Oregon less than five metric tons of covered products for use in this state in the most recent calendar year").

All membership fee schedules must meet the requirements outlined above. ORS 459A.884(1), (5)(a), (6). The RMA also provides further, more specific standards for how to set membership fees. ORS 459A.884(2)–(4). A PRO may propose an alternative to these specific standards, but any alternative fee structure must meet the requirements outlined above, it must "[p]rovide incentives to members to change the way the members produce, use and market materials in order to reduce environmental impact," and it must be reviewed and approved by DEQ. ORS 459A.884(5).

Unless the PRO has an approved alternative fee structure, fees must be set according to the standards of ORS 458A.884(2)–(4). Under these standards, a fee schedule must establish "material-specific base fee rates for all covered products sold or distributed in or into this state by a member of the [PRO]." ORS 459A.884(2). Each producer's fee must be calculated by multiplying the material-specific base fee rate by the total amount of covered products of each material sold or distributed in or into Oregon by that producer. ORS 459A.884(2). The base fee rate for each material must be approximately proportional to that material's relative contribution to the PRO's financial obligations, provided that the average base fee rates for recyclable materials are lower than the average base fee rates for non-recyclable materials. ORS 459A.884(3)(a). Further, the PRO must offer fee adjustments to producers that make changes to the ways in which they produce, use, and market covered products, including lower fees for covered products with a lower environmental impact and higher fees for covered products with a higher environmental impact. ORS 459A.884(4). In establishing that fee structure, the PRO must consider "[t]he post-consumer content of the material," the "[p]roduct-to-package ratio," the "[p]roducer's choice of material," "[l]ife cycle environmental impacts as demonstrated by an evaluation performed in accordance with ORS 459A.944," and "[t]he recycling rate of the material relative to the recycling rate of other covered products." ORS 459A.884(4)(a)–(e).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Before the PRO assesses any membership fees, DEQ must review and approve the PRO's method for calculating those fees, as part of DEQ's review of the program plan. ORS 459A.875(2)(a)(E), (2)(h). The plan must describe how the PRO will "[e]stablish, calculate and charge membership fees, including incentives, as described in ORS 459A.884." ORS 459A.875(2)(a)(E). It must also "[d]escribe the membership fee structure of the [PRO], including a schedule of the membership fees actually charged to members." ORS 459A.875(2)(h). If DEQ approves the program plan, the PRO must assess fees in accordance with that plan. ORS 459A.875(3). The PRO may not change the methods used to establish fees unless it submits a program plan amendment proposing that change for DEQ review and approval. ORS 459A.881(1)(a)(A), (b). If DEQ rejects the amendment, the PRO must continue to assess fees according to the method established in the approved program plan. ORS 459A.878(3).

### 6. DEQ has authority to enforce the RMA.

DEQ has authority to enforce the provisions of the RMA against producers and PROs. *See* ORS 459A.962. In accordance with the contested-case provisions of the APA, DEQ may issue an order requiring compliance with the RMA and may issue civil penalties for violations. ORS 459A.962(3)–(4). DEQ may suspend or revoke a PRO's program plan when an RMA violation poses a risk to the environment or public health, when a violation has had a material impact on the implementation and administration of the program plan, or when the PRO's membership falls below the required market share. ORS 459A.962(5)(a)–(c); ORS 459A.869(12). If a producer sells a covered product in or into the state without complying with the RMA, DEQ may request that the Department of Justice bring an action against the producer to prohibit the sale of that product in or into the state. ORS 459A.962(6).

### 7. Administrative Rules further implement the RMA.

Administrative rules promulgated by the EQC further implement the RMA and specify how its provisions apply to producers, PROs, and products. As directed by the RMA, the rules establish the list of materials for which a PRO must provide for the collection and responsible

DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIESAND AUTHORITIES
SV1/jc4/1004171948

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

recycling. OAR 340-090-0630(3). The rules also provide further specifics for determining which products are covered products and which covered products fall into which category. OAR 340-090-0840(1) (distinguishing between "packaging" and "food serviceware"), (2) (listing products that "are not covered products").

The rules also provide specifics for how a producer can conduct a "life cycle evaluation" (LCE), which evaluates and discloses the environmental impacts of covered products through the life cycle of the products. OAR 340-090-0910(1); *see* ORS 459A.944 (life cycle evaluation). Large producers—the 25 largest producers based on market share—are statutorily required to perform an LCE once every two years, while other producers may do so voluntarily to obtain a reduction of PRO membership fees. ORS 459A.944(1)–(2); ORS 459A.863(8). The rules specify that a large producer can get a fee reduction for its statutorily-required LCE only if it shows "proof of substantial impact reduction." OAR 340-090-0910(3)(b). Other producers can get a fee reduction for conducting a voluntary LCE, with or without proof of substantial impact reduction. OAR 340-090-0910(3)(a)–(b).

## B.     Plaintiff's Complaint

Plaintiff's First Amended Complaint ("Complaint") describes Plaintiff ("NAW") as "a national trade association whose members constitute wholesalers and distributors across the United States, including members that conduct business in Oregon." (Compl. ¶ 14, ECF No. 26.) Plaintiff alleges that, "in certain cases . . . NAW's members are considered 'producers' under the RMA." (Compl. ¶ 17.) The Complaint does not name any of NAW's members as plaintiffs.

Plaintiff claims that the RMA violates the following constitutional provisions: (1) the dormant Commerce Clause of the U.S. Constitution, art. I, § 8 (Compl. ¶¶ 68–73), the federal unconstitutional conditions doctrine under the Fourteenth Amendment (Compl. ¶¶ 74–79), the Due Process Clause under the U.S. Constitution, and the Oregon Constitution, art. I § 10 (Compl. ¶¶ 80–85), the Fourteenth Amendment's Equal Protection Clause, as well as the Oregon Constitution's prohibition on granting privileges exclusively to certain citizens or classes of

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

citizens, Or. Const. art. I, § 20 (Compl. ¶¶ 86–93), and the nondelegation doctrine under the Oregon Constitution, art. I, § 21; *id.* art. III, § 1; *id.* art. IV, § 1 (Compl. ¶¶ 94–100).

## III.    LEGAL STANDARDS

### A.    Motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)

A defendant contesting the court's jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may raise facial or factual jurisdictional challenges. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial challenge accepts the truth of plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* at 1121. When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

### B.    Motion to dismiss for failure to state a claim under Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. In evaluating whether the complaint states a claim, a court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

The court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And the court is not required to assume the truth of legal conclusions just because they are couched as factual

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

allegations. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.    ARGUMENT

Defendants ask the Court to dismiss Plaintiff's entire complaint on six grounds. First, Plaintiff's claims against the Oregon Environmental Quality Commission Defendants (collectively, "EQC Defendants") must be dismissed because the Eleventh Amendment bars this suit against them. Second, the Eleventh Amendment precludes this Court from exercising jurisdiction over Plaintiff's state constitutional claims. Third, Plaintiff's allegations do not establish that the RMA imposes a substantial burden on interstate commerce in violation of the dormant Commerce Clause. Fourth, Plaintiff's allegations do not establish that the RMA coerced its members into giving up constitutional rights. Fifth, Plaintiff's allegations do not establish a procedural due process violation because DEQ approved all elements of CAA's program plan and fee-setting methodology, and Plaintiff retains the right to seek judicial review. Sixth, Plaintiff's equal protection claim fails because, where Plaintiff identified disparate treatment of exempt small procedures, the RMA satisfies rational basis review.

## A.    The Eleventh Amendment bars this suit against the Oregon Environmental Quality Commission Defendants.

The complaint names Oregon Environmental Quality Commission members Matt Donegan, Karen Moynahan, Mark Webb, and Silvia Tanner as defendants (collectively, "EQC Defendants") in their official capacities. (*See* Compl. ¶ 19, ECF No. 26.) The EQC Defendants move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(1) on the ground they lack the required enforcement connection to satisfy the *Ex parte Young* exception to Eleventh Amendment sovereign immunity.

Generally, the Eleventh Amendment bars suit against non-consenting states "regardless of whether [the suit] seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v.*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Halderman*, 465 U.S. 89, 100, 102, 104 (1984); *Papasan v. Allain*, 478 U.S. 265, 276-78 (1986). The Eleventh Amendment also extends to state officials sued in their official capacity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), *superseded by statute on other grounds, as recognized in Rivera v. United States*, 924 F.2d 948 (9th Cir. 1991).

*Ex parte Young*, 209 U.S. 123 (1908), provides a limited exception to the Eleventh Amendment for suits seeking only "prospective injunctive relief" against state officials in their official capacity "in order to end a continuing federal law violation." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 45, 73 (1996); *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief[.]"); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269–70 (1997); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007). Additionally, the *Ex parte Young* exception permits a suit only when the named state official "has direct authority over and principal responsibility for enforcing [the law at issue]." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002). The state official's enforcement role must extend beyond "'a generalized duty to enforce state laws or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022) (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)).

Here, the complaint lumps the Oregon Environmental Quality Commission ("EQC") and the Oregon Department of Environmental Quality ("DEQ") together as the agencies responsible for the implementation and enforcement of the RMA's provisions. (Compl. ¶ 4 ("On its face, the Act is entrusted to the [EQC] and [DEQ] for administration.").) The complaint further asserts that EQC is "tasked under Oregon law with adopting rules and policies to govern and oversee DEQ's regulatory programs, including the EPR program." (Compl. ¶ 19.)

But aside from these conclusory allegations broadly characterizing EQC's responsibilities as including "administration" of the RMA, the only specific activity the complaint attributes to

SV1/jc4/1004171948

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

EQC is its adoption of the administrative rules implementing the RMA. (*See, e.g.,* Compl. ¶ 19 ("The EQC … directly approved several of the contested regulations implementing the Act."), ¶ 21 ("[T]he Act provides the framework for Oregon's EPR program, administered by DEQ through regulations approved by EQC."), ¶ 30 ("EQC is the administrative body charged with approving regulations issued under the Act…."), ¶ 31 (identifying the particular rules that EQC promulgated to implement the Act, Oregon Administrative Rules §§ 340-090-0600 to -0940). The complaint contains no allegations establishing that EQC has any role in the RMA's enforcement or is otherwise continuously engaging in some activity that violates federal law.

Promulgating the administrative rules that now guide DEQ in its own administration and enforcement of the RMA is insufficient to establish the *Ex parte Young* exception to Eleventh Amendment immunity. *See Rivera v. Anderson*, No. C24-0677-KKE, 2025 WL 606212, at *2-4 (W.D. Wash. Feb. 25, 2025) (dismissing claims against councilmembers for their adoption of the Washington State Energy Code because promulgating rules that other government agencies enforce does not implicate the *Ex parte Young* exception).

Absent allegations that EQC has an enforcement role or is continuously engaging in some activity that violates federal law, Plaintiff has not and cannot establish that the *Ex parte Young* exception should apply to the EQC Defendants. *See Seminole Tribe*, 517 U.S. at 45, 73. Because the Eleventh Amendment bars suit against the EQC Defendants and the *Ex Parte Young* exception does not apply, this Court should dismiss the EQC Defendants from this action. The EQC Defendants request dismissal without leave to amend.

**B.**     **The Eleventh Amendment bars Plaintiff's state-law claims under *Pennhurst*.**

As discussed above, the *Ex parte Young* exception to Eleventh Amendment immunity applies only in suits seeking "prospective injunctive relief to prevent a continuing violation of **federal law**." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (emphasis added). This exception is premised on the proposition that federal court authority to enjoin a "continuing violation of

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

federal law [is] necessary to vindicate the federal interest in assuring the supremacy of that law." *Id.*

Here, though, Plaintiff asks the Court to enjoin alleged violations of the following state constitutional provisions: Article I, § 10 ("No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.") (Third Cause of Action, Compl. ¶¶ 80-85); Article I, § 20 ("No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens) (Fourth Cause of Action, Compl. ¶¶ 86-93); Article I, § 21, Article III, § 1, Article IV, § 1(1) (nondelegation doctrine, *City of Damascus v. Brown*, 266 Or. App. 416, 440 (Or. Ct. App. 2014)) (Fifth Cause of Action, Compl. ¶¶ 94-100.)

None of these state constitutional claims can be heard in federal court because "the Eleventh Amendment deprives federal courts of jurisdiction to order state actors to comply with state law." *Hale v. State of Ariz.*, 967 F.2d 1356, 1369 (9th Cir. 1992), *on reh'g*, 993 F.2d 1387 (9th Cir. 1993); *see also Pennhurst*, 465 U.S. at 106 (holding *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law"); *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (holding state law claims for declaratory and injunctive relief under *Ex parte Young* was barred by *Pennhurst*). Thus, the State's constitution "cannot provide a basis for the injunctive relief Plaintiff[] request[s] because Defendants have sovereign immunity from this Court's jurisdiction to issue an injunction instructing state officials on how to conform their conduct to state law." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1257-58 (D. Or. 2021); *see also Legacy Health v. Hoyle*, No. 3:22-cv-00573-HZ, 2023 WL 34692 at *5 (D. Or. Jan. 3, 2023) (dismissing state law claims against state defendants as barred by Eleventh Amendment sovereign immunity). Plaintiff's state law claims must be dismissed in their entirety.[1]

---

[1] Because Defendants have immunity from suit for state constitutional claims, the remaining arguments will not address the merits of those claims.

Page 15 -  DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIESAND AUTHORITIES

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**C.**     **The complaint fails to state a dormant Commerce Clause claim.**

Defendants move to dismiss Plaintiff's first claim for relief for violation of the dormant Commerce Clause under Federal Rule of Civil Procedure 12(b)(6).

The Commerce Clause provides that "Congress shall have Power … [t]o regulate Commerce … among the several States." U.S. Const. art. I, § 8. This grant of power to Congress "has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994). "The modern law of what has come to be called the dormant Commerce Clause is driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).

Courts analyze whether laws are protectionist by examining the law on its face, in its purpose, and in its effects. *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013). This includes determining whether the state statute directly regulates or discriminates against interstate commerce, or otherwise favors in-state economic interests in effect. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013). A law that directly regulates or discriminates against interstate commerce is subject to the "strictest scrutiny." *Oregon Waste Sys.*, 511 U.S. at 101. Nondiscriminatory laws are constitutional except in a narrow subset of cases where "the burden imposed on interstate commerce … is clearly excessive in relation to the putative local benefits." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 377, 380 at n.2 (2023) (internal quotations omitted) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

To state a viable discrimination claim, Plaintiff must allege facts that, if accepted as true, support a reasonable inference that the RMA "benefit[s] in-state economic interests by burdening out-of-state competitors." *Davis*, 553 U.S. at 337-38 (cleaned up). "'[D]iscrimination' simply

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc.*, 511 U.S. at 99. Accordingly, Plaintiff must identify the in-state interests that are favored over their "similarly situated" out-of-state competitors. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) ("Conceptually, of course, any notion of discrimination[] assumes a comparison of substantially similar entities.").

Here, Plaintiff claims that the RMA violates the dormant Commerce Clause because it (1) "discriminates against out-of-state producers while imposing disproportionate compliance costs on out-of-state businesses"; (2) imposes an excessive burden on companies operating nationwide compared to the putative local benefits, disrupting the uniformity of national packaging and distribution practices; and (3) has "impermissible extraterritorial effects." (Compl. ¶¶ 70-73.) The Complaint's factual allegations do not support these claims, nor do they establish any dormant Commerce Clause violation.[2]

First, Plaintiff's contention that out-of-state businesses face higher costs than in-state businesses is not supported by the alleged facts or the law. Plaintiff alleges that out-of-state businesses must disaggregate Oregon-bound products from shipments with other destinations, requiring those businesses to adapt logistics and reporting systems at increased cost, "compared with in-state producers." (Compl. ¶ 70.) But Plaintiff's failure to identify an in-state competitor or articulate a comparison that would support a finding that the RMA benefits in-state businesses at the expense of out-of-state businesses is itself fatal to the discrimination claim. And increased compliance costs, even if borne largely by out-of-state businesses, do not amount to discrimination against interstate commerce. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 125-26 (1978) ("The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce.").

---

[2] For a facial constitutional claim, Plaintiff must establish that there is no set of circumstances in which the challenged law is constitutional. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (applying *United States v. Salerno*, 481 U.S. 739, 745 (1987)). None of Plaintiff's claims meet this demanding standard.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiff's allegations that "out-of-state businesses are more likely to be double-charged or erroneously treated as the responsible producer" similarly fail. (*See* Compl. ¶ 70.) As discussed above, the RMA applies to "producers" of "covered products." ORS 459A.863(6), (22). The RMA includes a granular definition for producers in a section entitled, "Determining producers of covered products," which explains the circumstances under which a manufacturer, brand owner, licensee, importer, publisher, or distributor is a producer of a given packaging material. ORS 459A.866. The RMA also defines covered products as including packaging, printing and writing paper, and food serviceware, as limited by certain exemptions. ORS 459A.863(6)(a)–(6)(b), (7), (18), (20). Covered products only include items that are ultimately disposed of within Oregon. ORS 459A.863(6)(b)(J). Businesses are only considered producers for specific covered products if they fall within the statutory definition. To the extent that Plaintiff's members are subject to "double-counting" or are erroneously treated as the responsible producer, it is not because the RMA requires or even allows it.

Second, Plaintiff's assertions that the RMA imposes an excessive burden on companies operating nationwide compared to the putative local benefits, disrupting an inherently national market, is without merit. Plaintiff asserts that the RMA "unduly burden[s]" interstate commerce because "distributors must alter distribution pathways or segregate inventory by destination state, increasing operational complexity." (Compl. ¶ 72.) The Commerce Clause, however, does not protect "particular firms … from prohibitive or burdensome regulations" or "the particular structure or methods of operation in a retail market." *Exxon*, 437 U.S. at 127–28. A plurality of the Court in *Pork Producers* agreed, concluding that shifting market share from one set of out-of-state firms to another is not a substantial burden on interstate commerce and does not violate the Commerce Clause. 598 U.S. at 384-85. Plaintiff's allegations do not establish a substantial or an excessive burden on interstate commerce, regardless of whether it is compared to the putative local interests. Nor is Plaintiff's preferred method of operation part of a protected "national market."

SV1/jc4/1004171948

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Third, Plaintiff contends that the RMA has "impermissible territorial effects" because it "forces out-of-state producers to make product and packaging design, sourcing, and distribution decisions in a manner consistent with the standards set by CAA." (Compl.¶ 73.) Plaintiff cites no statutory provisions for this argument, and with good reason: the RMA does not force any producer to make any product and packaging design, sourcing, or distribution decisions. As discussed above, producers have three obligations under the RMA: join or form a producer responsibility organization; report volume and type of covered products brought into Oregon; and pay fees based on that volume and type so that the PRO can ensure that all member producers comply with the RMA's requirements. No producer is required to change the packaging material they use. In any event, "[i]n the modern era, the Supreme Court has rarely held that statutes violate the extraterritoriality doctrine." *Rocky Mountain*, 730 F.3d at 1101.

Plaintiff's allegations do not establish a dormant Commerce Clause violation. The claim must be dismissed.

**D.      The complaint fails to state an unconstitutional conditions claim.**

Plaintiff claims that the RMA coerces producers into giving up "freedom of contract and due process protections" by requiring them to sign a non-negotiable contract with CAA to access the Oregon market. (Comp. ¶ 75.) Because the RMA does no such thing, Defendants move to dismiss Plaintiff's second claim for relief for violation of the federal unconstitutional conditions doctrine under Federal Rule of Civil Procedure 12(b)(6).

The RMA itself does not require producers to specifically join CAA. Instead, the RMA requires companies that meet the definition of a producer for a specific covered material to join **or form** a nonprofit producer responsibility organization ("PRO"), as Plaintiff itself acknowledges. (*See* Compl. ¶ 22 (alleging that producers may "establish their own program").) In fact, more than one PRO can operate in the state at the same time, and the RMA includes specific requirements for such a scenario. ORS 459A.869(9). Having acknowledged that the RMA allows producers to form their own PRO and so have an alternative to joining CAA,

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiff defeats its own claim. Plaintiff's contention that the costs associated with forming a PRO are "prohibitively expensive" does not save the claim; Plaintiff cannot establish that there is no set of circumstances in which the RMA would be constitutional.

In sum, the RMA does not compel producers to join CAA. Plaintiff's members have the option to create their own PRO under the law; whether they avail themselves of that option is their choice. That is not coercion requiring relinquishment of a constitutional right. The facts alleged in the Complaint do not state a claim for relief.

**E.      The complaint fails to state a procedural due process claim.**

In arguing that the RMA violates its members' procedural due process rights, Plaintiff focuses on the CAA contract and CAA's alleged actions rather than on DEQ's or EQC's actions and the RMA. To the extent that Plaintiff seeks to invalidate the RMA in its entirety, which appears to be the case, the focus should be on determining whether the RMA's provisions deprive producers of procedural due process. As discuss in Part II above, the RMA contains detailed requirements for PROs before, during, and after their submission and approval of a program plan, including fee setting. Many of those requirements are also set forth in the implementing rules, which DEQ promulgated in accordance with the rulemaking procedures required under Oregon's Administrative Procedures Act, ORS chapter 183, to include notice and public comment.

Plaintiff asserts that there is an "outsized risk that CAA will erroneously subject its members to unreasonable or arbitrary fees," arguing that the "introduction of additional safeguards, such as the right to comment on CAA's methodology or opportunity for judicial review, would provide immense value to producers." (Compl. ¶ 79.)

In response, Defendants refer to the RMA itself, as described in detail in the background section above. Here, a few key points:

- A PRO cannot operate in this state without an approved program plan. DEQ only approves a program plan after determining that it complies with the requirements of

the RMA. ORS 459A.878(1)(a). Once approved, the PRO must implement that plan, without modifying requirements such as methods used to establish membership fees unless the PRO first proposes a program plan amendment, which is again subject to DEQ review and approval. ORS 459A.878(3); ORS 459A.881(1) (listing types of changes for which an amendment is required); ORS 459A.878 (DEQ review provisions, applying to both program plans and program plan amendments).

- Producers fund their PROs through membership fees, so the PRO can meet its financial obligations under the RMA. ORS 459A.884(1). The RMA provides requirements for how those fees must be set, and the PRO's fee schedule and its method for establishing, calculating, and charging the fees must be reviewed and approved by DEQ. ORS 459A.884(1)–(7); ORS 459A.875(2)(a)(E), (2)(h).

- Each year, the PRO must submit an annual report to DEQ that includes, among other things: a description of the PRO's efforts to ensure that collected covered products were responsibly managed and delivered to responsible end markets; a complete accounting of payments made to local governments; a summary of the PRO's financial status, including annual expenditures, revenues, and assets; a summary of all payments made to satisfy the PRO's obligations under the RMA; the PRO's membership fee schedule, the fees collected by the PRO, and a description of how the fee schedule meets statutory requirements; and a report by an independent certified public accountant on the accountant's audit of the PRO's financial statements. ORS 459A.887(1); ORS 459A.887(2)(d), (e), (g)–(j), (k), (v). DEQ must review each annual report, solicit feedback on each report from the Oregon Recycling System Advisory Council, and make each report available for public comment. ORS 459A.887(4). DEQ will approve the report only if it determines that the report meets the requirements of the RMA. ORS 459A.887(4).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

- DEQ, not CAA, has enforcement authority over the program. Under the RMA, DEQ can begin enforcement proceedings under Administrative Procedures Act against non-compliant producers, which provides such producers with access to judicial review.

In sum, Plaintiff's assertion that DEQ "ced[ed], effectively, complete control over the determination of fees to a single, self-interested private organization" is directly contradicted by the RMA, as is Plaintiff's assertion that "members must waive any opportunity to litigate disputes in court." (Compl. ¶ 79.) The RMA contains detailed, comprehensive requirements for DEQ, PROs, and producers, with plenty of opportunity for public input and continuing DEQ oversight. Plaintiff's procedural due process claim is without merit.

**F.     The complaint fails to state an equal protection claim.**

Plaintiff claims that the Act violates the Equal Protection Clause of the Fourteenth Amendment by treating mid-sized producers differently from small and large producers, "based solely on scale." (Compl. ¶ 91.) Plaintiff claims that mid-sized producers suffer "disproportionate regulatory burdens" because they "fall[] above the statutory exemption thresholds [for small producers] but lack the market power and internal infrastructure of large producers." (Compl. ¶ 88.) This claim fails as a matter of law for two reasons. First, there is a rational basis for requiring only mid-sized and large producers to join PROs, given their higher output of products and packaging and their greater resources with which to fund end-of-use management. Second, with regard to the difference between large producers and mid-sized producers, Plaintiff fails to identify any disparate treatment against mid-sized producers at all.

Under the Equal Protection Clause, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim for an equal protection violation, a plaintiff must show that (1) the law causes members of a certain group to be treated differently from other persons based on membership in that group; and (2) the distinction made between groups is unjustified in light of the applicable level of scrutiny. *United*

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995). Unless the law makes a distinction that "trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," the applicable level of scrutiny is rational basis review. *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Under rational basis review, courts must "presume the constitutionality" of the classification and require only that it be "rationally related to a legitimate state interest." *Id.* Here, the RMA satisfies rational basis review with respect to both small and large producers.

1. **The Act's exemption of small producers is rationally related to a legitimate governmental purpose.**

Plaintiff claims that mid-sized producers are being treated differently from "similarly situated producers—those selling comparable products into Oregon—. . . based solely on scale." (Compl. ¶ 92.) Plaintiff first points to the provision of the Act that exempts "small producers" from the requirement of joining a PRO. (Compl. ¶ 89); *see* ORS 459A.872. "Small producers" include producers that have a gross revenue of less than $5,000,000 and those that sell less than one metric ton of covered products in or into Oregon for use in the state. ORS 459A.863(32).

The distinction drawn by the small-producers exemption is subject to rational basis review, because it is part of an economic regulatory structure and is not based upon a suspect class. *See Dukes*, 427 U.S. at 303. Distinguishing between producers based on their revenue or their physical output does not burden a fundamental right. *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1087 (9th Cir. 2015). The right asserted by Plaintiff here, "carefully stated and narrowly identified," is a right to distribute products into Oregon free of environmental regulations and fees aimed at managing the waste generated by products and their packaging. *See id.* at 1086. That is not a fundamental right. *See Country Classic Dairies, Inc. v. State of Mont., Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988) (citing *Dukes*, 427 U.S. at 303–05) ("The Supreme Court has held that the right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause."). Therefore, rational basis review applies.

SV1/jc4/1004171948

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Under rational basis review, the small-producers exemption bears "a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). The distinction between small producers and other producers is valid if there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320. "[A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal quotation marks omitted). "[T]he burden is on the one attacking the [classification] to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320–21 (internal quotation marks, internal citations, and brackets omitted).

Here, Plaintiff cannot meet its burden of negating "every conceivable basis" which might support distinguishing between small producers and other producers in the context of an EPR program. *See id.* at 320 (internal quotation marks omitted). Oregon has a legitimate interest in the "prevent[ion] and reduc[tion] [of] the negative environmental, social, economic and health impacts of production, consumption and end-of-use management of products and packaging across their life cycle." *See* ORS 459A.860(4); *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1181 (9th Cir. 2011) ("The protection of our environment has repeatedly been recognized as a legitimate and important state interest."). The small-producers exemption is rationally related to that interest. It is "reasonably conceivable" that there is a connection between the physical volume of a producer's sales and the impact that those products and their packaging will have on the environment. *See Heller*, 509 U.S. at 320. It is also reasonably conceivable that a producer with higher gross revenues will be better equipped to bear the costs and responsibilities of reducing environmental impacts than producers with lower revenues. For both of those reasons, there is a rational basis to require mid-sized and large producers to join a PRO and contribute fees that fund the end-of-use management of products and packaging, while exempting smaller producers that have less output or fewer resources.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Even if the State *could* have furthered its interests by imposing a "uniform" obligation, requiring *all* producers to join a PRO, that would not negate the State's rational basis for focusing on mid-sized and large producers. (*See* Compl. ¶ 93.) Arguing that the PRO requirement is "underinclusive," and thus that the "line drawn by [the government] [is] imperfect," does not establish that it is irrational. *Vance v. Bradley*, 440 U.S. 93, 108 (1979). "[The Supreme] Court has made clear that a [state] need not strike at all evils at the same time or in the same way, and that a [state] may implement its program step by step, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) (internal quotation marks, citations, and brackets omitted). Further, the question is not whether the program, as designed, will "*in fact*" further the State's goals; the question is whether the State "*could rationally have decided*" that requiring mid-sized and large producers to join PROs might further those goals. *See id.* Because the State could rationally have decided that mid-sized and large producers bear more responsibility for the impacts of product and packaging on the environment, and that those producers are better equipped to bear the costs of dealing with those impacts, the Act's exemption of small producers withstands rational-basis review.

**2. Plaintiff does not identify any disparate treatment between mid-sized producers and large producers.**

Plaintiff also claims that mid-sized producers are disadvantaged relative to large producers, who benefit from "market power and internal infrastructure" that mid-sized producers lack. (Compl. ¶ 88.) But, while Plaintiff makes various assertions about the advantages of being a large producer, Plaintiff does not identify any disparate treatment between mid-sized and large producers under the challenged law. Plaintiff's arguments about large producers therefore cannot support an equal protection claim.

To state an equal protection claim, a plaintiff must allege facts showing that "a class that is similarly situated has been treated disparately." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d

Page 25 -  DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIESAND AUTHORITIES

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1053, 1063 (9th Cir. 2014). Here, assuming that large producers are similarly situated to mid-sized producers, the Complaint does not identify any disparate treatment. None of Plaintiff's allegations indicate that the RMA, its implementing regulations, or the approved program plan single out mid-sized producers for more onerous burdens or obligations.

Instead, Plaintiff's allegations concern advantages that larger businesses might have as a result of their greater scale or greater resources—*not* as a result of any different treatment under the law. For example, Plaintiff alleges that the program plan allows large producers to receive fee reductions or bonuses for conducting LCEs and changing their product packaging. (Compl. ¶ 90.) Plaintiff does not allege that the law or the program plan bars mid-sized producers from obtaining those fee reductions or bonuses. Plaintiff merely asserts that large producers are better able to bear the expenses of conducting LCEs. (Compl. ¶ 90.) That is not disparate treatment. The possibility that businesses with more resources might be better positioned to adjust their practices, and thus to take advantage of incentive programs meant to encourage such changes, does not mean that the law is treating those businesses differently. It just means that businesses with more money might have more flexibility, as they might under any generally applicable regulatory scheme.

Likewise, none of Plaintiff's other allegations identify any provision of law—or even of the program plan—that singles out large producers for favorable treatment based on their size. Plaintiff asserts that large producers benefit from "economies of scale" that enable them to reduce their compliance costs, and that large producers are better able to absorb or pass through those costs than mid-sized producers are. (Compl. ¶ 91.) Those allegations merely describe advantages of being a large and well-resourced business, not special privileges conferred by the law. And while Plaintiff asserts that large producers have more "bargaining power" to contractually shift costs and have more "influence" within the PRO, Plaintiff does not point to any provision of law or the program plan that grants large producers powers that mid-sized producers lack. (Compl. ¶ 91.)

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Thus, Plaintiff's assertions concern disparities of power between businesses of different sizes, without identifying any disparate *treatment* under the law. Plaintiff's allegations suggest, at most, that mid-sized producers are at a relative disadvantage when they are treated the *same* as larger producers with more resources. Such allegations do not state an equal protection claim. The Equal Protection Clause does not require the State to neutralize the economic advantages that larger businesses might enjoy due to their size. The Clause is concerned with "disparate *treatment*" of different groups. *Recinto v. U.S. Dep't of Veterans Affairs*, 706 F.3d 1171, 1177 (9th Cir. 2013) (emphasis added). Here, Plaintiff fails to identify any disparate treatment of mid-sized producers as opposed to large producers. Plaintiff's equal protection claim fails as a matter of law.

## V.     CONCLUSION

The EQC Defendants enjoy Eleventh Amendment sovereign immunity should be dismissed from this action. Similarly, because the Eleventh Amendment precludes a federal court from exercising jurisdiction over state law claims against state defendants, the Court should

SV1/jc4/1004171948

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

dismiss Plaintiff's state constitutional claims. Defendants respectfully request that the Court dismiss Plaintiff's remaining claims because the Complaint's allegations fail to state a claim for relief.

DATED December <u>22nd</u>, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

<u>s/ Sara Van Loh</u>
SARA D. VAN LOH #044398
Senior Assistant Attorney General
ALEXANDER C. JONES #213898
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov
Alex.Jones@doj.oregon.gov
Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000