THE HONORABLE MICHAEL SIMON

CHRISTOPHER A. MEYER (NYB # 6015028)
cmeyer@earthjustice.org
[*Pro Hac Vice Application Pending*]
Earthjustice
48 Wall Street, Floor 15
New York, NY 10005-2903
(917) 410-8753

MOLLY TACK-HOOPER (OSB #212147)
mtackhooper@earthjustice.org
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104-1831
(206) 701-9763

*Attorneys for [Proposed] Amicus Curiae*
*Professor Sarah J. Morath*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS, | Case No.: 3:25-cv-1334-SI |
| Plaintiff, | |
| v. | **PROFESSOR SARAH J. MORATH'S [PROPOSED] BRIEF AS *AMICUS CURIAE* IN OPPOSITION TO PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION** |
| LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity; MATT DONEGAN, KAREN MOYNAHAN, MARK WEBB, and SILVIA TANNER, in their official capacities as members of the Oregon Environmental Quality Commission, | |
| Defendants. | |

1

## TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE.................................................................................4

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................4

ARGUMENT ...............................................................................................................6

I.    STATES FACE A PLASTIC POLLUTION CRISIS.......................................6

    A.    Plastic Pollution Seriously Threatens Human Health..............................6

    B.    States Turned to the EPR Framework After Past Approaches Proved
        Insufficient. ..............................................................................................8

II.   OREGON'S RESPONSE TO THE PLASTIC POLLUTION CRISIS IS
    NEITHER NOVEL NOR UNPRECEDENTED...........................................10

    A.    States Have Used EPR Laws for Almost Forty Years............................10

    B.    The Plastic Pollution Act Does Not Grant Unprecedented Authority to
        PROs. ......................................................................................................12

    C.    The Plastic Pollution Act's Broad Definition of "Producer" Is Also Not
        New. ........................................................................................................18

CONCLUSION ..........................................................................................................19

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

# TABLE OF AUTHORITIES

**Page(s)**

**State Statutes**

10 V.S.A. § 7583(a) ................................................................................................15

Colo. Rev. Stat. Ann. § 25-17-1004.......................................................................16

Conn. Gen. Stat. §§ 22a-904, 904a ........................................................................14

D.C. Code § 8-771.01(2), (11)(A) .........................................................................18

D.C. Code § 8-771.02(a)(1) ...................................................................................15

1991 Minn. Laws 914, 915 ....................................................................................11

Minn. Stat. § 115A.1415 ........................................................................................14

N.Y. Env't Conservation Law § 27-1807(1)(d)(2) ................................................15

O.R.S. § 459A.825..................................................................................................14

O.R.S. § 459A.827(4)(f) .........................................................................................16

O.R.S. § 459A.832..................................................................................................14

O.R.S. § 459A.835..................................................................................................14

O.R.S. § 459A.860(1)-(2) .........................................................................................5

O.R.S. § 459A.884(1) .............................................................................................16

**Other Authorities**

European Parliament Directive 2008/98/EC, O.J.L. 312, art. 3(5)........................19

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

**INTEREST OF AMICUS CURIAE**

Professor Sarah J. Morath is a Professor of Law and the Associate Dean for International Affairs at Wake Forest University School of Law.  A leading expert on plastic pollution and recycling, she authored *Our Plastic Problem and How to Solve It* from Cambridge University Press.[1]  Her scholarship has been published in numerous law reviews as well as public media outlets including *The Christian Science Monitor*, *The Regulatory Review*, *Bloomberg Law*, and *The Hill*.

Because of her longstanding focus on the persistent problem of plastics pollution, Professor Morath is uniquely positioned to help the Court understand the context in which extended producer responsibility laws for packaging waste have been enacted.  She submits this brief to demonstrate that EPR laws are an important tool for addressing the significant environmental threat of plastic pollution, and that, contrary to the industry challenger's suggestion, the Plastic Pollution and Recycling Modernization Act is a reasonable and well-precedented response to a mounting environmental crisis.  The law—enacted after other state-level attempts to address plastics pollution did not do enough—applies a familiar extended producer responsibility framework to the plastic packaging sector.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In challenging the Plastic Pollution and Recycling Modernization Act (the "Plastic Pollution Act"), the National Association of Wholesaler-Distributors ("NAW") repeatedly insists that the law is an excessive response to the plastic pollution crisis and an "unprecedented"

---

[1] Sarah J. Morath, *Our Plastic Problem and How to Solve It* (2022).

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

development in waste management policy.[2]  The implication is that the Court should view the Plastic Pollution Act's constitutionality with skepticism.  But NAW's factual assertions are wrong twice over.

First, the Plastic Pollution Act is a proportionate response to an urgent and mounting plastic pollution crisis.  Despite the growing threat of plastic pollution to human and environmental health, prior state attempts to address the problem have been insufficient—a fact Oregon's legislature expressly acknowledged when enacting the Plastic Pollution Act.[3]  Second, the structure of the Plastic Pollution Act is neither novel nor unprecedented.  The well-tested extended producer responsibility ("EPR") framework employed in the Plastic Pollution Act has seen broad adoption both domestically and internationally.  State-level EPR laws have existed for decades, often with support from industry and the federal government.  And several of these laws apply precisely the same regulatory mechanisms—such as granting fee-setting authority to a single producer responsibility organization ("PRO") or requiring dispute resolution through mandatory arbitration—that NAW decries here.

Ultimately, an accurate understanding of the Plastic Pollution Act's history and context, along with the arguments set forth in Oregon's brief,[4] leads to the conclusion that the statute is constitutional.

---

[2] *See* Pl.'s Br. in Supp. of Prelim. Inj. at 8-9, 27-28, 35.

[3] *See* O.R.S. § 459A.860(1)-(2) (recognizing that Oregon's recycling policies were outdated, and that the State was not on target to achieve its waste recovery goals).

[4] *See* Defs.' Br. in Opp. to Prelim. Inj. at 13-27 (explaining that NAW's legal arguments misconstrue the relevant constitutional principles).

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

**ARGUMENT**

**I.    STATES FACE A PLASTIC POLLUTION CRISIS.**

    A.    <u>Plastic Pollution Seriously Threatens Human Health</u>.

Plastic is everywhere.  It is at the bottom of the Mariana Trench.[5]  It is at the top of

Mount Everest.[6]  Overall, humans have produced more than eight million metric tons of virgin

plastic, five million tons of which remain in landfills or the natural environment.[7]  The largest

plastics market in the world is, perhaps unsurprisingly, packaging—a trend "accelerated by a

global shift from reusable to single-use containers."[8]

The global plastics problem is getting worse.  "[S]ince 1950, plastic production has

increased exponentially with no signs of slowing down,"[9] and production could increase by up to

three hundred percent by 2050.[10]  A major driver of this trend is the economic incentive to

produce and use virgin plastic.  Plastics are made from petrochemicals, and the federal

government generously subsidizes fossil-fuel extraction and processing.[11]  So, the inputs for

---

[5] Damian Carrington, *Plastic Pollution Discovered at Deepest Point of Ocean*, Guardian, Dec. 20, 2018, https://bit.ly/4q9544B.

[6] Damian Carrington, *Microplastic Pollution Found Near Summit of Mount Everest*, Guardian, Nov. 20, 2020, https://bit.ly/3MxSaP8.

[7] Roland Geyer et al., *Production, Use, and Fate of All Plastics Ever Made*, 3 Sci. Advances at 1, 3 (Jul. 2017), https://doi.org/10.1126/sciadv.1700782.

[8] *Id.* at 1.

[9] Monika Dokl et al., *Global Projections of Plastic Use, End-Of-Life Fate and Potential Changes in Consumption, Reduction, Recycling and Replacement With Bioplastics to 2050*, 51 Sustain. Prod. & Consumption 498, 498 (2024), https://doi.org/10.1016/j.spc.2024.09.025.

[10] *Id.*

[11] Roberta Mann, *Targeting Plastic Pollution with Taxes*, 37 J. Land Use & Envtl. L. 251, 264-73 (2022), https://dx.doi.org/10.2139/ssrn.4284169.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

virgin plastic are underpriced.[12]  Moreover, consumers can "freely discar[d]" plastic products

and shift waste management costs to states and municipalities.[13]  The upshot is that producers

can "design and market products which have high end-of-life waste management costs without

facing any penalty" for doing so.[14]

The resulting accumulation of plastic waste in the environment threatens human safety.[15]

Microplastics infiltrate almost every human organ.[16]  Research suggests that these microplastics

act as "Trojan horses" for toxic plastic additives—including "known human carcinogens,

endocrine disruptors, neurotoxicants, and persistent organic pollutants"—to enter the human

body.[17]  And children are especially vulnerable.  For example, studies show that dangerous

endocrine-disrupting plastic additives can pass to children through the placenta and through

breast milk.[18]

The health effects of plastic waste are especially pronounced in coastal states like

Oregon.  One study of thirty different aquatic sites in Oregon—both inland and on the coast—

---

[12] *Id.* at 291.

[13] *Id.* at 290.

[14] *Id.* at 290-91.

[15] The detrimental effects of plastic on animal health are also well-established, with impacts including microplastic contamination of the food chain, coral reef destruction, and fatal entanglement.  *See* Philip J. Landrigan et al., *The Minderoo-Monaco Commission on Plastics and Human Health*, 89 Annals of Global Health at 55-67 (Mar. 2023), https://annalsofglobalhealth.org/articles/10.5334/aogh.4056.

[16] Bridget Balch, *Microplastics Are Inside Us All. What Does That Mean for Our Health?*, Ass'n of Am. Med. Colleges, June 27, 2024, https://bit.ly/4pwAOkb.

[17] Landrigan et al., *The Minderoo-Monaco Commission* at 4, 78.

[18] *Id.* at 79.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

found microplastic contamination at every one of them.[19]  And research suggests that living near microplastic-polluted coastal waters significantly increases the risk of developing diabetes and coronary artery disease.[20]  Furthermore, plastic production and decomposition currently account for around four percent of global greenhouse-gas emissions, with plastic-related emissions projected to more than double in magnitude by 2060.[21]  Climate change caused by greenhouse gas emissions threatens human health and safety in myriad ways,[22] and coastal states like Oregon are especially threatened by the sea level rise associated with climate change.[23]

    B.    States Turned to the EPR Framework After Past Approaches Proved Insufficient.

States are the front line against the plastic pollution crisis.[24]  But they cannot easily dispose of the growing mountains of plastic waste.  Historically, states have shipped plastic waste abroad to be buried or incinerated.[25]  Those exports have plummeted since China began

---

[19] Env't Or., Rsch. & Policy Ctr., *Microplastics in Oregon: A Survey of Waterways* at 1 (2021), https://bit.ly/4rRgN9v.

[20] *See generally* Bhargav Makwana et al., *Marine Microplastic Levels and the Prevalence of Cardiometabolic Diseases in US Coastline Counties*, 14 J. of the Am. Heart Ass'n at 1 (July 2025), https://doi.org/10.1161/JAHA.124.039891.

[21] *See* Landrigan et al., *The Minderoo-Monaco Commission* at 93.

[22] *See generally* Or. Health Auth., *Climate and Health in Oregon* (2023), https://bit.ly/3MHWZpc.

[23] *See* April Ehrlich, *Sea Level Rise Threatens Critical Sites Along Oregon Coast, Analysis Warns*, Or. Pub. Broad., June 25, 2024, https://bit.ly/4iTZosR.

[24] Despite the scope of the plastic pollution crisis, there is no federal incentive to reduce or reuse plastic.  *See* Roberta Mann, *Targeting Plastic Pollution with Taxes* at 298.

[25] *See* Erin McCormick et al., *Where Does Your Plastic Go? Global Investigation Reveals America's Dirty Secret*, Guardian, June 17, 2019, https://perma.cc/UX99-DGAK.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

refusing new shipments in 2018.[26]  Domestic landfills cannot fill the gap.  Many of them are

rapidly reaching capacity, and even plastics that make it to a landfill routinely leak into the

ocean.[27]  Traditional recycling is also not a viable alternative.  Domestic recycling rates have

historically not exceeded ten percent, and in recent years have fallen to a meager five percent.[28]

That leaves incineration—a toxic process that releases dangerous pollutants such as lead and

mercury, often in low-income communities and communities of color.[29]

Targeted bans or taxes on single-use products, such as shopping bags or clamshell

containers, have also failed to curb the growing plastic pollution problem.  For example, twelve

states have banned single-use shopping bags, and fourteen have phased out single-use Styrofoam

food containers.[30]  While studies suggest that these laws reduce plastic litter,[31] the laws

nevertheless "focus on small product streams, which means . . . they have less impact" on overall

---

[26] *See, e.g.*, Erin McCormick et al., *Americans' Plastic Recycling Is Dumped in Landfills, Investigation Shows*, Guardian, June 21, 2019, https://perma.cc/ZQN8-9ZQX; Kimiko de Freytas-Tamura, *Plastics Pile Up as China Refuses to Take the West's Recycling*, N.Y. Times, Jan. 11, 2018, https://perma.cc/9HL3-MDPL.

[27] Robert W. Adler & Carina E. Wells, *Plastics and the Limits of U.S. Environmental Law*, 47 Harv. Env't L. Rev. 1, 11-12 (2023), https://dx.doi.org/10.2139/ssrn.4058628.

[28] Beyond Plastics, *The Real Truth About the U.S. Plastics Recycling Rate* at 3 (Web Resolution Report) (May 4, 2022), https://www.beyondplastics.org/publications/us-plastics-recycling-rate.

[29] Nancy Lauer et al., Nicholas Inst. for Energy, Env't, & Sustainability, Duke Univ., *The Social Cost of Plastic to the United States* at 8 (2025), https://bit.ly/4s68IOv.

[30] Ocean Conservancy, *United States of Plastics* at 3 (July 2025), https://oceanconservancy.org/work/plastics/policy/united-states-of-plastics-report/.

[31] *See, e.g.*, Anna Papp & Kimberly L. Oremus, *Plastic Bag Bans and Fees Reduce Harmful Bag Litter On Shorelines*, 388 Science, 48 (June 2025), https://doi.org/10.1126/science.adp9274.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

plastic consumption.[32]  In essence, isolated restrictions are no substitute for a comprehensive legal framework that addresses the full lifecycle of plastic production, use, and disposal.

EPR is one such framework.  Broadly speaking, EPR laws make a producer "responsible for their products until the end-of-life stage, when their packaging and products have turned into waste."[33]  They therefore shift the responsibility for waste disposal away from consumers and municipalities, and back onto producers—the entities in the best position to influence product design and packaging.  This "polluter pays" approach has several benefits.[34]  First, it forces plastic producers to internalize the costs of waste disposal, rather than shifting those costs to localities.  Second, it creates incentives for firms to redesign plastic products with an eye toward sustainability and reusability, rather than single use.  Third, it encourages firms to finance updated and improved state recycling infrastructure.

## II.    OREGON'S RESPONSE TO THE PLASTIC POLLUTION CRISIS IS NEITHER NOVEL NOR UNPRECEDENTED.

A.    States Have Used EPR Laws for Almost Forty Years.

As NAW itself admits, EPR laws have an established pedigree in the United States.[35] The first state-level EPR efforts began in the early 1990s, when Minnesota and several other

---

[32] OECD, *The Global Plastics Outlook: Economic Drivers, Environmental Impacts and Policy Options* at 122 (2022), https://www.oecd.org/en/publications/global-plastics-outlook_de747aef-en/full-report.html; *see also* Pew, *Breaking the Plastic Wave 2025* (Dec. 3, 2025), https://bit.ly/4qkxecZ (noting that state policies "still tend to be narrowly focused and have not adopted . . . full life-cycle approaches" to the plastic pollution crisis).

[33] World Wildlife Fund, *Legal Framework Study of Extended Producer Responsibility* at 6 (Aug. 2019), https://bit.ly/4oSNVLB.

[34] *Id.* at 9.

[35] Br. in Supp. of Prelim. Inj. at 9.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

states adopted legislation requiring producers to take back spent lithium-ion batteries.[36]  Now, almost forty years later, there are more than 146 state-level EPR laws in thirty-five states.[37] Those laws cover more than a dozen product categories, including pharmaceuticals, paint, carpets, mattresses, mercury thermostats, batteries, and electronic waste.[38]  Since 2021, seven states (including Oregon) have passed EPR laws for plastic packaging waste,[39] partially in response to China's ban on further plastic waste exports.[40]

State EPR laws have been met with broad federal and industry support.  Federal backing began in the mid-1990s, when President Clinton's Council on Sustainable Development encouraged states, localities, and private companies to use EPR policies in waste management.[41] And this support has persisted under both Democratic and Republican administrations.  For instance, the first Trump Administration renewed federal involvement in an ongoing multi-state

---

[36] LeRoy C. Paddock, *Extended Producer Responsibility: It's Time to Embrace the Concept*, Nat. Resources & Env't at 4, 7 (Summer 2022); *see also* 1991 Minn. Laws 914, 915 (requiring that battery manufacturers establish a "system for the proper collection, transportation, and processing of waste batteries").

[37] Product Stewardship Inst., *EPR Laws in the United States* (last accessed Dec. 10, 2025), https://bit.ly/4q7XBTv.

[38] *Id.*

[39] Product Stewardship Inst., *Packaging* (last accessed Dec. 10, 2025), https://bit.ly/3XOq2tA.  While they are relatively new in the United States, EPR laws targeting plastic packaging waste are quite common internationally.  More than one hundred such laws are in effect around the globe.  Global Plastic Laws, *Extended Producer Responsibility* (last accessed Dec. 12, 2025), https://bit.ly/44meotx.

[40] *See* Nat'l Conf. of State Legislatures, *Extended Producer Responsibility—Packaging* (last accessed Dec. 10, 2025), https://bit.ly/4a4o1AK.

[41] Pres. Council on Sustainable Dev., *Sustainable America: A New Consensus for Prosperity, Opportunity, and a Healthy Environment for the Future* at 38 (1996), https://bit.ly/3KVEWv5.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

program to reclaim mercury auto switches,[42] while the Biden Administration recognized EPR as "an example of a policy approach that has been effective at achieving . . . [plastic] reduction and reuse goals . . . at the national and subnational levels."[43]  Industry support has also been steady. As EPR adoption accelerated in the mid-1990s, industry representatives at a workshop convened by the Council on Sustainable Development recognized that "[w]hile voluntary [EPR] policies are ideal, mandates are often necessary."[44]  More recently, over one hundred leading businesses, including packaged goods companies like Unilever, L'Oreal, and Coca-Cola, endorsed "mandatory, fee-based EPR" for plastic packaging waste.[45]

      B.      The Plastic Pollution Act Does Not Grant Unprecedented Authority to PROs.

NAW devotes considerable energy to criticizing the Plastic Pollution Act's grant of authority to PROs, specifically the Circular Action Alliance ("Alliance").  Broadly, PROs are private organizations that producers form—either voluntarily or pursuant to a statutory requirement—to comply with EPR laws.[46]  The basic principle is that producers "cannot

---

[42] *See generally* EPA, *Memorandum of Understanding to Extend the National Vehicle Mercury Switch Recovery Program* (Dec. 29, 2017), https://bit.ly/4ptL2BU (renewing federal support for a voluntary, nationwide industry program to remove mercury-containing switches from scrap or retired vehicles).

[43] EPA, *The National Strategy to Prevent Plastic Pollution* at 34 (2024), https://bit.ly/4qaOcdH.

[44] *See* Pres. Council on Sustainable Dev., *Proceedings of the Workshop on Extended Product Responsibility* (Feb. 1997), https://bit.ly/496hbJY (summary of statement by Sergio Galeano, Manager of Product Environmental Policy, Georgia-Pacific Corporation).

[45] Ellen MacArthur Foundation, *100 Leading Businesses Call for EPR for Packaging* (June 14, 2021), https://bit.ly/4q8exct.

[46] World Wildlife Fund, *Legal Framework Study of EPR* at 6 (2019), https://bit.ly/4oSNVLB.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

[individually] organize the take-back of [their] packaging from every location where it turns into waste," so it is more efficient to pool resources via a PRO.[47]  PRO models vary between jurisdictions, but these entities typically register obligated producers, collect funds from those producers to finance waste disposal and recycling, and maintain community education programs.[48]

While the Plastic Pollution Act permits multiple PROs to operate, the Alliance is the only PRO that has sought (let alone received) state approval.[49]  So, NAW takes aim at the "unprecedented" authority conferred on the Alliance as Oregon's lone PRO.[50]  Specifically, NAW challenges (1) the Alliance's ability to set EPR fees and demand timely payment, which ostensibly encourages large founding members to shift costs onto rank-and-file members; and (2) the Alliance's ability to route disputes into an arbitration process, which ostensibly deprives smaller members of effective recourse from abusive behavior.[51]

But PROs have wielded similar authority for almost two decades, even in states with only one functional PRO for a specific waste category.  For example, under longstanding EPR laws governing unused paint in twelve states and the District of Columbia, paint manufacturers are

---

[47] *Id.* at 8.

[48] *Id.*

[49] *See* Or. Dep't of Env't Quality, *Recycling: Producers of Covered Products* (last accessed Dec. 14, 2025), https://bit.ly/48Uh0A6 (stating that the Alliance is "at present, Oregon's only approved [PRO]," and "strongly encourag[ing]" producers to register with the Alliance); Maria Rachal, *Circular Action Alliance Is Lone PRO to Submit Program Plan for Oregon EPR*, PackagingDive (Apr. 3, 2024), https://bit.ly/4aYXDsn.

[50] *See* Pl.'s Br. in Supp. of Prelim. Inj. at 28.

[51] *Id.* at 28-31.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

required to join a PRO.[52]  The only available PRO in the sector is PaintCare,[53] which was established by a major industry trade group (the American Coating Association) and features a board controlled by major paint and coating manufacturers.[54]  PaintCare possesses many of the same powers that NAW decries as "unprecedented" for a PRO.  It assesses annual, per-container fees on each of its members, based on estimates of how many containers each manufacturer will sell in a given state.[55]  The fees are subject to state approval,[56] but PaintCare may increase them if necessary to cover the cost of the program.[57]  Producers must pay the fees in a timely manner.[58]  And any disputes between a producer and PaintCare must be resolved through binding arbitration.[59]

State EPR laws for spent batteries are another example.  These laws exist in fourteen states, and at least three of them—New York's 2010 law, Vermont's 2014 law, and the District

---

[52] Nat'l Conf. of State Legislatures, *Extended Producer Responsibility—Paint* (last accessed Dec. 10, 2025), https://bit.ly/44nZKlw (collecting laws); *see, e.g.*, Or. Rev. Stat. § 459A.825; Minn. Stat. § 115A.1415; Conn. Gen. Stat. §§ 22a-904 to 22a-904a.

[53] Nat'l Conf. of State Legislatures, *Extended Producer Responsibility—Paint* (last accessed Dec. 10, 2025), https://bit.ly/44nZKlw.

[54] *Id.*; *see also* ProPublica Nonprofit Explorer, *Paintcare Inc.* (last accessed Dec. 13, 2025), https://bit.ly/4oXqssG (listing the names of PaintCare's board of directors).

[55] PaintCare, *Information About the PaintCare Fee* at 1 (Oct. 2025), https://bit.ly/4q88rsD.

[56] *Id.; see also* O.R.S. § 459A.832, .835 (requiring Department of Environmental Quality approval for new, updated, and amended paint stewardship plans).

[57] PaintCare, *Information About the PaintCare Fee* at 1; PaintCare, Model Participant Agreement § 3 (last updated Jan. 30, 2017), https://bit.ly/4oML9HG.

[58] PaintCare, Model Participant Agreement § 3.

[59] *Id.* at § 8.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

of Columbia's 2020 law—are close precedents for the Plastic Pollution Act's regulatory

structure.  These laws either formally or functionally require producers to join a PRO.[60]

Call2Recycle is the only PRO implementing battery EPR programs in these states,[61] and its

board of directors includes representatives from the largest battery manufacturers, including

Panasonic, Energizer, Sony, and Duracell.[62]  Like the Alliance, Call2Recycle sets annual fees for

its members based on the weight of collected batteries, subject to state approval.[63]  And like the

Alliance, it modulates fees based on unique characteristics (such as battery chemistry) that makes

---

[60] The District of Columbia expressly requires producers to join a PRO.  D.C. Code § 8-771.02(a)(1).  New York and Vermont do not strictly require such membership, because producers can choose to start their own battery stewardship organizations.  10 V.S.A. § 7583(a); N.Y. Env't Conservation Law § 27-1807(1)(d)(2) (McKinney).  But in Vermont, no producer has done so, presumably because joining a larger PRO is far more cost-effective.  *See* Corey Dockser, *Battery Recycling Is Now Mandatory, and Expanded Programs Are on the Way*, July 1, 2024, Vermont Pub. Radio, https://bit.ly/4afo64I; Reid Lifset et al., *Restoring the Incentives for Eco-Design in Extended Producer Responsibility: The Challenges for Eco-Modulation*, 168 Waste Mgmt. 189, 189 (2023), https://doi.org/10.1016/j.wasman.2023.05.033, ("The PROs simplify the administration of data and funding while realizing economies of scale that individual producers are unlikely to attain in waste collection and processing.").  And in New York, Call2Recycle was the only certified battery stewardship program of any kind for more than five years after the law's passage, and remains the only PRO.  N.Y. Dep't of Env't Conservation, *NYS Rechargeable Battery Law: Program Analysis & Results for 2013-2022* at 3 (July 2024), https://bit.ly/4j1Gy30.

[61] *See* Nat'l Conf. of State Legislatures, *Extended Producer Responsibility—Batteries* (last accessed Dec. 10, 2025), https://bit.ly/3MtmB9b; Call2Recycle, *District Battery Stewardship Plan* at 10-11 (2023), https://bit.ly/4oOdHR4.

[62] Call2Recycle, *Board of Directors and Officers* (last accessed Dec. 10, 2025), https://bit.ly/3Ymrl2Y.

[63] Call2Recycle, *District Battery Stewardship Plan* at 10-11 (2023), https://bit.ly/4oOdHR4.

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

a product easier or more difficult to recycle.[64]  Therefore, Call2Recycle is yet another precedent

for the Alliance's fee-setting authority.[65]

Furthermore, contrary to NAW's suggestion,[66] nothing in the record suggests that when

there is only one PRO in a market (like the Alliance in Oregon), the PRO will exploit its power

to impose unreasonable fees on disfavored members.  Indeed, EPR statutes often expressly guard

against such abuse.  Under both the Plastic Pollution Act and Oregon's paint-related EPR law,

PROs may only charge fees that are necessary to cover the cost of their programming.[67]  NAW

brushes this important safeguard aside, suggesting that the Plastic Pollution Act's implementing

regulations permit the Alliance to "revise the fee schedule, cost allocations, and eco[-]modulated

adjustments granted to individual producers" whenever and however it wants, without obtaining

regulatory approval.[68]  Not so.  The regulation that NAW cites authorizes the Alliance only to (1)

routinely update the annual base fee based on new supply data or "material cost allocations"; and

(2) change the "fee adjustments granted to individual producers."[69]  Basically, the regulation

---

[64] *Id.*

[65] The three laws discussed here are not unique.  Later battery EPR laws, such as one passed in Colorado in 2025, have continued the trend of requiring producer membership in a PRO.  *See, e.g.*, Colo. Rev. Stat. Ann. § 25-17-1004 (West).

[66] *See* Pl.'s Br. in Supp. of Prelim. Inj. at 15 & n.5.

[67] *See, e.g.*, O.R.S. § 459A.884(1) ("Membership fees charged for different covered product types, materials and formats *must be proportional* to the costs to the producer responsibility organization for that covered product type, material or format." (emphasis added)); *id.* § 459A.827(4)(f) ("The architectural paint stewardship assessment must be approved by the director as part of the plan and must be sufficient to recover, but not exceed, the costs of the architectural paint stewardship program.").

[68] *See* Pl.'s Br. in Supp. of Prelim. Inj. at 15 & n.5.

[69] Or. Admin. R. 340-090-750(1)-(2).

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

gives the Alliance necessary flexibility to tweak fees when it receives more accurate market- or producer-specific data. It does not permit the Alliance to change its overall "fee schedule" or mechanism for "cost allocation."[70] Those programmatic amendments would require state approval.[71]

There is also no empirical evidence that solitary PROs impose extortionate fees on smaller or disfavored members. If anything, the evidence suggests otherwise. As of 2024, PaintCare had only implemented six fee changes in its entire history, two of which were decreases.[72] And data from abroad points in the same direction. In France, for example, CITEO (the main industry-led PRO for packaging waste) introduced penalty fees for producers using certain types of packaging.[73] Between 2012 and 2015, the share of members receiving penalties plummeted by half, suggesting that the fees did not, as NAW suggests, ensnare rank-and-file members while leaving larger players untouched.[74]

In summary, the Plastic Pollution Act does not confer unprecedented or unreasonable powers on PROs. Instead, it grants PROs the same powers that states have granted PROs for almost two decades. NAW's motion omits this crucial context.

---

[70] *Contra* Pl.'s Br. in Supp. of Prelim. Inj. at 15 & n.5.

[71] Or. Admin. R. 340-090-750(2); *see also* Defs.' Br. in Opp. to Prelim. Inj. at 25 ("CAA cannot materially deviate from the approved plan."); Decl. of Nicole Portley in Supp. of Defs.' Opp. to Prelim. Inj. at ¶ 36 ("CAA may not change the methodology it uses to assess fees without submitting a program plan amendment.").

[72] PaintCare, *PaintCare Program Update* (Apr. 19, 2024), https://bit.ly/4oJCwNR.

[73] Frithjof Laubinger et al., *Modulated fees for Extended Producer Responsibility Schemes (EPR)*, OECD Env. Working Paper No. 184 at 23 tbl.9 (Oct. 28, 2021), https://bit.ly/4q0vHbR.

[74] *See id.*

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

C.    The Plastic Pollution Act's Broad Definition of "Producer" Is Also Not New.

NAW also seems to suggest that the Plastic Pollution Act's definition of "producer" is novel and unjustified—mainly because it imposes responsibility on brands that do not directly control the packaging of the items that they buy from upstream suppliers.[75]  While EPR policymakers have debated the definition of a "producer,"[76] extending liability to downstream entities is a rational and common policy choice.  Indeed, the EPR framework necessarily requires that "all participants in the product life cycle . . . share responsibility for the environmental effects of products and waste streams."[77]  Oregon's policymakers thus reasonably concluded that placing responsibility on downstream entities (such as distributors) will heighten pressure on suppliers and manufacturers, thereby shifting responsibility upstream to the firms that are best positioned to improve product design and reusability.[78]

For just that reason, other EPR laws have required firms to take responsibility for product components that they did not choose or produce.  The District of Columbia's battery EPR law, for example, extends to companies that sell or distribute "battery-containing product[s] under [their] own brand."[79]  In other words, the statute applies even if the regulated company did not

---

[75] Pl.'s Br. in Supp. of Prelim. Inj. at 8-9.

[76] Univ. of Houston, *Extended Producer Responsibility (EPR) for Plastics Packaging: Gaps, Challenges, and Opportunities for Policies in the United States* at 11 (Oct. 2025), https://bit.ly/3Mt0Nut.

[77] *See* Pres. Council on Sustainable Dev. & EPA, *Proceedings of the Workshop on Extended Product Responsibility* (Feb. 1997), https://bit.ly/44m4kAQ.

[78] *Cf.* OECD, *Extended Producer Responsibility: Basic Facts and Key Principles* at 6, OECD Env't Working Paper No. 41 (Apr. 2024), https://bit.ly/48Sw8OJ.

[79] D.C. Code § 8-771.01(2), (11)(A).

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

build or select the battery in the product. Similarly, the very "first practical application of EPR in Europe"—Germany's 1991 Packaging Ordinance—applied to retailers who did not directly control the packaging in which their products arrived from suppliers.[80] In response, retailers "pressure[d] their suppliers," causing over six hundred upstream suppliers to join packaging waste PROs and improve the sustainability of their packaging.[81] The European Union's Waste Directive likewise defines "waste producer" to include "anyone whose activities produce waste . . . or anyone who carries out pre-processing, mixing or other operations resulting in a change to the nature or composition of this waste."[82]

In sum, Oregon's definition of "producer" is neither unprecedented nor unreasonable.

## CONCLUSION

Ample evidence refutes NAW's claim that the Plastic Pollution Act is an unprecedented, irrational, or unnecessary exercise of the State's regulatory powers. Accordingly, for the reasons stated above, and for the reasons outlined in the State's brief, the Court should deny the motion for a preliminary injunction.

Dated: December 22, 2025.

/s/ Christopher A. Meyer
CHRISTOPHER A. MEYER (NYB # 6015028)
cmeyer@earthjustice.org
[Pro Hac Vice Application Pending]
EARTHJUSTICE
48 Wall Street, Floor 15
New York, NY 10005-2903
(917) 410-8753

---

[80] Noah Sachs, *Planning the Funeral at the Birth: Extended Producer Responsibility in the European Union and the United States*, 30 Harv. Env't L. Rev. 51, 68-69 (2006).

[81] *Id.* at 69.

[82] 2008 O.J.L. 312, art. 3(5).

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

/s/ Molly Tack-Hooper
MOLLY TACK-HOOPER (OSB #212147)
mtackhooper@earthjustice.org
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104-1831
(206) 701-9763

*Attorneys for [Proposed] Amicus Curiae
Professor Sarah J. Morath*

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

20

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 4,348 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Christopher A. Meyer*
CHRISTOPHER A. MEYER
(NYB # 6015028)

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

21

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

/s/ Molly Tack-Hooper
MOLLY TACK-HOOPER
(OSB #212147)

Professor Sarah J. Morath's [Proposed]
Amicus Brief in Opposition to Plaintiff's
Request for a Preliminary Injunction

22