AMY EDWARDS, OSB No. 012492
amy.edwards@stoel.com
RACHELLE D. COLLINS, OSB No. 214059
rachelle.collins@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

*Attorneys for Intervenor American Forest & Paper Association*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALE DISTRIBUTORS, | Case No.: 3:25-cv-01334-SI |
| Plaintiff, | **AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, IN HER OFFICIAL CAPACITY; MATT DONEGAN; KAREN MOYNAHAN, MARK WEBB, AND SILVIA TANNER, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE OREGON ENVIRONMENTAL QUALITY COMMISSION, | **EXPEDITED CONSIDERATION REQUESTED** |
| Defendants. | |

**L.R. 7.1(A) CERTIFICATION**

American Forest & Paper Association ("AF&PA"), through its counsel, has conferred

with counsel for Plaintiff National Association of Wholesale Distributors ("NAW") and

Page 1 – AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
PRELIMINARY INJUNCTION

Defendant Leah Feldon in the above-captioned matter, regarding this motion.  NAW does not take a position on this motion.  Defendant Leah Feldon opposes this motion.

## MOTION FOR PRELIMINARY INJUNCTION

AF&PA respectfully moves the Court for a preliminary injunction barring Defendant from enforcing directly or indirectly Oregon's Plastic Pollution and Recycling Modernization Act (the "Act") and regulations promulgated thereunder, taking such actions as may be necessary to defer the obligations of AF&PA's members to pay fees under the Act, and barring the imposition of any fines related AF&PA members' failure to timely pay fees under the Act, pending final adjudication of the merits of this action.

## I.        INTRODUCTION & BACKGROUND

Plaintiff NAW brought this suit against Defendant Feldon ("Defendant") in her official capacity as the director of Oregon Department of Environmental Quality ("DEQ"), among others,[1] alleging the Oregon's Plastic Pollution and Recycling Modernization Act (the "Act") is unconstitutional.  [Dkt. 26.]  NAW alleges that the Act is unconstitutional under the Dormant Commerce Clause and the Due Process Clause of the Fourteenth Amended of the U.S. Constitution[2] and asks the Court to (1) declare that the Act is invalid and unenforceable; and (2) permanently enjoin Defendant from implementing or enforcing the Act and regulations.  On

---

[1] NAW initially alleged claims against additional individual defendants, but the Court dismissed without prejudice all claims against those additional individual defendants in its February 6, 2026, Order.  [Dkt. 88.]

[2] NAW initially alleged additional claims under the Federal and Oregon Constitutions, but the Courts dismissed without prejudice those claims in its February 6, 2026 Order.  [Dkt. 88.]

Page 2 –      AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
              PRELIMINARY INJUNCTION

February 6, 2026, the Court granted NAW's motion for preliminary injunction enjoining Defendant from enforcing the Act against NAW and its members (the "Order").  [Dkt. 88.]

AF&PA is a national trade association whose members include around 87 percent of the pulp, paper, paper-based packaging and tissue production capacity in the United States. Declaration of Mark Pitts ("Pitts Decl.") ¶ 3.  AF&PA has member companies that manufacture paper and packaging that are sold directly and indirectly into Oregon from facilities all over the United States and whose operations span multiple jurisdictions with differing and, at times conflicting, Extended Producer Responsibility ("EPR") programs (including those being implemented by other states).  *Id*. ¶ 4.

AF&PA has moved to intervene in this case as a plaintiff and now seeks entry of a preliminary injunction identical to the one entered in favor of NAW in the Court's Order. Extending the preliminary injunction to AF&PA and its members is necessary to prevent its members from suffering irreparable harm while this case is pending.  Specifically, since the Court issued its Order, DEQ has refused to cease enforcement of the Act to any producers other than NAW members, despite other producers facing the same imminent and irreparable harm as NAW members recognized by the Court—e.g., unrecoverable compliance costs, competitive distortions, and risk of steep civil penalties.  Pitts Decl. ¶¶ 29-30, Exs. 1-2.  Producers that fail to pay their January 2026 invoices by March 6 could face civil penalties of up to $25,000 per day. Or. Rev. Stat. § 459A.962(4), § 468.130.  Even more concerning, DEQ has advised that it will not be issuing any refunds in the future for fees paid under the program, regardless of likely cost shifting or if the Act is found unconstitutional at trial.  Pitts Decl. ¶ 30, Ex. 2.  In other words, if an AF&PA member were to pay its January 2026 invoice now, DEQ will refuse to refund that money even if the Court rules that the Act is unconstitutional.

Page 3 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                    PRELIMINARY INJUNCTION

AF&PA's members face irreparable harm from the Act:

**Excessive and unpredictable fees**.  With respect to the July 2025 and January 2026 invoices, AF&PA members have been forced to bear exorbitant and unpredictable fees.  Pitts Decl. ¶ 19.  AF&PA members have reported that the fees have significantly exceeded the draft rate schedule approved by the Circular Action Alliance ("CAA"), the Producer Responsibility Organization ("PRO") chosen to implement the Act, and the unpredictability has deprived AF&PA's members of any meaningful ability to budget for them.  *Id.*  Some members have reported that the EPR fees have exceeded profit margins for their products.  *Id.* ¶ 24.

The retrospective and nontransparent nature of the fee structure also makes it impossible to predict what the fees will be or to account for them in sales.  *Id.* ¶ 20.  Ordinarily, when faced with new costs, businesses will adjust their prices to accrue funds to cover the costs as goods are shipped and sales are made.  But under Oregon's retrospective approach, AF&PA members are not told by CAA (and, by extension, the State) what the charge associated with a particular sale of goods will be until long after the sale has occurred.  *Id.* ¶ 19 (explaining that 2025 and 2026 invoices are based on prior-year data reported before rates were announced).

**Double counting and duplicative assessments.**  Due to the Act's broad definition of "producer," AF&PA members' products are subject to double counting and duplicative assessments.  *Id.* ¶ 25.  For example, for some materials, both the manufacturer of the packaging as well as the brand owner may be identified as a "producer" and held responsible for EPR fees for the same materials.  *Id.*  There is no effective way to assess this potential for duplicative payments through CAA given the lack of transparency.  *Id.*  In addition, some members have expressed concerns that, due to overly broad covered product definitions, some products that never enter the Oregon recovery stream are assessed EPR fees.  *Id.*

Page 4 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                  PRELIMINARY INJUNCTION

**Penalized for paper.** To the extent the EPR fees are intended to incentivize producers to maintain use of sustainable materials or switch to more sustainable materials,[3] the fees applied to AF&PA's members utterly fail to satisfy that statutory purpose. Pitts Decl. ¶¶ 8, 11. The program's fee formula results in lower fees based on weight, which inevitably favors plastic packaging over paper due to the heavier weight on average of paper packaging. *Id*. Thus, instead of rewarding members utilizing paper and paper-based packaging for their environmental performance, members are effectively being penalized for their products' physical characteristics. *Id*.

**Significant indirect costs of compliance.** AF&PA members have and continue to incur significant indirect costs in order to comply with the Act. Data collection, review, and submission required to comply with the Act require substantial staff time. Pitts Decl. ¶¶ 13, 15. Preparing supply reports involve time consuming tasks like manually locating artwork files and hand sampling to determine packaging dimensions for weight reporting and requesting detailed information from vendors. *Id*. ¶ 15.

**Free rider problem.** Oregon's EPR suffers from a serious "free rider" problem: if a competitor does not report or underreports, then AF&PA's reporting members of similar products are paying for them too. *Id*. ¶ 23. The EPR provides no transparent, centralized method for confirming upstream or downstream reporting for packaging and paper materials. *Id*.

**Fees assessed for products likely disposed of outside of Oregon.** The CAA has assessed EPR fees for AF&PA members' products sold into Oregon without regard for the fact that many of those products likely are not disposed of in Oregon. *Id*. ¶ 18. For example, of the

---

[3] *See, e.g.,* Or. Rev. Stat. § 459A.884(4).

Page 5 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                    PRELIMINARY INJUNCTION

states that have implemented EPR programs, Oregon's is the only one so far to assess fees for moving and storage materials. *Id*. Because moving and storage products are used for just that—moving and/or storage of other items—it is likely that a large percentage of these products are taken and disposed of by consumers outside of Oregon, placing the burden for such material disposal on other states, while Oregon retains the fees. *Id*. It is also possible that such materials are used for long term storage and, therefore, not disposed of at all. *Id*. AF&PA members have no practical way of tracking the movement of its moving and storage products after its retail customers have sold them to consumers, but CAA assesses EPR fees regardless. *Id*. ¶¶ 17-18.

**No choice, no accountability**. The foregoing problems are all compounded by the fact that there is only one PRO, meaning that CAA's terms and fees are not just take-it-or-leave-it they are take-it-or-leave-the *State*. *Id*. ¶¶ 6, 21. When AF&PA's members have gone to CAA with questions or issues (including overcharges), the responses have been inconsistent, unhelpful, and nontransparent. *Id*. ¶ 26. And because of the arbitration provision noted above, NAW members have no meaningful appeal rights or any right to challenge their fee assessments in court. *Id*. ¶ 21. Even further, DEQ has already advised that payments made will not be refunded, even if plaintiffs ultimately prevail in this suit. *Id*. ¶ 30, Ex. 2.

**AF&PA now seeks the same relief granted to NAW to avoid ongoing irreparable harm**. The logistical and economic burdens imposed by the Act and the PRO are not sustainable. AF&PA's members have the choice of leaving the Oregon market or staying and being forced to absorb unreasonable and excessive fees and face competitive harm. *Id*. ¶¶ 24, 27. While AF&PA hoped that the Court's preliminary injunction blocking DEQ's enforcement of the Act against NAW members would trigger a voluntary deferral on all producers, DEQ declined to do so. *Id*. ¶ 30, Ex. 2. Now that the January 2026 invoices have become due (as of March 6),

Page 6 –  AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION

AF&PA has no choice at this juncture but to seek the same injunctive relief against the program's enforcement of the assessed fees and any fees associated with members' failure to pay, pending final adjudication of this lawsuit.

In support of its Motion, AF&PA incorporates herein the arguments and authority presented by NAW in its First Amended Complaint [Dkt. 26], Motion for Preliminary Injunction [Dkt. 33], Reply Brief [Dkt. 69], and the arguments presented to the Court on February 6, 2026. AF&PA further submits the Pitt Declaration and the following arguments and authority.

## II.     ARGUMENT

A party is entitled to a preliminary injunction if it establishes that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Alternatively, under the "serious questions" approach, a party may be entitled to a preliminary injunction if it shows: (1) "serious questions going to the merits" of its claims; (2) there is a likelihood of irreparable harm; (3) the balance of hardships tips sharply in its favor; and (4) an injunction is in the public interest. *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this approach, the elements are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *Id*. For example, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id*. The elements are met here.

### A.     AF&PA Is Likely to Succeed on the Merits.

AF&PA is likely to succeed on the merits of both the Dormant Commerce Clause and Due Process Clause claims.

Page 7 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                    PRELIMINARY INJUNCTION

**1.      The Act Violates the Dormant Commerce Clause.**

The Act unduly restricts interstate commerce in violation of the Dormant Commerce Clause. The Constitution's Commerce Clause, U.S. Const. art. I, § 8, cl. 3, "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). This Dormant Commerce Clause doctrine enshrines two primary principles: "First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." *S. Dakota v. Wayfair*, 585 U.S. 162, 173 (2018). State laws may also be invalid on their face where they directly regulate the instrumentalities of interstate commerce, *see, e.g.*, *Bibb v. Navajo Freight Lines*, 359 U.S. 520 (1959), or where they amount to an excessive "user fee," *Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*, 510 U.S. 355, 369 (1994), or state tariff, *Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 549 (2015).

As set forth in Section III.A.1 of NAW's Motion for Preliminary Injunction and Section III.3.B of NAW's Reply Brief, [Dkt. 69], Oregon's Act violates each of these prohibitions. Further, NAW's arguments apply with equal measure to AF&PA and its members.

> **a.      The Act Imposes an Excessive User Fee or an Unfairly Apportioned Tax on AF&PA Members.**

The Act violates the Dormant Commerce Clause by burdening interstate commerce with unreasonable fees that, in effect, discriminate against interstate commerce and operate as an unlawful state tariff. *See Nw. Airlines,* 510 U.S. at 369 (stating test for excessive "user fees"); *see also Wynne*, 575 U.S. at 549 (calling state tariffs "one of the chief evils" that the Constitution was intended to address and invalidating state tax that, in effect, discriminated against interstate commerce).

The Act purports to impose benign "user fees." Specifically, a "producer" must pay "membership" fees to the PRO, which uses the fees for the recycling and processing of those

Page 8 –      AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                   PRELIMINARY INJUNCTION

materials, including by funding and reimbursing services provided by local governments. Fees imposed under the Act are valid under the Dormant Commerce Clause if they "(1) [are] based on some fair approximation of the facilities' use, (2) [are] not excessive in relation to the benefits conferred, and (3) [do] not discriminate against interstate commerce." *Nw. Airlines*, 510 U.S. at 369.

As discussed above, the EPR fees imposed on AF&PA's members are not a fair approximation of the costs reasonably attributable to AF&PA's members and are clearly excessive in relation to the benefits conferred. Among other things, the EPR fees impose a disproportionate cost on producers of paper products, even though the EPR fees are ostensibly intended to incentivize producers to maintain the use of sustainable materials or switch to more sustainable materials. *See* Or. Rev. Stat. § 459A.884(4) (PRO "fee schedule must incentivize producers to continually reduce the environmental and human health impacts of covered products"); Pitts Decl. ¶¶ 6-7, 11. The program's fee formula results in lower fees based on weight, which inevitably favors plastic packaging over paper due to the heavier weight on average of paper packaging. *Id*. Thus, instead of rewarding AF&PA members utilizing paper and paper-based packaging for their environmental performance, members are effectively being penalized for their products' physical characteristics. *Id*.

Furthermore, over 85% of the population in Oregon has access to curbside recycling for paper based on AF&PA's 2021 Access to Recycling study.[4] Pitts Decl. ¶ 5. Therefore, the benefit incurred through the Act as it relates to paper product recycling is significantly less impactful than for

---

[4] 2021 AF&&PA Access to Recycling Study-
https://www.afandpa.org/priorities/recycling/what-were-doing#AccessRecycling.

Page 9 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
             PRELIMINARY INJUNCTION

other materials,[5] yet the fees imposed on paper products improperly shift the burden of the program to paper producers. *See, e.g., Id*. ¶¶ 7, 11. The fees are also excessive, with AF&PA members reporting that they often exceed profit margins and apply retroactively, making it difficult for producers to predict costs. *Id.* ¶ 23.

The Act also creates a "free rider" problem as reporting producers bear the cost of the program for non-reporting or under-reporting producers as well as exempt producers who sell similar goods. Pitts Decl. ¶ 22. Nor are the EPR fees fairly apportioned to AF&PA's members, who often do not dictate what packaging to use (as that is determined by their customers), do not sell the products themselves, do not choose what products to buy (like in-state consumers), and do not know where their products may be disposed (in Oregon or elsewhere. Pitts Dec. ¶ 8.

As such, rather than fairly approximate the reasonable costs of handling a given producer's products during the year, the EPR fees function more like a *tax* that is intended to fund a general state infrastructure project—for the benefit of the State's general public—but yet is disproportionately allocated to entities operating in interstate commerce. *See Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 86–88 (2d Cir. 2009) (invalidating ferry passenger fee as unfair and excessive where it was being used to fund all Port District operations, including expenditures apart from ferry service itself).

The EPR program discriminates against interstate commerce because it is designed to shift costs *away* from in-state consumers and in-state retailers while imposing disproportionate logistical and economic burdens on those who operate in interstate supply chains.[6] Pitts Decl. ¶¶ __. Moreover,

---

[5] *See* Or. Rev. Stat. 459A.926(2)(a)(A) (stating goal for Oregon to increase recycling for plastic and plastic food serviceware to "at least 25 percent" by 2028).

[6] *See Wynne*, 575 U.S. at 566–67 (explaining that facially nondiscriminatory law may still violate Commerce Clause if it discriminates against interstate commerce "in effect")); *C & A*

Page 10 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                    PRELIMINARY INJUNCTION

due to the broad definitions and lack of clear guidance from DEQ or CAA, the Act creates significant risks of fees being assessed on materials even when they leave the state, or double-counting materials that pass through more complex interstate supply chains. Pitts Decl. __. That poses a risk of duplicative and conflicting fee payments, particularly as additional states adopt similar EPR laws. Pitts Decl. __. In contrast, businesses that operate exclusively in-state do not face that risk and experience significantly lower compliance burdens in tracing their products, if they are required to report at all.

### b.    The Act Improperly Impedes the Flow of Interstate Goods.

As the U.S. Supreme Court recognized in *National Pork* and *Pike* recognized, the proper inquiry for determining a violation of the dormant commerce clause is whether lack of national uniformity would meaningfully "*impede* the flow of interstate goods," that is, whether the regulation imposes a substantial burden on interstate commerce clearly excessive in relation to the putative local benefits. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 377–80 & n.2 (2023); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 n.12 (1997) (*Pike* scrutiny is appropriate where state regulation undermines national uniformity).

As discussed above, the Act presents state-specific compliance burdens that affect producers' entire interstate supply chains. AF&PA members' products are distributed throughout the United States, not just in Oregon. Members are subject to system wide administrative burdens and costs to comply with the Act and the potential for duplicative payments due to differing state law as well as the broad definition of "producer" under the Act. Pitts Decl. __. These costs and burdens cannot be

*Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994) (explaining core purpose of Dormant Commerce Clause as "to prohibit state or municipal laws whose object is local economic protectionism" and invalidating law that purported to apply equally to in-state and out-of-state waste disposal).

Page 11 –    AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
               PRELIMINARY INJUNCTION

segregated to only products that enter Oregon.  Further, the Act, as implicated by DEQ, also applies to storage and shipping supplies, which may be purchased in Oregon, but could be disposed of in another state or country or held for long term storage.  Pitts Decl. __.  Thus AF&PA members who manufacture such supplies pay fees to dispose of such materials in Oregon when, in fact, they are not adding to any waste disposal burden in the state.  Pitts Decl..  These burdens fall disproportionately on interstate actors compared to producers that operate exclusively intrastate and do not have the same complex supply chains.

For each of the foregoing reasons, AF&PA is likely to prevail on its claim that the EPR program violates the Dormant Commerce Clause.

### 2. The Act Violates Due Process.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution prohibits government from depriving a person of property without adequate procedural protections.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005).  Procedural due process requires that an affected party receives "sufficient detail" about an administrative action taken so they "can prepare a responsive defense" prior to being deprived of their property.  *K.W. ex rel. D.W. v. Armstrong*, 298 F.R.D. 479, 490 (D. Idaho 2014) (granting preliminary injunction as to agency procedure that "gives participants nothing more than the general explanation that several factors may have affected their individual budgets . . . and does not explain which combination of factors actually affected each participant's budget on an individualized level"), *aff'd* 789 F.3d 962, 968 (9th Cir. 2015).[7]

---

[7] *See also, e.g., Jones v. Flowers,* 547 U.S. 220, 226 (2006) (absent special circumstances, individuals must be afforded pre-deprivation opportunity to present objections); *McKesson v. Div. of Alcoholic Beverages & Tobacco*, 495 U.S. 18, 37 (1990) (describing adequate notice and meaningful opportunity to be heard as "root requirement[s] of the Due Process Clause"); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (providing test for procedural due process to protect against risk of erroneous deprivation of property); *Ohio Bell Telephone*

Page 12 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
　　　　　　　　PRELIMINARY INJUNCTION

The lack of adequate notice and opportunity to contest fees during the CAA invoicing process violates due process. As explained above, CAA is demanding payment from so-called "producers" based on invoices that provide scant information and where members have no meaningful way to verify the accuracy of the calculations or determine whether they are being double-charged or overcharged. AF&PA members are compelled to comply with CAA demand due to the threat of penalties, late fees, and interest. Pitts Decl. ¶ 28. To the extent CAA is effectively operating as a state actor for the imposition and collection of regulatory fees, the lack of adequate notice and opportunity to be heard flagrantly violates procedural due process. Oregon should not be allowed to evade fundamental due process rights by delegating regulatory authority to a private entity, with which regulated parties are now forced to contract.

Nor does Defendant's agency provide any meaningful protection against these excesses. As discussed, the Act provides only the most high-level guidance cabining CAA's broad discretion in formulating its plan—with respect to both setting total system costs and allocating them to different material types. DEQ did not engage in any economic impact analysis to test the impact of CAA's plan on different types of producers and products, and DEQ does not require approval for fee schedule changes or individual fee adjustments. Moreover, any disputes arising between CAA and AF&PA's members—including disputes over the interpretation of the Act itself—must be resolved through confidential arbitration; there is no administrative appeal process or even a traditional right to judicial review.

---

*Co. v. Pub. Utils. Comm'n of Ohio*, 301 U.S. 292, 300 (1937) (prohibiting state utilities commission from relying on "the strength of . . . unknown documents" to calculate the appropriate rate for telecommunications services and then demand refunds for prior years of alleged overcharging).

Page 13 – AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION

Indeed, the fee structure here is especially egregious because it operates on *a retrospective basis*, and through a nontransparent, confidential fee-setting methodology. It is a fundamental tenet of due process that "regulated parties should know what is required of them so they may act accordingly." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). As explained above, CAA assesses fees on *prior years'* volumes based on rates that are determined only after the fact, making it impossible for businesses to accurately predict what their fees will be or to conform their operations accordingly.

For these reasons, AF&PA is likely to prevail on its claim that the EPR program violates the Due Process Clause.

**B.      AF&PA's Members Will Be Irreparably Harmed Without a Preliminary Injunction.**

Irreparable injury is that "for which there is no adequate legal remedy." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Absent a preliminary injunction deferring enforcement of the EPR program (including any imposition or collection of EPR fees), AF&PA's members will suffer multiple forms of irreparable injuries—tangible and intangible—any one of which suffices to show irreparable harm.

Absent relief, AF&PA's members will be forced to pay the excessive invoices—in which fees often exceed the profit margins on the invoices—with the most recent January 2026 invoices which became due on March 6. Certain AF&PA members are forced to consider leaving the Oregon market because of these fees and the specter of ongoing EPR burdens. Pitts Decl. ¶ 27. Some members noted in confidential one-on-one discussions that, in order to overcome the negative margin impact of assessed fees, they have had to pass fees through to their immediate customers and those customers then pass those fees on to consumers regardless of the consumers' locations. *Id.*

Page 14 –      AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                    PRELIMINARY INJUNCTION

¶ 24.  In each of those situations, AF&PA's members will experience irreparable harm in the form of unrecoverable lost sales and harm to their goodwill, reputation, and business relationships in the market.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (loss of "customers and accompanying goodwill and revenue" from unlawful government action supports a finding of "irreparable harm"); *Stanley v. Univ. S. Cal.*, 13 F.3d 1313, 1324 (9th Cir. 1994) (prospective and existing "loss[es] of business opportunity" constitute irreparable harm).

Moreover, the reality of the situation is that companies are forced to contract with CAA, the only approved Oregon PRO, submit to its requirements, agree to binding arbitration, and pay its fees; or otherwise abandon doing business in Oregon—itself deprives AF&PA's members of basic constitutional rights.  "It is well established that" a deprivation of constitutional rights alone "unquestionably constitutes irreparable injury."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) ("[A] prospective violation of a constitutional right constitutes irreparable injury for . . . purposes of seeking equitable relief.").

Forcing AF&PA's members to continue to pay CAA's invoices creates a risk of irreparable harm because as DEQ has already advised, such payments will not be refunded, even if AF&PA ultimately prevails in this suit.  Pitts Decl. ¶ 30, Ex. 2.  Further, based on sovereign immunity, AF&PA and its members cannot recover damages from Defendants or the State. *See Will v. Mich. Dep't of State Pol.*, 491 U.S. 58, 70–71 (1989).  And if, for example, CAA spends the collected fees during the pendency of the lawsuit, AF&PA's members may not be able to recoup them from CAA either.

This constitutes irreparable harm.  *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021) ("[W]here parties cannot typically recover monetary damages flowing from their

Page 15 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
              PRELIMINARY INJUNCTION

injury . . . economic harm can be considered irreparable."); *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) ("If expenditures cannot be recouped, the resulting loss may be irreparable.").

To avoid this irreparable injury, AF&PA requests, on behalf of its members, an injunction to preliminarily enjoin DEQ from enforcing the Act (including any nonpayment of fees), or to require such acts as may be necessary to direct the PRO likewise to defer the collection of additional fees pending adjudication on the merits.

### C.      The Equities Favor AF&PA.

The balance of harms and public interest also favors AF&PA.

*First*, the burdens imposed on AF&PA's members are both severe and immediate, far outweighing the minimal harm the State may suffer from a temporary pause on its novel EPR system.  If Oregon's EPR program is further enforced, AF&PA members will face severe and irrecoverable compliance costs, fees, and operational disruption.  Producers will be subjected to retroactively-assessed fees that often exceed product margins.  Pitts Decl. ¶¶ 24, 27.  Producers who have been subjected to double counting and overpayments will likely continue to lose money arbitrarily and unjustly, given CAA's failure to offer any guidance or recourse for these errors.  *Id.* ¶ 25.  As explained, none of these losses are recoverable.

Enjoining enforcement of the EPR program during litigation preserves the status quo—nothing more. Oregon waited until 2022, "35 years since [its] first recycling program[]," to establish this one.  ORS 459A.860(3). AF&PA is committed to litigating this matter to final judgment expeditiously, and thus if Defendant prevails, it can simply resume enforcement and its plans to build out the state infrastructure at that time.

*Second*, the "public interest" further supports a preliminary injunction here.  "[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available."

Page 16 –      AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
             PRELIMINARY INJUNCTION

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).  In fact, "it is *always* in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (emphasis added).  Oregon's EPR program offends several constitutional principles and lacks meaningful procedural safeguards.  *See supra* § III.A.2–3. It might be reasonable, even commendable, for Oregon to strive to curb the "negative environmental, social, economic and health impacts" of certain practices.  ORS § 459A.860.  But the law "does not permit [Oregon] to prioritize any policy goal over the Due Process Clause," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013), or any other limit imposed by the U.S. Constitution.

## III.      CONCLUSION

AF&PA respectfully requests that the Court issue a preliminary injunction barring Defendant from enforcing the Act and regulations promulgated thereunder, and to take such steps as may be necessary to defer the EPR payment obligations of AF&PA's members.

DATED:  March 16, 2026              STOEL RIVES LLP


*/s/ Amy Edwards*
AMY EDWARDS, Bar No. 012492
amy.edwards@stoel.com
RACHELLE D. COLLINS, Bar No. 214059
rachelle.collins@stoel.com
Telephone:  503.224.3380

*Attorneys for Intervenor American Forest &
Paper Association*

Page 17 –     AMERICAN FOREST & PAPER ASSOCIATION'S MOTION FOR
                    PRELIMINARY INJUNCTION