Steven Wilker, OSB No. 911882
  Direct: 503.802.2040
  Email: steven.wilker@tonkon.com
Maureen S. Bayer, OSB No. 214905[1]
  Direct:  503.802.2115
  Email:  maureen.bayer@tonkon.com
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Facsimile:  503.274.8779
    *Attorneys for [Proposed] Intervenors Oregon Business and Industry*
    *Association, Northwest Grocery Association, and Food Northwest*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS, <br><br> Plaintiff, <br><br> v. <br><br> LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity, <br><br> Defendant. | Civil No. 3:25-cv-01334-SI <br><br> **MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD NORTHWEST** <br><br> ORAL ARGUMENT REQUESTED <br><br> EXPEDITED CONSIDERATION REQUESTED |

---

[1] Maureen Bayer also represents amici curiae parties Air Conditioning, Heating, and Refrigeration Institute; American Lighting Association; and Association of Home Appliance Manufactures.  While represented by the same counsel, these amici curiae parties are not a party to this Motion.

## LR 7-1(a) CERTIFICATION

Pursuant to LR 7 1(a), counsel for the moving parties certifies that they conferred with counsel for Plaintiff and Defendant.  Plaintiff consents to the Motion.  Defendant will oppose the motion because it contends that the addition of new parties now would prejudice Defendant's ability to fully litigate and present its case on the current abbreviated trial schedule.

## MOTION

Oregon Business and Industry Association ("OBI"), Northwest Grocery Association, dba Northwest Grocery Retail Association ("NWGRA"), and Food Northwest (collectively, "Proposed Intervenors") move this Court to permit them to Intervene in this action as Plaintiffs pursuant to Federal Rule of Civil Procedure ("Rule(s)") 24(b)(1).

## MEMORANDUM

In support of their Motion to Intervene ("Motion"), Proposed Intervenors respectfully submit this Memorandum of Law in Support.

## I.    INTRODUCTION

Intervenors are three industry groups that represent companies impacted by the Oregon Plastic Pollution and Recycling Modernization Act (the "Act").  The Act is an unprecedented form of extended producer responsibility ("EPR") law, which has garnered significant criticism due to the extreme burdens it places upon those doing business in Oregon and are subject to its obligations.  Small and medium sized businesses who are members of Proposed Intervenors are particularly burdened by the Act.  As such, Proposed Intervenors are very similarly situated to the National Association of Wholesale Distributors ("Plaintiff"), such that intervention should be permitted in the Court's exercise of discretion.

## II.    FACTUAL BACKGROUND

### a.    Oregon Business and Industry Association

Proposed Intervenor OBI is a Salem-based business advocacy group.  It was formed in 2017 by the merger of Associated Oregon Industries and the Oregon Business Association,

PAGE 2 –    MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY
            ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD
            NORTHWEST

which had been formed in 1895 and 2000, respectively.  Declaration of Angela Wilhelms ("Wilhelms Decl.") ¶ 3.  OBI's mission is to strengthen Oregon's economy to achieve a healthy, prosperous and competitive state for the benefit of present and future generations.  *Id*. ¶ 4.  OBI has approximately 1,600 members across every region in Oregon.  *Id*. ¶ 5.  Members are businesses of every size and represent virtually every industry and sector, employing more than 250,000 Oregonians.  *Id*.  OBI is the Oregon affiliate of the National Association of Manufacturers and the National Retail Federation.  *Id*.

      **b.**      **Northwest Grocery Retail Association**

Proposed Intervenor NWGRA is a trade organization that advocates for grocery, retail and food suppliers in the Pacific Northwest, representing Washington, Oregon and Idaho. Declaration of Amanada Dalton ("Dalton Decl.")  ¶ 3.  Collectively, NWGRA members employ more than 122,000 people at nearly 1,000 locations.  *Id*.  NWGRA uniquely represents a diverse membership of chain and independent grocers, grocery vendors and suppliers, and small convenience stores.  *Id*.  NWGRA's mission is to advocate in the state and local legislatures on issues that impact the grocery industry in the Pacific Northwest.  *Id*. ¶ 4.  NWGRA members have over 409 retail locations in Oregon employing over 44,100 people.  *Id*. ¶ 5.

      **c.**      **Food Northwest**

Proposed Intervenor Food Northwest is a trade organization established in 1914, and headquartered in Portland, Oregon.  Declaration of Dave Dillon ("Dillon Decl.") ¶ 3.  Members include food and beverage companies with operations in Idaho, Oregon, and Washington and suppliers of goods and services to the food processing industry.  *Id*.  Food processor members guide association activities and priorities and build relationships with industry peers through participation in events, and on committees and task forces on energy, environmental, government affairs, operations and technical, sustainability, and workforce.  *Id*.  As food processors and packers, Food Northwest members are substantially impacted by the Act.  *Id*. ¶ 5.  Food

PAGE 3 –    MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY
          ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD
          NORTHWEST

Northwest has worked in coalition with other leading groups to ensure that EPR standards and mandates are attainable. *Id.*

####    d.    Impacts to Proposed Intervenors

A significant number of Proposed Intervenors' members are obligated Producers under the Act. Wilhelms Decl. ¶ 5; Dalton Decl. ¶ 5; Dillon Decl.¶ 5. In support of their missions and obligations to their members, all three organizations have advocated in the Oregon legislature for sensible amendments to the Act to lessen the extreme burdens on businesses operating in Oregon. *Id.* ¶ 6. In addition, Proposed Intervenors have petitioned the Oregon Department of Environmental Quality to delay enactment of the program in order to give its members additional time to gather the required data. *Id.*; Dillon Decl. ¶ 5. OBI has participated as a member of a related Rulemaking Advisory Committee and submitted comments and feedback throughout rulemaking processes. Wilhelms Decl. ¶ 6.

Like Plaintiff's members, Proposed Intervenors' members play a critical role in the supply and movement of goods nationwide and in Oregon. Wilhelms Decl. ¶ 8; Dalton Decl. ¶ 8. The Act subjects Proposed Intervenors' members to significant compliance obligations, even though they frequently have little or no control over the design or composition of the packaging they distribute. *Id.* As a result, they are required to assume financial and logistical responsibilities that do not correspond to their role in the product life cycle. *Id.*

As "Producers," under the Act, Proposed Intervenors' members are subject to all of the same obligations as Plaintiff's members, including registering with Circular Action Alliance ("CAA") as the sole approved Producer Responsibility Organization ("PRO"), calculating and reporting the weights of all packaging sold into Oregon, and paying fees based on material-specific rates and environmental impact modifiers. Wilhelms Decl. ¶ 9; Dalton Decl. ¶ 9.

Impacts on Proposed Intervenors' members under the Act include being forced to enter into non-negotiable agreements with the sole private third-party Producer Responsibility Organization running the program under the Act; incurring significant fees to obtain and report

PAGE 4 –    MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY
ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD
NORTHWEST

the required data; being charged exorbitant fees for packaging that sometimes exceed profit margins; and having to increase their prices to consumers – not just those in Oregon – to be able to afford the fees.  Wilhelms Decl. ¶ 10; Dalton Decl. ¶ 10.  The Act has also required Proposed Intervenors' members to report packaging for products that move through Oregon but that may not be used in Oregon because of lack of transparency in the stream of commerce.  *Id*.

One of OBI's members ships truckloads of its frozen products to retailer distribution centers, which then redistribute inventory across multiple states.  Wilhelms Decl. ¶ 11.  The member has no way of knowing the final geographic allocation of their product, although they are aware that a portion of its product is ultimately sold in Oregon.  *Id*.  In order to estimate the data required to be reported, this member uses a third-party market research company to provide analytics, at a cost of $1.5 million in 2025 alone. *Id*.

## III.    ARGUMENT

### a.    The Proposed Intervenors Should be Granted Permission to Intervene

Proposed Intervenors bring no new claims and only seek to bring those that remain viable after the Court's decision on Defendant's motion to dismiss, Dkt. 88, Plaintiff's claims challenging the constitutionality of the Act under the Dormant Commerce Clause and the Due Process Clause of the Fourteenth Amendment of the Constitution.

Rule 24(b)(1)(B) provides that "on timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  The movant must demonstrate the following three threshold requirements: "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021).  The Court, in the sound exercise of its discretion, must consider the potential adverse impact on the original parties in its decision to allow or deny intervention, including whether intervention will unduly delay the main action or will unfairly prejudice the existing parties. *Id*.  That said, Rule 24 should be constructed

PAGE 5 –    MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY
ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD
NORTHWEST

liberally in favor of granting intervention.  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003)(citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.1998)).

> **b.** **The Proposed Interventions Can Demonstrate the Requisite Threshold Requirements**
>
> **i.** **Proposed Intervenors Share Common Questions of Law and Fact with the Main Action**

Like Plaintiff, Proposed Intervenors are also trade organizations representing members that have been severely impacted by the implementation of the Act.  Proposed Intervenors will argue, as does Plaintiff, that on its face and as implemented, the Act is unconstitutional.  "A common question of law and fact between an intervenor's claim or defense and the main action arises when the intervenor's claim or defense 'relate[s] to the subject matter of the action ... before the district court,'" *Brumback v. Ferguson*, 343 F.R.D. 335, 346 (E.D. Wash. 2022) (quoting *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993)).  In other words, "when such claims or defenses 'are clearly a critical part of the instant case.'" *Id.* (quoting C*itizens Allied for Integrity & Accountability, Inc. v. Miller*, No. 21-00367, 2022 WL 1442966, at *21 (D. Idaho May 5, 2022)).

Here, Proposed Intervenors are organizations with missions to advocate for businesses in Oregon.  Because of the extremely wide net that the Act casts, a significant number of Proposed Intervenors' members are producers under the Act, making them responsible for extremely burdensome data gathering, reporting, exorbitant fees, and often a limited ability to modify packaging to reduce their burdens under the Act.  If allowed to intervene, Proposed Intervenors will show that the Act has the effect of impermissibly burdening interstate commerce and violates due process in the same ways that are alleged by Plaintiff in its First Amended Complaint (Dkt. 26), including without limitation:

PAGE 6 –    MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD NORTHWEST

- [The Act] unduly burdens interstate commerce by subjecting producers to complex, nonreviewable volume-based fees and reporting obligations determined by the state-specific PRO, unnecessarily creating inconsistent obligations that disrupt the uniformity of an inherently national market. Dkt. 26 ¶ 70;
- [M]embers have expended excessive resources—in some cases, including hundreds of hours and dozens of staff members—on compliance to communicate and negotiate compliance obligations with other companies (i.e., due to uncertainties in Oregon's hierarchical program), trace products, and attempt to estimate and recoup costs paid for fees in the state, among other impacts. *Id.* ¶ 71;
- [P]roducers [are forced] to make product and packaging design, sourcing, and distribution decisions in a manner consistent with the standards set by CAA . . . even when products are bound for other states. *Id.* ¶ 73;
- [P]roducers are provided no meaningful opportunity to opine on or challenge CAA's fee assessments [in violation of due process protections]. *Id.* ¶ 83;
- [M]embers . . . must sign CAA's standard contract as-is to be eligible to report, with no negotiation permitted on key provisions such as auditing and back charging—provisions which would otherwise be negotiable in any commercial context. To maintain market access, companies have no choice but to sign the CAA agreement and forgo meaningful recourse. *Id.*
- Fees are calculated using past sales data, while companies lack visibility into future sales, making it impossible to project economic impacts accurately. Regulated entities have not received detailed breakdowns of fee obligations and are unable to determine their obligations sufficiently to accrue funds and pay for those obligations in the ordinary course of business. *Id.* ¶84.

Based on the foregoing, the Court should find that the Proposed Intervenors have met the threshold requirement that they share common questions of law and fact with Plaintiff.

### ii.    Proposed Intervenors' Motion is Timely

In the context of a motion to intervene, timeliness hinges on "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay," considering "the totality of the circumstances." *Smith v. Los Angeles Unified School District*, 830 F.3d 843, 854 (9th Cir 2016). "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be

PAGE 7 –    MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD NORTHWEST

protected adequately by the parties, not the date it learned of the litigation." *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996).

In *West Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d at 710, the Ninth Circuit instructed that, "[when] determin[ing] whether intervention prejudices the other parties to a case, the court compares the harm from allowing intervention at a later stage of the proceedings with what would have occurred no matter when the applicant was allowed to intervene." However, the Supreme Court has recently held that while timeliness is an important consideration in determining whether to grant intervention, "timeliness is to be determined from all of the circumstances and the point to which a suit has progressed is not solely dispositive." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022)(internal quotations omitted).

With respect to the stage of the proceedings, Plaintiff's second amended complaint was filed in October, 2025, and motion practice continued between November 2025 and February 2026. The Court just recently ruled on Defendant's motion to dismiss (denying it in part) and granted Plaintiff's motion for preliminary injunction on February 6, 2026. The parties have only recently exchanged discovery requests, and trial is still several months away. As such, this is an appropriate stage in the proceedings for the Potential Intervenors to enter the case. In addition, the parties will not be prejudiced because this intervention will not do anything to delay the case, as Proposed Intervenors are not requesting delay of trial or any other dates that the Court has set.

### iii. The Court has an Independent Basis for Jurisdiction over Proposed Intervenors' Claims

Plaintiff's grounds for jurisdiction under 28 U.S.C. § 1331 are rooted in the federal question that gives rise to the Court's original jurisdiction in this case, and Proposed Intervenors bring no new claims. "Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). Jurisdiction cannot reasonably be challenged here,

PAGE 8 –   MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY
ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD
NORTHWEST

where the Federal Court has original jurisdiction over claims of unconstitutionality under the United States Constitution. Accordingly, Proposed Intervenors are "not required to make any further showing that [their] intervention is supported by independent jurisdictional grounds." *Id*.

### c.  Intervention would not Delay or Prejudice the Parties

As set forth above, the Proposed Intervenors are not seeking to delay any dates set by the Court, including trial, nor do Proposed Intervenors bring any new claims to the matter. "In exercising its discretion to grant or deny permissive intervention, a court must consider whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties.'" *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990) (quoting Rule 24(b)). As there will be no delay, and Proposed Intervenors will not add any complexity or other prejudice. Under the circumstances, no undue delay or prejudice will result from granting the Motion to Intervene.

### d.  Discretionary Factors Weigh in Favor of Granting Intervention

As set forth above, Proposed Intervenors have met the three threshold criteria to allow intervention, and have demonstrated that intervention would not delay or prejudice the parties, in accordance with Rule 24(b). However, the Court has discretion to take into consideration other relevant factors.

> These relevant factors include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (Footnotes omitted). Of these factors, none weigh against granting this Motion because of how well aligned Proposed Intervenors' claims are with those of Plaintiff, and because no delay will result. However, that

PAGE 9 –   MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD NORTHWEST

does not mean that the Proposed Intervenors' interests are adequately represented by Plaintiff. As set forth above, the reach of the Act is extremely broad, affecting anyone who sells a packaged product in the State of Oregon. Proposed Intervenors represent a broader membership than Plaintiff with more local and regional interests, and whose members include companies outside of the context of the businesses of wholesale and distribution but are nonetheless severely burdened by the unconstitutional effects of the Act. *See* Wilhelms Decl. ¶¶ 3–5, 7–10, 12; Dillon Decl. ¶¶ 3, 5, 7–8; Dalton Decl. ¶¶ 3–5, 7–11.

Intervention is particularly appropriate here to ensure that relief in this case extends to as many affected businesses as possible. Although this Court recently preliminarily enjoined application of the Act to Plaintiff and its members, Defendants continue to enforce the Act against other businesses, despite this Court's Preliminary Injunction Order finding the statute likely unconstitutional. To ensure that relief is extended to as many impacted businesses as possible, consistent with recent case law regarding the appropriate scope of injunctive relief in district courts[2], Proposed Intervenors seek to participate as additional plaintiffs in this action.

On balance, the presence of the Proposed Intervenors "will contribute to the just and equitable resolution of the issues before it." *Doe v. Harris*, No. C12-5713 TEH, 2013 WL 140053, at *2 (N.D. Cal. Jan. 10, 2013). Here, the Proposed Intervenors "seek only to ensure that their perspective on the matters at the heart of this litigation are given due consideration; they do not request to bring any counterclaims or cross-claims." *Id*. The Court should therefore exercise its sound discretion to grant this Motion to Intervene.

---

[2] In *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025) the Supreme Court held that federal courts considering challenges to the lawfulness of federal actions – in that case Executive Orders issued by the President – could only grant relief to the parties before the court. While this case involves the lawfulness of state action under the federal constitution, it is not apparent that a different rule would apply with respect to the scope of the relief available.

PAGE 10 –  MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD NORTHWEST

## IV.    CONCLUSION

For the reasons set forth in this Motion, OBI, NWGRA and Food Northwest respectfully request that this Court grant its Motion to Intervene pursuant to Rule 24(b).

DATED:  March 16, 2026.

TONKON TORP LLP


By:    *s/ Maureen S. Bayer*
    Steven M. Wilker, OSB No. 911882
      Direct:  503.802.2040
      Email:   steven.wilker@tonkon.com
    Maureen S. Bayer, OSB No. 214905
      Direct:  503.802.2115
      Email:  maureen.bayer@tonkon.com
    *Attorneys for [Proposed] Intervenors Oregon*
    *Business and Industry Association, Northwest*
    *Grocery Association, and Food Northwest*

PAGE 11 –   MOTION TO INTERVENE BY OREGON BUSINESS AND INDUSTRY ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, AND FOOD NORTHWEST