IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS, <br><br> Plaintiff, <br><br> v. <br><br> LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity, <br><br> Defendant. | Case No. 3:25-cv-1334-SI <br><br> **ORDER DENYING MOTIONS TO INTERVENE** |

**Michael H. Simon, District Judge.**

The Court preliminarily enjoined Oregon's Plastic Pollution and Recycling Modernization Act (the "Act") on February 6, 2026, finding that Plaintiff National Association of Wholesaler-Distributors ("NAW") demonstrated serious questions going to the merits of its constitutional claims, a likelihood of irreparable harm, and a balance of equities that tipped sharply in its favor. ECF 88 (citing *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011)). The Court explained on the record, however, that the parties' ability to proceed expeditiously to trial in July 2026 was critical to that analysis—and particularly to the Court's finding on the balance of equities. Now before the Court are two motions to intervene. ECF 101, 105. Because there is no right to intervene and because intervention would delay the forthcoming trial to the peril of the equities, the Court denies intervention.

PAGE 1 – ORDER

**BACKGROUND**

The Act is an extended producer responsibility law that requires producers to pay a fee for plastic and other single-use packaging products that enter Oregon. NAW is a trade organization whose members are producers subject to the Act's fee requirements. In July 2025, NAW's members received fee invoices from the "producer responsibility organization" in charge of setting the Act's fees, Circular Action Alliance. NAW asserts that the Act violates the Dormant Commerce Clause and the Due Process Clause of the Fourteenth Amendment and accordingly sought preliminary injunctive relief from enforcement of the Act. ECF 33. The Court set a briefing schedule and evidentiary hearing for that motion. *See* ECF 43. On February 2, 2026, the Court granted NAW's motion for preliminary injunctive relief and set a trial date for July 13, 2026. ECF 87, 88. Although the Court enjoined enforcement of the Act with respect to NAW's members, it did not order a broader injunction. On February 13, 2026, the Oregon Department of Environmental Quality ("DEQ") circulated a letter stating that it would continue to enforce the Act against producers that were not members of NAW.

American Forest & Paper Association ("AF&PA") is a national trade association whose members are manufacturers of paper-based packaging products and, like NAW's members, are also producers subject to the Act's fee requirements. *See* ECF 101. Oregon Business and Industry Association ("OBI") is an advocacy group whose members represent various industries employing more than 250,000 Oregonians. ECF 105. Northwest Grocery Retail Association ("NWGRA") is a trade organization that advocates for grocery, retail, and food suppliers in the Pacific Northwest. *Id.* Food Northwest is a trade organization whose members include food and beverage companies. *Id.*, AF&PA, OBI, NWGRA, and Food Northwest (together, "Proposed Intervenors") now seek to intervene.

PAGE 2 – ORDER

## DISCUSSION

### A. Intervention as of Right

Under Rule 24(a) of the Federal Rules of Civil Procedure, an applicant may intervene as of right if the proposed intervenor shows that: "(1) it has a significant protectable interest as to the property or transaction that is the subject of the action;[1] (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately meet the applicant's interest." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022).[2] "Failure to satisfy any one of the requirements," however, "is fatal to the application, and [the Court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

---

[1] "[A]t an irreducible minimum Rule 24(a)(2) requires that the asserted interest be 'protectable under some law' and that there exist 'a relationship between the legally protected interest and the claims at issue.'" *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1088 (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc)). "If these two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop." *Id.* Defendant does not dispute that Proposed Intervenors have "interests" under Rule 24(a)(2).

[2] In evaluating whether a proposed intervenor satisfies these requirements, courts "are guided primarily by practical and equitable considerations" and generally construe Rule 24 "broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (first quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998), then quoting *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992)).

Defendant opposes AF&PA's intervention as a matter of right[3] on two grounds: first, that AF&PA is not "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest," *see* Fed. R. Civ. P. 24(a)(2); and second, that AF&PA's motion is untimely, *id.* at (a). The Court agrees that both grounds independently warrant denial of the motion.

In deciding whether a party's ability to protect its interest will, as a practical matter, be impaired, courts in the Ninth Circuit follow the guidance of Rule 24 advisory committee notes: "if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24(a) advisory committee's note to 1966 amendment; brackets omitted). In practice, courts apply that guidance by asking whether the proposed intervenors have "other means" to protect their interests. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004); *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 443 (9th Cir. 2006) ("Even if this lawsuit would *affect* the proposed intervenors' interests, their interests might not be *impaired* if they have 'other means' to protect them" (quoting *Alisal Water*, 370 F.3d at 921; emphases in original)). In *Lockyer*, for example, the Ninth Circuit explained that proposed intervenors would be substantially affected absent intervention when they sought to challenge a spending measure. *See* 450 F.3d at 443. "Because the Weldon Amendment is a spending measure and thus gives the proposed intervenors no enforceable rights, they would be unable to bring a separate suit where they could argue for a broad reading of the Amendment." *Id.* (collecting cases for proposition that taxpayers have no general grievance standing). By contrast, the Ninth Circuit in *City of Los Angeles* held that

---

[3] OBI, NWGRA, and Food Northwest seek only permissive intervention. ECF 105 at 5.

PAGE 4 – ORDER

community groups that sought to intervene to protect the rights of their members to be free from unconstitutional police practices would not be impaired by the litigation. *See id.* at 442-43 (describing holding in *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002)). Although the Court ultimately denied intervention on another ground, it commented that the groups' interest impairment was "doubtful" because the lawsuit did not "prevent any individual from initiating suit against LAPD officers who engage in unconstitutional practices or against the City defendants for engaging in unconstitutional patterns or practices." *City of Los Angeles*, 288 F.3d at 402.

As in *City of Los Angeles*, nothing about NAW's case precludes AF&PA from bringing its own constitutional suit challenging enforcement of the Act. Disposition of the pending lawsuit in either party's favor will not impair AF&PA's interests: if the Court ultimately rules in Defendant's favor, the ruling will not have preclusive effect on AF&PA, a non-party. If the Court rules in favor of NAW, the Act may be held to be facially unconstitutional (which likely would relieve AF&PA of its obligations under the Act altogether). Alternatively, AF&PA may seek to assert an as-applied judgment in its own suit based on offensive, non-mutual issue preclusion. AF&PA argues that a decision in NAW's favor would adversely affect AF&PA by increasing the costs of the program for each remaining producer.[4] However, "[a]n economic

---

[4] In support, AF&PA cites Oregon Revised Statute ("ORS") 459A.884(1), which requires Circular Action Alliance to establish a schedule of membership fees to be paid by members of the organization that is sufficient to meet the financial obligations of the producer responsibility organization. AF&PA's theory is that, if the Act is enforced against other producers but permanently enjoined as to NAW, Circular Action Alliance will need to raise fees because the financial obligations of the organization will remain the same, regardless of how many members pay into the organization.

Whether fees for other member-organizations would rise under those circumstances is speculative—indeed, fees under the Act are apportioned pursuant to pre-approved three-year plans. *See* ORS 459A.875(2)(E) (requiring producer responsibility organization to submit Producer Responsibility Program Plan that "must" "[e]stablish, calculate, and charge

PAGE 5 – ORDER

stake in the outcome of the litigation, even if significant, is not enough" to show a "right" to intervene. *See Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993); *see also Sierra Club v. U.S. Env't Prot. Agency*, 2013 WL 5568253, at *2-3 (N.D. Cal. Oct. 9, 2013) (collecting cases). Further, if the Court were to rule in favor of NAW and the fees were raised in this manner, AF&PA's members would presumably have a basis to withhold its fee while litigating their own constitutional challenges to the Act. Thus, because this lawsuit does not substantially affect AF&PA's rights in a practical sense, intervention as of right is denied on this basis.

In the alternative, the Court denies the motion on timeliness grounds. In evaluating the timeliness of a motion to intervene, a court considers "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay" under "the totality of the circumstances." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir 2016) (quoting *Alisal Water*, 370 F.3d at 921). With respect to delay, the Court looks not to the date that the proposed intervenor learned of the litigation, but rather "the date that the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties." *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996). "[A]ny substantial lapse of time weighs heavily against intervention," and "[i]f the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." *Id.*

---

membership fees"); ORS 459A.878(3) ("A plan approved by the department under this section is valid for three years."). The Act permits plan amendments that require DEQ approval, *see* ORS 459A.881, and other plan changes that do not require approval, *see id.* at (2); however, an "intervenor cannot rely on an interest that is wholly remote and speculative" to support intervention as a matter of right. *See City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)); *but see id.* (holding that "the intervention may be based on an interest that is contingent upon the outcome of the litigation").

PAGE 6 – ORDER

Applying those factors here, the Court finds that AF&PA's motion is untimely. The parties currently are engaged in expedited discovery in preparation for a July 2026 trial. With this short period of time remaining before trial, intervention is likely to "cause disruption or delay in the proceedings." *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). But as the Supreme Court recently clarified, "the point to which a suit has progressed is not solely dispositive" in determining timeliness. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022) (cleaned up). AF&PA argues that intervention would cause no prejudice because it plans to abide by the expedited trial date and any proposed briefing schedule. Although the Court accepts those representations, *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820, it does not necessarily follow that no prejudice to Defendant would result from AF&PA's intervention. The addition of a new party, as Defendant notes, will necessarily expand the scope of the case. Even if AF&PA does not intend to conduct discovery, *Defendant* states that she would need to take discovery from AF&PA, particularly because AF&PA's members are in a different industry than NAW's. Thus, AF&PA's intervention will multiply the tasks that Defendant will need to complete before trial begins in July, which would either prejudice Defendant's ability effectively to litigate the case on the existing timeline or require the Court to move the trial date.

Further, given the current schedule, AF&PA has not shown a persuasive "reason for [its] delay in moving to intervene." *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996). On February 2, 2026, the Court granted NAW's motion for preliminary injunctive relief and set the June trial date. ECF 87, 88. About two weeks later, on February 13, 2026, DEQ refused to stay enforcement of the Act against non-NAW producers. AF&PA then waited more than a month before filing its motion to intervene on March 16, 2026—less than

PAGE 7 – ORDER

four months before trial. Taken in conjunction with the other timeliness considerations, the Court finds that the motion was not timely filed and, accordingly, that AF&PA is not entitled to intervene as a matter of right.[5]

## B. Permissive Intervention

Proposed Intervenors argue that they meet the requirements of permissive intervention. Applicants for permissive intervention under Rule 24(b) must meet three threshold requirements: "(1) an independent ground for jurisdiction; (2) a timely motion; (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). Even if an applicant satisfies these threshold requirements, a court still has discretion to deny permissive intervention. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). In exercising this discretion, a court "must

---

[5] Although the Court declines to decide AF&PA's motion on a ground not discussed by the parties, it notes that AF&PA's interests might also be adequately represented by NAW. In evaluating the adequate representation element, the "most important factor" is "how the [intervenor's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (citing 7C Wright & Miller's Federal Practice & Procedure § 1909, at 318 (1986)). "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*, 587 F.3d 947, 951 (9th Cir. 2009) (quoting *Arakaki*, 324 F.3d at 1086). This would be the case in NAW's facial challenge, notwithstanding that AF&PA's members are in a different industry than NAW's.

The Ninth Circuit has generally held that the presumption of adequacy applies when the proposed intervenor intends to lodge the same constitutional claims as one of the parties. *See, e.g.*, *id.* (campaign group shared the same "ultimate objective" with the defendants when both groups sought to defend the constitutionality of California's Proposition 8); *cf. U.S. v. State of Or.*, 839 F.2d 635, 638 (9th Cir. 1988) ("We have denied intervention as of right where it was clear that the existing parties were making all the arguments that applicants for intervention sought to make. Here, however, it is apparent that the government's arguments will not include the constitutional deficiencies raised by the applicants." (citation omitted)). Here, AF&PA has expressly pledged to "proceed with the same Dormant Commerce Clause and Due Process claims that have been advanced by NAW" with respect to the Act. ECF 129 at 3-4. It is unclear, therefore, how AF&PA's interests are not presumptively adequately represented by NAW, and AF&PA does not make a "compelling showing" to rebut that presumption.

consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*.

For the reasons explained above, the Court finds that the motions to intervene were not timely filed and declines to exercise its discretion to permit intervention. In exercising that discretion, the Court again notes its concern that intervention will unfairly prejudice Defendant by hindering her ability to proceed with the July 2026 trial date. To obviate that prejudice, the Court would need to delay the main action. This Catch-22 is avoided by denying the pending motions to intervene.

## CONCLUSION

The Court DENIES the motions to intervene, ECF 101 and 105, and DENIES AS MOOT the proposed intervenors' motions for preliminary injunction, ECF 102 and 111.

**IT IS SO ORDERED.**

DATED this 1st day of April, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 9 – ORDER