DAN RAYFIELD
Attorney General
SARA D. VAN LOH #044398
Senior Assistant Attorney General
ALEXANDER C. JONES #213898
YOUNGWOO JOH #164105
Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sara.VanLoh@doj.oregon.gov
        Alex.Jones@doj.oregon.gov
        YoungWoo.Joh@doj.oregon.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS , <br><br> Plaintiff, <br><br> v. <br><br> LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity, <br><br> Defendant. | Case No.  3:25-CV-01334-SI <br><br> DEFENDANT'S STATEMENT OF THE CASE |

## I.    INTRODUCTION

Plaintiff challenges Oregon's Plastic Pollution and Recycling Modernization Act ("RMA"), a comprehensive statutory scheme designed to address a growing recycling, plastic pollution, and waste disposal problem. To address that problem, the law requires producers of packaging, printing and writing paper, and food serviceware to share the responsibility for managing the disposal of those products. The RMA imposes such requirements through a structured and supervised system of extended producer responsibility ("EPR"). That system requires producers of covered products to join or form a producer responsibility organization ("PRO"), report the types and amounts of those products sold in or into Oregon, and pay proportional fees to support end-of-life management of those products. Every core component of this program—its structure, its fee methodology, its plan for what services the fees will fund, and all subsequent modifications—is reviewed, approved, and overseen by the Oregon Department of Environmental Quality ("DEQ").

Only two claims remain for trial: a Dormant Commerce Clause claim and a Fourteenth Amendment Due Process Clause claim. Plaintiff cannot meet its burden to prevail on either claim. For the Dormant Commerce Clause claim, the evidence will show that the RMA regulates evenhandedly, applies equally to in-state and out-of-state producers, and imposes obligations only on producers of products that are ultimately discarded in Oregon. For the Due Process claim, Plaintiff cannot meet the threshold requirement of showing a protected life, liberty, or property interest. And even if Plaintiff did so, the evidence will show that the program is grounded in detailed statutory and regulatory directives and administered through rigorous state oversight. It will further show that at every point—including rulemaking, plan development, and enforcement—producers have meaningful procedural safeguards. In sum, the RMA imposes no discrimination, no undue burden on interstate commerce, no deprivation of due process, and no unlawful delegation of authority. Plaintiff will not be able to show that the RMA is unconstitutional.

Page 2 -    DEFENDANT'S STATEMENT OF THE CASE
SV1/jc4/996799833

## II.    PLAINTIFF'S CLAIMS

### A.    Dormant Commerce Clause

To prevail on the Dormant Commerce Clause claim, Plaintiff must prove one of two theories: that the RMA discriminates against out-of-state economic interests for the benefit of in-state competitors, or that the law imposes a burden on interstate commerce that is clearly excessive in relation to the putative local benefits. Plaintiff will not prevail on either theory.

#### 1.    The RMA does not discriminate against out-of-state producers.

The evidence will show that the RMA does not discriminate against out-of-state interests. The RMA is not discriminatory on its face, in its purpose, or in its effects.

First, the RMA, on its face, does not discriminate against out-of-state producers or any other out-of-state interests. The plain text of the law itself applies equally to all producers who sell covered products in or into Oregon, regardless of whether the producer is located inside or outside the state. Second, the RMA has no discriminatory purpose. The RMA was enacted to address a growing recycling and waste-disposal problem concerning products sold in or into Oregon by both in-state and out-of-state businesses. That purpose has nothing to do with protectionism for in-state businesses. Third, the RMA is not discriminatory in effect. To show an impermissibly discriminatory effect, Plaintiff must show that the RMA imposes substantially different benefits or burdens on *similarly situated* in-state and out-of-state businesses. Plaintiff will not be able to identify similarly situated in-state businesses who benefit from the RMA at the expense of out-of-state businesses.

#### 2.    The RMA does not impose an undue burden on interstate commerce.

The evidence will show that the RMA does not impose a burden on interstate commerce that is clearly excessive in relation to the putative local benefits. The RMA does not regulate the flow of products *through* Oregon, but rather only applies to products ultimately discarded *in* Oregon. The law does so for the purpose of providing substantial environmental and social benefits. The burdens imposed by the law are directly related to those benefits and are not clearly

Page 3 -    DEFENDANT'S STATEMENT OF THE CASE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

excessive. Nor does the RMA improperly regulate instrumentalities of interstate commerce. Product packaging is not an "instrumentality" of interstate commerce, like a shipping container, truck, or train. Moreover, the RMA does not specifically target types of packaging likely to be used for interstate commerce. To the contrary, shipping packaging such as pallets and pallet wrap, when added by a distributor intermediary, for example, is *exempt* from the RMA.

**B.      Fourteenth Amendment Due Process Clause**

Plaintiff asserts two theories under the Due Process Clause: a procedural due process claim and a non-delegation claim, both facially and as-applied. Plaintiff will not meet its burden under either theory.

### 1.      The RMA does not deprive producers of procedural due process.

To prevail on a procedural due process claim, Plaintiff must show that its members have a protected life, liberty or property interest, and that the RMA deprives them of that interest without adequate procedural safeguards. Plaintiff will be unable to make that showing.

First, Plaintiff will not be able to show that its members have a protected interest at stake. A protected property interest arises either from the constitution itself or from a state law that creates a legitimate claim of entitlement to particular property. Here, Plaintiff's members do not have a fundamental constitutional right to sell products into any state free of environmental or other regulations. And no Oregon law allows businesses to operate unfettered within its borders. Absent a protected property interest, Plaintiff's facial and as-applied due process claims fail.

Second, assuming that Plaintiff's members do have a protected interest, Plaintiff will be unable to show that Defendant deprived them of that interest without constitutionally adequate process. The evidence will show that producers have alternatives to joining the existing PRO. Crucially, the RMA itself does not force producers to join any particular PRO—rather, producers have the option to form another PRO if they are dissatisfied with the current PRO's management.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Producers may also comply with the RMA by privately recycling their own products. And if neither of those options is palatable, producers may choose to exit the market altogether.[1]

Plaintiff contends that the RMA is unconstitutional as applied to its members because CAA is currently the only approved PRO so they have no choice but to join. But Plaintiff's members *do* have alternatives, as described above. While Plaintiff dismisses these alternatives with the blanket assertion that forming an alternative PRO is financially and practically impossible, that argument necessarily requires an individual inquiry into the circumstances of each member's capabilities. Plaintiff does not have standing to make such a claim. Moreover, Plaintiff and its members cannot ignore regulatory developments that were years in the making, then use that ignorance as the basis for invalidating the law itself. Failure to engage in available process does not create an as-applied due process violation.

Third, even within the context of the existing PRO, producers have many opportunities for due process. Producers can participate in rulemaking. Producers can file a state APA challenge to DEQ's approval of any program plan, including approval of the limited non-public portion of the PRO's fee methodology. Producers can also seek that information under Oregon's public records laws. If a producer has a dispute with the existing PRO, the contract between the producer and the PRO expressly allows the producer to go to court to seek an injunction against the PRO, notwithstanding the contract's arbitration clause. Further, a producer facing DEQ enforcement for RMA noncompliance will receive notice and an opportunity to contest any proposed penalty before an administrative law judge, with a right to appeal directly to the Oregon Court of Appeals. At every stage, to the extent that a producer's protected interests are at stake, the producer receives due process.

---

[1] The evidence will show that producers can leave the Oregon market without owing fees for the previous year's sales. Although producer fees for an upcoming year are calculated based on the tonnage reported in the previous year, that information simply serves as a proxy for the upcoming years' sales rather than creating an obligation for past sales. Producers only pay fees based on previous years' sales if they intend to continue selling covered products the following year. Plaintiff's characterization of the PRO fees as "retrospective" is a misnomer.

Page 5 -    DEFENDANT'S STATEMENT OF THE CASE
SV1/jc4/996799833

In sum, the evidence will show that Plaintiff's members do not have a constitutionally protected interest, Defendant has not deprived them of such an interest if they do have one, and judicial review is available to challenge the PRO's invoices, DEQ's approvals, and any penalties.

### 2.    The RMA does not unlawfully delegate authority.

Plaintiff will be unable to show that the RMA unlawfully delegates regulatory authority to the PRO. Again, the RMA does not require producers to join the existing PRO. They can form their own PRO, and it even allows producers to avoid PRO fees entirely by providing for private recycling of their own products. But, even if the RMA *did* require producers to join the existing PRO, the law does not delegate unrestrained authority to that PRO. The RMA provides detailed statutory and regulatory directives for PROs, and it requires every core component of the PRO's program, including how fees are calculated and spent, to be set forth in a detailed program plan that must be reviewed and approved by DEQ. The evidence will show that DEQ rigorously reviews each proposed program plan and plan amendment as part of a public process, provides detailed feedback, directs the PRO to make changes, approves the plan only after determining that it satisfies all applicable statutes and rules, and engages in ongoing careful oversight of the PRO as it is implemented together with regular engagement with producers themselves. The evidence will show that Plaintiff's portrayal of the RMA—in which the PRO has free rein to set fees and oppress producers as it sees fit—is false.

### III.    CONCLUSION

The evidence will show that the RMA standardizes recycling in Oregon, brings recycling opportunities to small communities throughout the state where such services were previously limited, mandates the use of responsible end markets, and requires companies to participate in reducing environmental impacts from products they sell in Oregon. Although the RMA created a new system for Oregon—after years of careful study and public input—similar packaging EPR

Page 6 -    DEFENDANT'S STATEMENT OF THE CASE

SV1/jc4/996799833

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

programs have operated in other countries for decades. Despite producers' uncertainty and reluctance to share the burden, the RMA survives constitutional scrutiny.

DATED June _29_, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General


_s/ Sara Van Loh_
SARA D. VAN LOH #044398
Senior Assistant Attorney General
ALEXANDER C. JONES #213898
YOUNGWOO JOH #164105
Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov
Alex.Jones@doj.oregon.gov
YoungWoo.Joh@doj.oregon.gov
Of Attorneys for Defendant

Page 7 -    DEFENDANT'S STATEMENT OF THE CASE
SV1/jc4/996799833