Darin Sands, OSB No. 106624
dsands@bradleybernstein.com
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Ste 204
Portland, OR 97209
Telephone: +1 503-734-2480

David R. Carpenter*
drcarpenter@sidley.com
Caleb J. Bowers*
cbowers@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000

Gordon D. Todd*
gtodd@sidley.com
Richard W. Smith*
rwsmith@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8000

* *Pro hac vice*

Attorneys for Plaintiff NATIONAL
ASSOCIATION OF WHOLESALER-
DISTRIBUTORS

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS, <br><br> Plaintiff, <br><br> v. <br><br> LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity, <br><br> Defendants. | Case No. 3:25-cv-01334-SI <br><br> **PLAINTIFF'S PRE-TRIAL STATEMENT OF THE CASE** <br><br> **Complaint Filed: July 30, 2025** |

PAGE 1 - PLAINTIFF'S PRETRIAL STATEMENT OF THE CASE

In preliminarily enjoining enforcement of Oregon's Plastic Pollution and Recycling Modernization Act (the "RMA"), the Court found that Plaintiffs' Due Process and the Dormant Commerce Clause claims raised "serious questions." The evidence presented at trial will confirm the Court's preliminary inclination. The RMA discriminates against out of state interests, and unlawfully regulates and substantially burdens the instrumentalities of interstate commerce. Separately, the RMA runs roughshod over fundamental due process rights by outsourcing taxing and regulatory authority to an unaccountable private party, without meaningful input or recourse. Plaintiff National Association of Wholesaler-Distributors ("NAW") expects to prevail on the merits and will be entitled to declaratory and injunctive relief against enforcement of the RMA.

The RMA is an extended-producer responsibility ("EPR") law that, unlike prior domestic EPR programs, is not tied to a discrete category of products (like paint or mattresses). Instead, it covers essentially all products sold or distributed into the State that come in packaging or use packaging for their distribution, as well as essentially all paper products and single-use foodservice ware. Designated "producers" of covered materials are (with inapplicable exceptions) compelled to register with a Producer Responsibility Organization ("PRO"), which sets the taxes (euphemistically dubbed "membership fees") these producers must pay to fund statewide municipal recycling and waste-management infrastructure. Oregon's Department of Environmental Quality ("DEQ") has approved only one PRO to implement the Act: the Circular Action Alliance ("CAA"), which is governed by some of the Nation's largest companies, including competitors, vendors, and customers of NAW members. Because CAA is the only approved PRO, all obligated producers must sign the non-negotiable contracts it writes and pay the fees it sets.

At trial, NAW will offer testimony from Brian Wild (NAW's Chief Government Relations Officer), along with representatives of different "producers" impacted by the RMA. NAW also intends to call Kimberly Holmes (CAA's Executive Director for Oregon), and to offer expert testimony from (1) Douglas Thomas, Ph.D., Professor of Business Administration at the Darden School of Business, who is an expert on supply chains management and will opine on the impact of the RMA on interstate distribution networks and commerce; and (2) Calvin Lakhan, Ph.D.,

PAGE 2 - PLAINTIFF'S PRETRIAL STATEMENT OF THE CASE

Director of the Circular Innovation Hub at York University's Faculty of Environmental and Urban Change, who will opine on, among other things, empirical data about the performance of EPR programs in other jurisdictions and implications of the structural features of Oregon's program. Through that testimony, the documentary evidence, and cross-examination of Defendant's witnesses, the evidence will show, among other things:

- Producer fees are set pursuant to a confidential methodology that is not publicly disclosed, and where key data and inputs have not been shared *even with DEQ*;

- CAA may change the fees unilaterally on as little as 90 days' notice without requiring DEQ approval;

- Fees are imposed retrospectively, unpredictably, and unreasonably, at times exceeding the profit margins on the products being distributed;

- Producers have no administrative process to challenge their fee assessments, and are required to agree to binding arbitration without judicial resource;

- Fees directly burden and regulate the instrumentalities of interstate commerce, compelling changes in packaging, shipping, and supply chains, and allowing burdensome and unfair free riding; and

- At no point did DEQ conduct any meaningful review of CAA's cost assessments or of the impact of the program on businesses and consumers.

Accordingly, NAW expects to prevail on both its Due Process Claim and its Dormant Commerce claim. While the RMA seeks to promote sustainability, "[a] strong public desire to improve the public condition will not warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

## I.      THE RMA VIOLATES THE DUE PROCESS CLAUSE.

The RMA violates due process twice over: it delegates coercive regulatory authority to CAA, a private entity controlled by self-interested parties, *see Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936), and it requires Producers to pay fees without fair notice of the basis for those charges or a meaningful opportunity to contest them, *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

When private actors are enlisted to administer a public program, due process requires the State to retain control over binding decisions, ensure transparency, provide regulated parties with meaningful review, and guard against self-interested private control. *See FCC v. Consumers' Research*, 606 U.S. 656, 692–94 (2025); *Ass'n of Am. Railroads v. U.S. Dep't of Transp.* (*AAR III*), 821 F.3d 19, 35–36 (D.C. Cir. 2016). The RMA does the opposite.

For starters, final authority over Producer fees lies with the PRO—CAA—and not DEQ. While DEQ reviewed a *draft* fee schedule, CAA issued invoices based on markedly different rates. CAA also retains ongoing authority to update fee rates, adjust material-cost allocations, apply eco-modulation bonuses, and calculate producer-specific assessments without DEQ approval. The methodology underlying those calculations (Appendix G to the Program Plan) has never been subject to public comment or disclosure. CAA has never even shared with DEQ the "proprietary" model that generates the "Cost-to-Manage" index values driving the fee-setting process.

Moreover, Producers have no way to challenge those assessments in court or before DEQ. Instead, DEQ has allowed CAA to channel all fee disputes into confidential, binding arbitration, leaving Producers paying invoices they cannot fully verify and challenging them—if at all—in a private forum created by the same regime that imposed the charges.

All this is being carried out by an entity controlled by a board of directors comprising some of the largest companies in the market. Those companies are structurally better positioned to benefit from the system they oversee, with a scale, compliance infrastructure, and market leverage that their smaller competitors lack. Thus, by placing unreviewable control over the EPR program in the hands of self-interested market participants, the RMA abdicates public control over coercive regulatory power in a manner due process simply cannot bear.

The RMA also violates due process by requiring Producers to pay substantial fees without fair notice or a meaningful opportunity to contest them. Upon receiving a CAA invoice, Producers must pay fees calculated retroactively under a confidential methodology or risk contract enforcement by CAA and/or referral to DEQ for enforcement proceedings—and penalties reaching $25,000 per day. That creates a serious risk of error, as Producers are left without a pre-deprivation

PAGE 4 - PLAINTIFF'S PRETRIAL STATEMENT OF THE CASE

mechanism to verify the fees or tell whether covered products moving through interstate supply chains have been double-counted or misattributed to them. Producers' only recourse to challenge the fees is to resort to confidential, binding arbitration that inherently prevents Producers from identifying recurring errors in the fee system or gaining meaningful notice of how the methodology is applied. *See Ting v. AT&T*, 319 F.3d 1126, 1151–52 (9th Cir. 2003); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Accordingly, NAW will prevail on its Due Process claim.

## II.    THE RMA VIOLATES THE DORMANT COMMERCE CLAUSE

The RMA also violates the Dormant Commence Clause, both by discriminating against interstate commerce and by imposing burdens on interstate commerce that are clearly excessive in relation to the putative local benefits. *See Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (2013); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

The RMA's discrimination in favor of Oregon entities is apparent from the statute itself. It exempts Oregon public bodies from registration, but gives no comparable exemption to out-of-state public entities. *See* OR. REV. STAT. §§ 459a.863(32)(b), -.872; *id.* §§ 174.109–117. It exempts small retail establishments and restaurants and food carts selling food for "immediate consumption"—carveouts that protect fixed local businesses while leaving interstate suppliers to absorb the program's costs. *Id.* § 459A.863(32)(f), (g). Its revenue-based small-producer exemption expressly favors firms whose business is confined to Oregon, because out-of-state revenue can defeat the exemption even when Oregon sales are the same. *Id.* § 459A.863(32)(c). And it provides special benefits for publishers with greater in-state reach. *Id.* § 459A.884(7). Beyond these examples, the overall operation of the program is to compel predominantly interstate businesses to fund Oregon's new recycling infrastructure while attempting to shift the costs away from local interests (even though they too profit from the products and packaging at issue).

The RMA independently violates the Dormant Commerce Clause because the burdens it imposes on interstate commerce are clearly excessive in relation to its putative local benefits. *Pike*, 397 U.S. at 142. The Supreme Court has recognized numerous burdens on interstate commerce "of special importance" to that balancing, including "disruption of travel and shipping due to a

PAGE 5 - PLAINTIFF'S PRETRIAL STATEMENT OF THE CASE

lack of uniformity in state laws," "impacts on commerce beyond the borders of the defendant state," and "impacts that fall more heavily on out-of-state interests." *Pac. Nw. Venison Prods. v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994) (collecting cases). Each is present here.

As NAW will show, including through fact witness and expert testimony, the RMA imposes Oregon-specific reporting duties and material-specific fees on packaging moving through integrated regional and national supply chains. Packaging itself is an instrumentality of interstate commerce, and the regulatory burden disrupts interstate distribution by forcing producers to account for Oregon-specific obligations in systems built around multi-state logistics. The burden extends beyond Oregon because retrospective fees cannot be isolated at the time of sale and are spread through regional pricing to customers in other States. Moreover, because distributors often cannot trace whether products are ultimately disposed of in Oregon, the fees inevitably are imposed not just on products discarded in the State but also products moving *through* the State. These burden fall most heavily on interstate firms, which often cannot control packaging design, segregate Oregon-bound goods, or absorb substantial fees on thin margins. The proliferation of varying EPR laws in other states heightens the risk of conflicting obligations and double counting.

Oregon cannot justify those burdens with benefits that are diffuse and poorly tied to the entities required to pay. *See Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 86–88 (2d Cir. 2009). The RMA's fees are based on system-wide cost allocations and the desire to build new statewide infrastructure—not a fair approximation of each Producer's impact on Oregon's waste system. Worse, the fee structure actually pushes Producers toward lower-cost packaging rather than packaging that is easier to recycle, undermining the environmental benefits Oregon invokes to justify the program. While Defendant will argue that Oregon's RMA is supported by packaging EPR regimes implemented in Canada and Europe, NAW will show at trial why that comparison is legally immaterial and factually insufficient.

## III.    CONCLUSION

Accordingly, NAW expects to prevail at trial on its constitutional claim and will be seeking declaratory and injunctive relief.

PAGE 6 - PLAINTIFF'S PRETRIAL STATEMENT OF THE CASE

DATED this 29th day of June, 2026        SIDLEY AUSTIN LLP

By: */s/ David R. Carpenter*
David R. Carpenter*
drcarpenter@sidley.com

Caleb J. Bowers*
cbowers@sidley.com
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Gordon D. Todd*
gtodd@sidley.com
Richard W. Smith*
rwsmith@sidley.com
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711
*Pro hac vice*

BRADLEY BERNSTEIN SANDS LLP
Darin Sands, OSB No. 106624
1211 NW Glisan St., Ste 204
Portland, OR 97209
Telephone: +1 503-734-2480

Attorneys for Plaintiff
NATIONAL ASSOCIATION OF
WHOLESALER-DISTRIBUTORS

PAGE 7 - PLAINTIFF'S PRETRIAL STATEMENT OF THE CASE