Darin Sands, OSB No. 106624
dsands@bradleybernstein.com
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Ste 204
Portland, OR 97209
Telephone: +1 503-734-2480

David R. Carpenter*
drcarpenter@sidley.com
Caleb J. Bowers*
cbowers@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000

Gordon D. Todd*
gtodd@sidley.com
Richard W. Smith*
rwsmith@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8000

\* *Pro hac vice*

Attorneys for Plaintiff NATIONAL
ASSOCIATION OF WHOLESALER-
DISTRIBUTORS

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS,<br><br>            Plaintiff,<br>    v.<br><br>LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity,<br><br>            Defendant. | Case No. 3:25-cv-01334-SI<br><br>**PRETRIAL SUPPLEMENTAL BRIEF: DORMANT COMMERCE CLAUSE**<br><br>**Complaint Filed: July 30, 2025** |

PAGE 1 - PRETRIAL SUPPLEMENTAL BRIEF: DORMANT COMMERCE CLAUSE

Plaintiff National Association of Wholesaler-Distributors ("NAW") submits this supplemental brief pursuant to this Court's July 1, 2026 order, Dkt. 170. As explained below, the "instrumentalities" of interstate commerce refers to the means by which goods (or persons) move in commerce across state lines. Because packaging is essential for the transportation of goods in interstate commerce, it is properly considered such an instrumentality, as relevant to NAW's claim under the Dormant Commerce clause.

The Supreme Court has long recognized that, even absent facial protectionism, a State may not unduly burden interstate commerce by subjecting its instrumentalities to state-specific requirements that interfere with the efficient movement of goods across state lines or intrude into matters as to which there is a need for national uniformity of regulation. *See Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 527–29 (1959); *S. Pac. Co. v. Arizona*, 325 U.S. 761, 771–75 (1945). In *Southern Pacific*, for example, the Court invalidated an Arizona regulation limiting the length of trains on safety grounds, finding that the putative local benefit could not justify the "serious burden" imposed on the interstate rail system. *S. Pac.*, 325 U.S. at 771–75. Similarly, in *Bibb*, the Court struck down an Illinois law that required trucks moving goods in interstate commerce to equip certain mudflaps before entering the State—a law that threatened "a significant delay in an operation where prompt movement may be of the essence." *Bibb*, 359 U.S. at 527. The Illinois law also "seriously interfere[d]" with "'interline' operations" where an entire trailer is transferred from an original carrier to another carrier that serves a different area—a practice that is "particularly vital in connection with shipment of perishables, which would spoil if unloaded before reaching their destination." *Id.* at 527–28 (noting the problems created to the extent intermediate carriers lack ability to force original carriers to attach mudguards). Because of the "clear burden on commerce," Illinois's asserted safety interest had to give way to "the need for national uniformity" the Commerce Clause requires. *Bibb*, 359 U.S. at 529.

PAGE 2 - PRETRIAL SUPPLEMENTAL BRIEF: DORMANT COMMERCE CLAUSE

Both cases applied what, in essence, was a balancing test later formalized in *Pike*—a case that itself involved state regulation of cantaloupe containers. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 138, 142 (1970); *see also Nat'l Pork Prods. Council v. Ross*, 598 U.S. 356, 379 n.2 (2023) (citing *Bibb* and *Southern Pacific* as part of a line of cases involving "state regulations on instrumentalities of interstate transportation—trucks, trains, and the like"). Within that framework, the "disruption of travel and shipping" recognized in *Bibb* and its progeny reflects a burden "of special importance." *Pac. Nw. Venison Prods. v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994).

To NAW's knowledge, the Supreme Court has not expressly defined what an "instrumentality of interstate commerce" is, but Commerce Clause cases in varying contexts refer to the "instrumentalities" of commerce as the means for the transportation of goods or conduct of commerce between the States. *See, e.g.*, *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 130–31 (1943) (describing vehicular roads and bridges as "indispensable to the interstate movement of person and goods . . . . If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce"); *Shreveport Rate Cases*, 234 U.S. 342, 351 (1914) (explaining that Commerce Clause grants Congress authority over "interstate carriers as instruments of interstate commerce"); *Welton v. Missouri*, 91 U.S. (1 Otto) 275, 280 (1875) (describing Commerce Clause power as embracing "the instruments by which such commerce may be conducted" and "which consists in the transportation and exchange of commodities"). For example and as pertinent here, in *Japan Line, Ltd. v. County of Los Angeles*, the Supreme Court invalidated a state tax on shipping containers used for the transportation of cargo as an improper tax on the "instrumentalities of foreign commerce." 441 U.S. 434, 444–45 & n.9 (1979).

"Instrumentalities," however, are not limited to physical structures or vehicles. For example, "bills of lading for the movement of interstate commerce are instrumentalities of that commerce" because they are "the efficient means of credit resorted to for the purpose

PAGE 3 - PRETRIAL SUPPLEMENTAL BRIEF: DORMANT COMMERCE CLAUSE

of securing and fructifying the flow of a vast volume of interstate commerce upon which the commercial intercourse of the country, both domestic and foreign, largely depends." *United States v. Ferger*, 250 U.S. 199, 204 (1919).

Also instructive are cases from the criminal context, where the Supreme Court has identified the "instrumentalities of interstate commerce" as one of the core categories of Congress's Commerce Clause authority. *United States v. Lopez*, 514 U.S. 549, 558 (1995). Applying *Lopez*, courts have described the "instrumentalities of interstate commerce" as encompassing "the people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods." *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005). The internet, cell phones, and GPS devices also fall within this category as "the means to engage in commerce and the method by which transactions occur." *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (internet); *see also United States v. Stackhouse*, 105 F.4th 1193, 1199 (9th Cir. 2024) (cellphone is an "instrumentality of interstate commerce"); *United States v. Morgan*, 748 F.3d 1024, 1034 (10th Cir. 2014) (cell phone, internet, and GPS devices). What unifies the "instrumentalities of interstate commerce" category is not any physical attribute of the regulated thing itself but its "essential" role in effectuating "the carriage of persons and goods moving in interstate commerce." *United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998); *see also United States v. Chavarria*, 140 F.4th 1257, 1263–1265 (10th Cir. 2025) (tracing historical use of phrase "instrumentality of interstate commerce"; observing that the Supreme Court has not "expressly defined or limited the term," but "[w]e know that instrumentalities of interstate commerce embrace wide swaths of modern means of conveyance, and change with the times").

Packaging used in the interstate shipment of goods squarely qualifies as an instrumentality of interstate commerce. Goods like perishable foodstuffs cannot be shipped unless they are safely and securely packed for shipment, making primary packaging a necessary means by which such goods flow in interstate commerce. *See Cheer Pack N.*

*Am., LLC v. Valley Forge Ins. Co.*, 2017 WL 1552315, at *7 (D. Mass. Apr. 28, 2017) (observing packaging is "essential to the process by which [goods are] made marketable"). Moreover, secondary and tertiary packaging are, in themselves, indispensable means for safely and efficiently transporting goods, including on trucks and trains. That is their purpose: to facilitate the shipment of goods in a modern economy that depends on interstate distribution networks. Similar to the laws struck down in the instrumentality line of cases, state-specific regulation of packaging is subject to a Dormant Commerce Clause challenge where (as here) it threatens to interfere with the efficient flow of goods and the organization of interstate distribution networks across multiple carriers. *See Bibb*, 359 U.S. at 527–28 (finding that substantial burdens on interstate commerce arose from "a significant delay in an operation where prompt movement may be of the essence" and from interference in interline operations between carriers); *cf. Am. Trucking Ass'ns v. Scheiner*, 483 U.S. 266, 284–85 (1987) (observing that fees imposed on the use of an instrumentality "can obviously divide and disrupt the market for interstate transportation services").

To be sure, the "instrumentality" line of cases does not exhaust the universe of substantial burdens cognizable under *Pike*, *see Pork Producers*, 598 U.S. at 395 (Roberts, C.J., concurring), although state-specific regulation of the instrumentalities of interstate commerce presents an area of "special concern," *id.* at 379–80 & n.2 (Gorsuch, J.). Ultimately, the proper inquiry is whether the state-imposed burdens go beyond mere cost of compliance and instead impose consequential harms on the interstate market itself. *Id.* at 397–400 (Roberts, C.J., concurring). Because packaging is an essential means by which goods are made fit for interstate shipment and moved through interstate distribution channels, and because adoption of bespoke state-level regulations of packaging would interfere with the efficient flow of goods in interstate commerce, the RMA's regulation of that packaging squarely implicates concerns at the heart of the Dormant Commerce Clause.

DATED July 8, 2026                    SIDLEY AUSTIN LLP

By: */s/ David R. Carpenter*
David R. Carpenter*
drcarpenter@sidley.com

Caleb J. Bowers*
cbowers@sidley.com
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Gordon D. Todd*
gtodd@sidley.com
Richard W. Smith*
rwsmith@sidley.com
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711
*Pro hac vice*

BRADLEY BERNSTEIN SANDS LLP
Darin Sands, OSB No. 106624
1211 NW Glisan St., Ste 204
Portland, OR 97209
Telephone: +1 503-734-2480

Attorneys for Plaintiff
NATIONAL ASSOCIATION OF
WHOLESALER-DISTRIBUTORS