OLIVIER JAMIN, OSB #173805
olivierjamin@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

Attorneys for [Proposed] Amici Curiae
Wine Institute and
Distilled Spirits Council of the United States

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS**,**<br><br>PLAINTIFF,<br><br>v.<br><br>LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity**,**<br><br>DEFENDANTS. | Case No. 3:25-cv-01334-SI<br><br>**AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES** |

AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES
4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

**TABLE OF CONTENTS**

Page

I.      INTEREST OF AMICUS CURIAE ................................................................................. 1

II.     INTRODUCTION ......................................................................................................... 2

III.    ARGUMENT ................................................................................................................. 3

        A.      Oregon's Plastic Pollution and Recycling Moderation Act Disproportionately
                Impacts Out-of-State Wine and Spirits Producers Engaged in Interstate
                Commerce .......................................................................................................... 4

        B.      Wine and Spirits Primarily Use Glass Bottles for Product Quality and Brand
                Equity ................................................................................................................. 7

        C.      The Fees Imposed on Glass Bottles Are Disproportionately High and Make Little
                Sense Given Glass's High Recyclability ............................................................ 9

        D.      The Fees Imposed on Glass Bottles Create a Perverse Incentive to Use More
                Plastic ............................................................................................................... 10

        E.      Consumers From Other States Inevitably and Unfairly Bear the Cost in Violation
                of the Commerce Clause ................................................................................... 12

IV.     CONCLUSION ............................................................................................................ 14

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bacchus Imps. v. Dias*,
　468 U.S. 263 (1984)..................................................................................................4

*Family Winemakers of Cal. v. Jenkins*,
　592 F.3d 1 (1st Cir. 2010)........................................................................................4

*Healy v. Beer Inst.*,
　491 U.S. 324 (1989)..................................................................................................4

*Hunt v. Wash. State Apple Advert. Comm'n*,
　432 U.S. 333 (1977)..................................................................................................4

*Pike v. Bruce Church, Inc.*,
　397 U.S. 137 (1970)..................................................................................................4

*West Lynn Creamery, Inc. v. Healy*,
　512 U.S. 186 (1994)................................................................................................12

**Federal Statutes**

Or. Dep't of Env't Quality, Recycling Modernization Act Producer Exemptions, State of Oregon,
　(last visited July 7, 2026) .........................................................................................5

**State Statutes**

Or. Rev. Stat. §§ 459A.700-459A.744..............................................................................5

Or. Rev. Stat. § 459A.702.................................................................................................5

Or. Rev. Stat. § 459A.860...............................................................................................11

Or. Rev. Stat. § 459A.863(32)(a)-(g)................................................................................5

**Regulations**

27 CFR § 4.72 ..................................................................................................................9

27 CFR § 5.202 ................................................................................................................9

27 CFR § 5.203 ................................................................................................................9

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

**Other Authorities**

*750ml Plastic Wine Bottle - Standard BVS 30H60,* PETAINER*,* (last visited July 8, 2026)............10

Certified Cal. Sustainable Winegrowing, *California Code of Sustainable Winegrowing Workbook* (5th ed. 2025) ................................................................................................................1

Certified Cal. Sustainable Winegrowing, Certified California Sustainable Winegrowing Program Guidebook (Nov. 2024) ........................................................................................................1

Circular Action Alliance Oregon, *CAA Annual Report 2025* ........................................................10

*Facts About Glass*, Glass Packaging Inst., (last visited July 8, 2026)......................................7, 10

Hannah Wallace, *Shattered Glass*, Or. Bus. (Jan. 4, 2024) ...........................................................11

*International Bottle Weight Accord: Sustainable Wine Round table*, Infowine (Oct. 25, 2023) ..10

Javier Echave et al., *Bottle Aging and Storage of Wines: A Review* Molecules 713, 18 (2021) .....7

Katherine A. Thompson-Witrick, Eric R. Pitts, John L. Nemenyi & Drew Budner, *The Impact Packaging Type Has on the Flavor of Wine*, 7 Beverages 36 (2021)......................................7

Mark Walker Bartz et al., *Assessing Wine Quality in Glass and Alternative Packaging During Storage*, 12 Beverages 54, 54 (2026)........................................................................................7

*Notable Oregon Wineries: Established Producers Worth Knowing*, Oregon Wine Authority .......6

*Oregon Wine*, Oregon Wine Board, (last visited July 10, 2026) .....................................................6

Paul Williams, *Business in the Age of Glass - How the move to ditch plastic is becoming a rewarding investment*, L.A. Times (May 17, 2026) .................................................................9

Scott DeFife, *The High Cost of the Oregon Outlier*, 49 Glass International, vol. 49, Feb. 2026 .......................................................................................................................11

*Statistics*, WineBusiness Analytics (last visited July 10, 2026) .....................................................6

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main ᐧ (503) 778-5299 fax

## I.      INTEREST OF AMICUS CURIAE

**Wine Institute** is a trade association representing nearly 1,000 California wineries and affiliated organizations.  Its members are small, midsize, and large wineries responsible for more than 80 percent of the nation's wine production and more than 95 percent of U.S. wine exports.  California's wine industry is committed to sustainability with an impressive 90 percent of the state's wine production occurring in a certified sustainable winery under a statewide certification program: Certified California Sustainable Winegrowing ("CCSW").  The CCSW program encourages the use of products with recycled and post-consumer content, reusability, takeback or recyclable packaging, and biodegradable materials.[1]  The CCSW's workbook also addresses the "Role of Packaging in a Winery's Carbon Footprint" which discusses light-weighting and criteria to evaluate sustainable attributes of wine containers including material, recyclability, energy intensity, waste generation, transportation efficiency, consumer and trade perceptions, and weight.[2]

**Distilled Spirits Council of the United States ("DISCUS")** is the principal trade association representing the leading producers of distilled spirits in the U.S.  DISCUS members produce or import a majority of all distilled spirits sold in the U.S.  DISCUS membership includes 19 large Producer "Director" members and more than 150 smaller "Craft" members.  DISCUS members are committed to sustainability and reducing the environmental impact in their production and packaging practices.  DISCUS was awarded 2023 ENERGY STAR Partner of the Year by the U.S. Environmental Protection Agency (EPA) and the U.S. Department of

---

[1] *See generally*, Certified Cal. Sustainable Winegrowing, *Certified California Sustainable Winegrowing Program Guidebook* (Nov. 2024), https://library.sustainablewinegrowing.org/amass/doc-get-pub/resource/277/CCSW_Program_Guidebook_November_2024.pdf.

[2] Certified Cal. Sustainable Winegrowing, *California Code of Sustainable Winegrowing Workbook* (5th ed. 2025) at Chapter 13, Box 13-I.

4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Energy for its partnership in sharing best practices and resources on energy-saving tools for distilleries and the 2024 ENERGY STAR Partner of the Year for partnering with the EPA to raise awareness within the industry about EPA's new Energy Performance Indicator (EPI) tool developed specifically for distilleries. The EPI was developed between EPA, Duke University, and a team of DISCUS members and other distilleries participating in the EPA's ENERGY STAR program.

As leading national trade associations for producers of wine and distilled spirits, *amici curiae* represent a broad spectrum of beverage alcohol producers, ranging from start-up craft producers to some of the largest food and beverage companies in the world. *Amici* and their members have a substantial interest in this case because Oregon's Plastic Pollution and Recycling Modernization Act (the "Act") directly regulates and imposes fees and other burdens on the packaging used to market and distribute beverage alcohol products—namely, glass wine and spirits bottles—by creating a disproportionate economic burden on those producers and adding unlawful barriers to doing business in Oregon, and does so in ways that seemingly favor in-state companies in violation of the Constitution's Commerce Clause and in a disproportionate and unfair manner.

## II.    INTRODUCTION

Unlike many consumer products, wine and spirits are overwhelmingly sold in glass containers and must comply with federally regulated standards of fill that prescribe permissible container sizes. Glass bottles are often heavier and more durable than other packaging materials to preserve product quality, meet consumer expectations, comply with industry standards, protect against breakage, and facilitate safe transportation through interstate distribution networks. As a result, wine and spirits producers face disproportionately higher fees under a system that assesses charges based on packaging material weight. Moreover, wine and spirits producers typically distribute products through a legally mandated three-tier system of producers, wholesalers, and retailers, often without visibility into the ultimate location where packaging is sold, consumed, or

Page 2 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES
4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

discarded, making it very difficult to collect the type of data requested from producers under the Act.

Glass bottles already enjoy high recycling rates in Oregon.  In fact, Oregon has the highest glass recycling rate in the country.  Moreover, glass bottles are frequently the subject of independent sustainability initiatives that producers undertake.  Given the historical success of glass recycling in Oregon, it is even more remarkable that glass is taxed at such a disproportionately high rate compared to other materials, such as plastics.

As producers of products that need to be packaged in glass to protect product quality and brand equity, wine and spirits companies have a strong interest in ensuring that Oregon's regulatory framework appropriately recognizes the environmental characteristics of glass packaging and does not impose burdens on interstate commerce that are disproportionate to the Act's intended recycling and waste-reduction benefits.  It is fundamentally unfair that producers of glass packaged products are subsidizing recycling systems for other materials and consumers from other states are forced to pay the price for it.

### III.    ARGUMENT

The wine and spirits industries support sustainability and recycling in meaningful and demonstrable ways but the Act raises serious concerns for those industries.  First, the Act violates the dormant Commerce Clause given its disproportionate impacts on out-of-state companies engaged in interstate commerce.  Given the critical role that glass containers play for the wine and spirits industries, *amici* also questions the fundamental fairness and disparate impacts of the fees imposed on glass containers under the Act.  These fees threaten to undermine the legislative intent of the Act and create perverse incentives to move off highly-recyclable and highly-recycled glass containers to less ideal materials such as plastic.  Finally, given the interstate market for wine and spirits, the Act creates a fundamentally unfair and unlawful structure in which consumers from all over the United States will pay for the costs associated with Oregon's EPR program.  We address these concerns in detail below.

A.     **Oregon's Plastic Pollution and Recycling Moderation Act Disproportionately Impacts Out-of-State Wine and Spirits Producers Engaged in Interstate Commerce**

*Amici* are concerned that the Act violates the dormant Commerce Clause's general prohibition on state regulation of interstate commerce that, in effect, benefits in-state economic interests by burdening out-of-state competitors.

Under the dormant Commerce Clause, state regulations cannot stand if the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Unconstitutional discrimination in favor of local benefits can occur on the face of a law or in its effect. *See Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 273 (1984) (holding state law unconstitutional "because it had both the purpose and effect of discriminating in favor of local [wine and brandy] products"). A law with a discriminatory effect can lack constitutional muster even if it has a legitimate purpose or justification. *See Healy v. Beer Inst.*, 491 U.S. 324, 341 (1989) (striking law and recognizing there "may be a legitimate justification for the statute" but "in effect" it unlawfully discriminated because it exempted brewers engaging in solely domestic sales from price regulations imposed on brewers selling elsewhere); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 340, 354-354 (1977) (affirming a district court ruling striking a North Carolina law because, "while neutral on its face, actually discriminated against Washington State growers and dealers in favor of their local counterparts"); *Family Winemakers of Cal. v. Jenkins*, 592 F.3d 1, 5 (1st Cir. 2010) (striking Massachusetts law creating "small winery shipping permit" because "the effect . . . is to change the competitive balance between in-state and out-of-state wineries in a way that benefits Massachusetts's [primarily small] wineries and significantly burdens [larger] out-of-state competitors").

Here, the Act includes a small producer exemption that, according to Oregon's Department of Environmental Quality, "confers wholesale liberation from producer obligations"

Page 4 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

within the Act.[3]  Under the Act, a business can qualify as a "small producer" in seven different ways[4] including most notably if it has a gross annual revenue of less than $5 million, sold less than one metric ton of covered products annually in Oregon, or is a beverage manufacturer that sold less than five metric tons of covered products annually in Oregon.[5]

The Act also provides product-specific exemptions that exclude certain types of packaging from the definition of "covered product" within the Act's scope.[6]  This includes an exemption for beverage containers that are part of Oregon's Bottle Bill program.[7]  As a result, the Act does not apply to water, flavored waters, beer, malt beverages, mineral water, soda water or similar carbonated soft drinks, kombucha, or hard seltzers sold in glass, metal or plastic bottles, or cans that are equal to or less than three liters[8]  Nor does it apply to wines sold in cans.[9]

The small producer exemption is a serious concern because it applies to an overwhelming and substantial number of Oregon wineries and in effect has a discriminatory impact on wines from other states.  For example, data shows that Oregon has consistently been the fourth largest wine producing state for the past 13 years, producing on average a little less than 15 million gallons of wine per year over that period.[10]  For comparison, over that same period, California

---

[3] Or. Dep't of Env't Quality, *Recycling Modernization Act Producer Exemptions*, State of Oregon, https://www.oregon.gov/deq/recycling/Pages/RMA-Exemptions.aspx (last visited July 10, 2026).

[4] Or. Rev. Stat. § 459A.863(32)(a)-(g).

[5] *Id.* § 459A.863(32)(c)-(e).

[6] *Id*. § 459A.863(6)(b)(A)-(R).

[7] *See id.* §§ 459A.700-459A.744 for Oregon's Bottle Bill's provisions.

[8] *Id.* § 459A.702(1).

[9] *Id.* § 459A.702(2).

[10] Alcohol & Tobacco Tax & Trade Bureau, *2025 Annual State Statistical Report - Wine* (June 3, 2026), https://www.ttb.gov/system/files/2024-04/Wine_State_Report.xlsx.

Page 5 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES
4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

was the number one wine producing state and produced on average more than 650 million gallons of wine per year—put another way, Oregon's production amounted to less than three percent of California's production and less than two percent of total U.S. wine production on average over the past 13 years. Oregon's wine industry is widely recognized as being composed of small, artisan producers. The Oregon Wine Board describes Oregon wine as "a community of artisan producers," and industry sources identify Oregon as a region characterized by boutique and small-lot wineries.[11] While California has many small wineries, its industry also includes many mid-size and large-scale wineries and accounts for approximately 86 percent of U.S. wine production.[12]

The Bottle Bill exemption also raises concerns about the Act's outsized impact on out-of-state wineries. Oregon's Bottle Bill program does not cover wine and spirits glass bottles, which an overwhelming percentage of out-of-state wineries use, and as a result wine and spirits are generally subject to the Act while many other beverages—e.g., beer, waters, sodas, kombucha, hard seltzers, and more—generally are not. In addition, the relatively few larger wineries based in Oregon already produce wine in cans, meaning the Act will have less impact on those major in-state wineries because their canned wine brands are entirely exempt. Similar to the small producer exemption, the Bottle Bill exemption will apply to some California wineries that use cans but the impact on those using glass bottles will be much larger in California than in Oregon.

In sum, the Act will, in effect, have a disparate impact on out-of-state wine and spirits producers as compared with those in Oregon, in addition to its outsized impact on wine and spirits generally over other beverage types. We next address why wine and spirits producers use

---

[11] *See Oregon Wine*, Oregon Wine Board, https://www.oregonwine.org/ (last visited July 10, 2026); *Notable Oregon Wineries: Established Producers Worth Knowing*, Oregon Wine Authority, https://oregonwineauthority.com/notable-oregon-wineries.

[12] *See Statistics*, WineBusiness Analytics, https://winebusinessanalytics.com/statistics/winery/ (last visited July 10, 2026).

Page 6 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES
4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

glass bottles for their products, the disproportionately high fees imposed on glass bottles under the Act, how those fees could create a perverse incentive that undermines Oregon's already-high recycling rates for glass, and how consumers in neighboring states will be left holding the check for it all.

**B.      Wine and Spirits Primarily Use Glass Bottles for Product Quality and Brand Equity**

Most wine and spirits are sold in glass bottles because it is the best packaging for maintaining the integrity of the liquid that has been so carefully crafted and because consumers overwhelmingly prefer this packaging.  Utilizing plastic bottles can negatively impact the quality of the beverages and damage the brand equity of each product.

According to the Glass Packaging Institute, there is a simple explanation for why glass is a superior material for preserving the quality of wine or spirits:

> Glass is nonporous and impermeable, which means packaged food and beverage products do not interact with their glass containers. As a result, food and beverage flavors are unaffected and unaltered.  No after taste, ever.
>
> Glass has an almost zero rate of chemical interactions, ensuring that glass bottles or containers preserve product strength, aroma, and flavor.
>
> Food and beverages packaged in glass helps consumers to avoid potential health risks that other packaging made with unknown chemicals or substances may cause.[13]

---

[13] *Facts About Glass*, Glass Packaging Inst., https://www.gpi.org/facts-about-glass (last visited July 10, 2026).  Researchers and other experts widely agree that glass is the ideal packaging material for wine.  *See* Mark Walker Bartz et al., *Assessing Wine Quality in Glass and Alternative Packaging During Storage*, 12 Beverages 54, 54 (2026), https://www.mdpi.com/2306-5710/12/5/54 ("glass is an ideal material for storing wine due to its impermeability, chemical inertness, and suitability for aging wine"); Katherine A. Thompson-Witrick, Eric R. Pitts, John L. Nemenyi & Drew Budner, *The Impact Packaging Type Has on the Flavor of Wine*, 7 Beverages 36 (2021), https://doi.org/10.3390/beverages7020036 ("It has been confirmed by numerous studies that glass is still superior to other packaging types . . . ."); Javier Echave et al., *Bottle Aging and Storage of Wines: A Review*, 26 Molecules 713, at 18 (2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC7866556/ ("Using darkened glass bottles as containers

4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Consumers also prefer wine and spirits packaged in glass bottles.  Producers are very interested in making packaging more sustainable and lighter to reduce transportation costs but have realized that the marketplace simply will not tolerate a wholesale shift to ultra-light packaging like plastics.  A report published in May surveyed 2,000 U.S. wine consumers and found a stark preference for glass packaging across a number of alternative packaging, even when information on environmental impact was shared.[14]  The reported relative discounts for each type of packaging was particularly revealing: "Relative percent discounts for wine packaging relative to glass bottles ranged from 19.30% (full information and carbon footprint) to 26.16% (no information) for aluminum bottles, *31.09% (full information) to 36.92% (no information) for PET bottles*, and 38.13% (carbon footprint) to 54.29% (recyclability) for flexible bags."[15]  According to the report's authors, those numbers suggest that, "given the difficulty in assessing wine quality before purchase or consumption, consumers rely on packaging as a cue for quality"—with glass bottles signaling the highest quality.[16]

The report also noted many of the reasons that glass is the preferable packaging for these products: "glass is an ideal material for storing wine due to its impermeability, chemical inertness, and suitability for aging wine . . . ."[17]  A recent article in the *L.A. Times* also noted consumer preferences for glass packaging due to other concerns: "As consumers become more aware of potential chemical leaching from plastics, glass provides a clear advantage.  It

---

to preserve wine is justified, since it reduces the incidence of light, yielding lower degradation values of aromas and lesser browning.").

[14] Mark Walker Bartz et al., *Perceptions and Preferences of U.S. Wine Consumers: Glass vs. Alternative Packaging*, 21 Cleaner & Responsible Consumption 100417, at 5 (Mar. 2026), https://www.sciencedirect.com/science/article/pii/S2666784326000318 (emphasis added).

[15] *Id.*

[16] *Id.*

[17] *Id.* at 1-2.

Page 8 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES
4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

reinforces the perception of purity and safety – two attributes that directly influence purchasing decisions."[18]

It is also important to note that the wine and spirits industries are subject to federal and state regulated standards of fill.[19]  Standards of fill prescribe the only permissible container volumes for wine and spirits.  They operate in conjunction with other regulations that govern container design, fill amount, and headspace.[20]  The existing supply chain, infrastructure, and timeline for ordering, manufacturing, shipping, and then filling wine and spirits containers, has been operating in a highly regulated environment for nearly 100 years.  Accordingly, moving to new container types and materials overnight would be an incredibly complicated undertaking.

It is for all these reasons that wine and spirits—beverages so carefully crafted for a specific flavor—continue using glass bottles for most products.

### C. The Fees Imposed on Glass Bottles Are Disproportionately High and Make Little Sense Given Glass's High Recyclability

The fees imposed under the Act are largely the product of a weight-based formula rather than one that considers actual environmental impacts or established recycling patterns.  As a result, producers primarily using glass bottles are at a significant disadvantage compared to producers primarily using plastic bottles.  Indeed, the fees levied on a standard glass wine or spirits bottle are more than **eight times higher** than the fees imposed on a plastic bottle the same size.

Circular Action Alliance ("CAA"), the Producer Responsible Organization ("PRO") for Oregon and other states, issued a financial report in 2025 (the "2025 CCA Report") that included

---

[18] Paul Williams, *Business in the Glass Age*, L.A. Times (May 17, 2026, at 1:59 AM), https://www.latimes.com/b2b/consumer-goods-retail/story/2026-05-17/switching-to-glass-packaging-roi.

[19] *See* 27 CFR § 4.72 (wine) and 27 CFR § 5.203 (spirits).

[20] *See* 27 § CFR 4.71 (wine) and 27 CFR § 5.202 (spirits).

Page 9 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES
4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

a 2025 Oregon Producer Fee Schedule.[21]  The rate applied to most plastic bottles was 12¢ per pound and the rate applied to most glass bottles was 11¢ per pound.  While that seems close, it is important to consider that the average weight of a *glass* 750 ml wine bottle is 550 grams[22] whereas the average weight of a *plastic* 750 ml wine bottle is 49 grams.[23]  Applying the fees above means a producer must pay about **13¢ per glass bottle** in fees but **less than 2¢ per plastic bottle** (about $0.0156).  There is no legitimate policy reason to justify penalizing glass with such disproportionately high rates.

Further compounding concerns over disproportionate fees, is the fact that glass is highly recyclable and sustainable.  For example, glass is 100 percent recyclable, 80 percent of the glass that is recovered is made into new glass products, recycled glass can be used in the place of 95 percent of raw materials, and glass containers can be recycled into new products on the shelf within 30 days.[24]  Penalizing glass with exorbitant fees as compared to other materials like plastic makes no sense and is wholly contrary to the stated purpose of the Act.

**D.     The Fees Imposed on Glass Bottles Create a Perverse Incentive to Use More Plastic**

Oregon has been a model success story for glass recycling.  The draconian fees imposed under the Act, however, are creating a perverse incentive for producers to turn to plastic materials because the fee structure favors them by a large margin.

---

[21] Circular Action Alliance Oregon, *CAA Annual Report 2025: Oregon* 59-60 (2025), https://recycleon.org/caa-annualreport25-oregon/.

[22] *See International Bottle Weight Accord: Sustainable Wine Round table*, Infowine (Oct. 25, 2023), https://www.infowine.com/en/international-bottle-weight-accord-sustainable-wine-round-table/.

[23] *See, e.g.*, *750ml Plastic Wine Bottle - Standard BVS 30H60,* Petainer, https://www.petainer.com/pet-plastic-bottles/wine-bottles/750ml-pet-wine-bottle-standard-bvs-30h60 (last visited July 10, 2026).

[24] *Facts About Glass*, Glass Packaging Inst., https://www.gpi.org/facts-about-glass (last visited July 10, 2026).

Page 10 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES
4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

Oregon has the best glass recycling redemption rate in the nation, with an average redemption rate of 78 percent that is even higher some years.[25] If glass is taxed dramatically higher than plastic, producers may need to consider changing packaging to materials that are simply not recycled as easily or frequently. Moving off glass and over to plastic would be contrary to the legislative intent underlying the Act.[26] The high glass fees are even more remarkable considering the 2025 CAA Report recognizes that overall glass recycling goals were nearly achieved under the preexisting recycling system. The 2025 CAA Report also acknowledges that Oregon was already recovering 38,000 tons of glass annually before the Act took effect, exceeding 90 percent of the EPR program's 41,000-ton target.[27] This was all under the preexisting recycling systems, as the report acknowledges: "[g]lass was not collected through the operational RecycleOn Centers in 2025."[28]

Wine and spirits are not the only industries to raise these concerns. The Glass Packaging Institute has raised similar concerns, including with CAA, legislators, and Oregon's Department of Environmental Quality ("DEQ").[29] In describing the exorbitant fees on glass, Glass Packaging Institute's CEO observed:

> This has led to a situation where glass using brands are inappropriately paying for transportation in the existing glass system and to build out the expensive new statewide depot system simultaneously. [¶] Furthermore, we are concerned that Oregon DEQ regulations are leaning toward outcomes that the legislature

---

[25] Hannah Wallace, *Shattered Glass*, Or. Bus. (Jan. 4, 2024), https://oregonbusiness.com/shattered-glass/.

[26] Or. Rev. Stat. § 459A.860 (Legislative Findings).

[27] Circular Action Alliance Oregon, *supra*, at 26.

[28] *Id.*

[29] Scott DeFife, *The High Cost of the Oregon Outlier*, 49 Glass International, vol. 49, Feb. 2026, at 45–46, https://flickread.com/edition/html/69a0451591b3f#47.
.

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

did not intend - making it more costly to use glass for food and beverage consumers so that the packaging market brands subsidise aggregate markets, such as ground glass pozzolan concrete substitutes, because that would compare favourably to using regular cement to make concrete.[30]

The wine and spirits industries are fully supportive of the objective to create more sustainable products and encourage more waste reuse and reduction. However, disproportionately taxing materials that are already being successfully recycled in the state will create the unintended effect of pushing producers to plastics and other materials that are not as frequently recycled. In sum, the current structure of the Act and its unfair treatment of glass penalizes wine and spirits producers, risks increasing the amount of plastic in the state and reducing the overall recyclability of beverage products in the state, and may result in consumers being penalized by losing access to their preferred and higher-quality material for wine and spirits, resulting in harm to the state and its recycling system, consumers, and wine and spirits producers.

### E.    Consumers From Other States Inevitably and Unfairly Bear the Cost in Violation of the Commerce Clause

The Act has also created a system whereby consumers from other states are paying the costs for Oregan recycling programs in violation of the dormant Commerce Clause. *See West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186 (1994).  In *West Lynn Creamery*, the Court found that fees levied against both in- and out-of-state parties that would be used solely for the benefit of the in-state parties violated the Commerce Clause.  Similarly, the way the Act has been implemented, out-of-state consumers will inevitably be paying for Oregon's new in-state recycling programs.

*Amici*'s respective members have reported that the fees imposed have been calculated in an opaque manner, were far higher than anticipated, imposed with a short time frame to pay, and

---

[30] *Id.* at 46.

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

with no mechanism to contest them. While the plaintiffs in the present case have enjoyed a preliminary injunction enjoining enforcement of the Act since February, wine and spirits producers have continued to struggle with these opaque and unfair fees. The first bills were received in July 2025, the second in January 2026, and the most recent just earlier this month. These bills have created an industry-wide hardship for a number of reasons. First, they were far higher than anyone anticipated. Many producers reported that those first bills were well into six figures and one producer who only sells two brands reported that their first bill was more than $75,000. Second, the fees were required to be paid within 30 days. That might be a reasonable timeframe for paying your dentist or accountant for agreed upon services rendered, but it is outrageous to demand that payment schedule for unexpected fees that exceed six figures for many producers. This leaves businesses with no ability to plan and accommodate these costs into a state-specific business model.

This is even more challenging for highly regulated wine and spirits businesses that largely cannot control most of their prices on a state-by-state basis. State laws mandate that wine and spirits must be sold through a "three-tiered system"—i.e., from (1) producers to (2) wholesalers and then to (3) retailers. Most wine and spirits producers are unable to change their wholesalers due to state franchise laws and long-term, multi-state contracts. State franchise laws strictly prescribe the only conditions under which a producer may terminate a wholesaler agreement.[31] This structure makes it impossible to pass the costs of large, opaque fees in one state to only the consumers in that state. As a result, wine and spirits consumers in California, Washington, Idaho, Utah, Colorado, and elsewhere will unfairly be paying the cost to recycle plastics and other materials being used in other products in Oregon.

---

[31] For more on state franchise laws see *Monopoly Protection & Other Wholesaler Issues*, Wine Institute, https://wineinstitute.org/our-work/policy/state/wholesale/ (last visited July 10, 2026).

Page 13 - AMICUS CURIAE BRIEF OF WINE INSTITUTE AND DISTILLLED SPIRITS COUNCIL OF THE UNITED STATES

4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

## IV.    CONCLUSION

Wine and spirits producers are committed to sustainable practices and support the overall goals of the Act. However, *amici* are concerned that the Act has significant Commerce Clause issues as in practice it favors some in-state producers over others and creates a system whereby out-of-state consumers will inevitably bear the cost of the program. Furthermore, the implementation of the Act has disproportionately taxed heavier materials like glass even though these materials are already being successfully recycled in the state.  This is creating a perverse incentive to use less sustainable materials that happen to be lighter, contrary to the core objectives of the Act and harming consumers.

For the foregoing reasons, *amici* respectfully request that the Court grant appropriate relief.

DATED this 10th day of July, 2026.

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ Olivier Jamin*

Olivier Jamin, OSB #173805
olivierjamin@dwt.com
Telephone: (503) 241-2300
Facsimile: (503) 778-5299
Attorneys for [Proposed] Amici Curiae The Wine Institute and The Distilled Spirits Council of the United States

4924-8032-0188v.5 0050033-006316

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax