DAN RAYFIELD
Attorney General
SARA D. VAN LOH #044398
Senior Assistant Attorney General
ALEXANDER C. JONES #213898
YOUNGWOO JOH #164105
Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Sara.VanLoh@doj.oregon.gov
Alex.Jones@doj.oregon.gov
YoungWoo.Joh@doj.oregon.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NATIONAL ASSOCIATION OF WHOLESALER-DISTRIBUTORS ,

Plaintiff,

v.

LEAH FELDON, DIRECTOR, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, in her official capacity,

Defendant.

Case No. 3:25-CV-01334-SI

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR STAY PENDING APPEAL

## I. INTRODUCTION

NAW's Motion for Stay Pending Appeal seeks a new injunction—one that would grant NAW members an exclusive exemption from the RMA for the duration of NAW's appeal. But

the Court held a five-day trial and has rejected NAW's claims. While NAW frames its motion as seeking to "reinstate" the preliminary injunction, this case is no longer at a preliminary stage, and NAW is not seeking a short-term injunction. NAW must show that the *new* injunction it seeks is justified *now*. It is not.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(d), "[w]hile an appeal is pending from [a] final judgment that . . . refuses [or] dissolves . . . an injunction," a district court "may . . . restore[] or grant an injunction." Fed. R. Civ. P. 62(d).

"To determine whether to grant an injunction pending appeal, [a] court applies the test for preliminary injunctions." *Szanto v. JP Morgan Chase Bank, NA*, No. 3:18-cv-939-SI, 2022 WL 377896, at *1 (D. Or. Feb. 8, 2022) (quoting *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 (9th Cir. 2021)). An injunction pending appeal is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* The party seeking the injunction "generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) that an injunction is in the public interest." *Id.* Under the Ninth Circuit's "sliding scale" approach, an injunction can issue "where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Id.*; *Doe*, 19 F.4th at 1177.

While NAW frames their motion as a "Motion for Stay," the motion itself seeks an injunction. (Pl.'s Mot. for Stay Pending Appeal at 1.) That is, NAW is "seeking not merely a *stay* of a lower court judgment, but an *injunction* against the enforcement of a presumptively valid state statute." *See Nken v. Holder*, 556 U.S. 418, 429 (2009) (emphasis added). "A stay simply suspends judicial alteration of the status quo, while injunctive relief grants judicial intervention that has been withheld by lower courts." *Id.* (citation modified). NAW's request for an injunction is subject to the standard for an injunction pending appeal.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Even if NAW were seeking only a stay, that would not lessen NAW's burden. A motion for stay is governed by substantially similar factors as a motion for injunction,[1] and it is subject to "[t]he same sliding scale approach."[2] *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006–07 (9th Cir. 2020). While the Ninth Circuit has noted that the sliding scale's "flexible approach" is "even *more* appropriate in the stay context," that is because "stays are typically less coercive and less disruptive than are injunctions." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).

## III. ARGUMENT

NAW has not shown the required elements for an injunction pending appeal. First, NAW's claims are not likely to succeed, nor has NAW shown that there are serious questions going to the merits. NAW's motion merely repeats arguments that this Court has already thoroughly considered and rejected. Second, NAW has not shown that it is likely to suffer irreparable harm by being required to comply with the RMA. Rather than protecting NAW members from *harm*, NAW's injunction would grant its members a unique market advantage over their fee-paying competitors. Third, the balance of equities tips sharply against the injunction. The injunction would deprive the RMA program of millions of dollars, likely for years to come, with all other obligated producers forced to cover the difference. Meanwhile, NAW's unfair market advantage would likely divert market share from its RMA-complying competitors. For all of those reasons, NAW's motion should be denied.

[1] "In deciding a motion to stay an order pending appeal, [courts] consider: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Al Otro Lado*, 952 F.3d at 1006–07 (quoting *Nken*, 556 U.S. at 434).

[2] Under the sliding scale approach, a movant for a stay must show at least that "irreparable harm is probable," "a substantial case on the merits," and that "the balance of hardships tips sharply in the [movant's] favor." *Leiva-Perez*, 640 F.3d at 970. The "substantial case on the merits" standard for stays is "essentially interchangeable" with the "serious legal questions" standard for injunctions. *Id.* at 964, 967–68.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**A. NAW has not shown a likelihood of success or serious questions going to the merits.**

A plaintiff seeking an injunction pending appeal "generally must show that . . . the plaintiff is likely to succeed on the merits." *Szanto*, 2022 WL 377896, at *1. Under the Ninth Circuit's "sliding scale" approach, if "the balance of hardships tips sharply in [plaintiff's] favor," the plaintiff must still show at least "serious questions going to the merits." *Id.*; *Doe*, 19 F.4th at 1177. Here, NAW has shown neither a likelihood of success nor serious questions going to the merits.

NAW's claims are not likely to succeed. This Court has already concluded that NAW's claims failed, and NAW's motion does not ask the Court to change its mind. (*See* Pl.'s Mot. at 6 ("The Court need not reconsider its conclusions in the Trial Order or determine that reversal is more likely than not.").) Instead, NAW relies on the "serious questions" standard, or the equivalent "substantial case" standard. (*Id.*); *see Leiva-Perez*, 640 F.3d at 967–68 ("substantial case" and "serious legal questions" are "essentially interchangeable").

Even if NAW could show that the balance of hardships tips sharply in its favor—which it cannot—NAW has not made a showing of serious questions. Although this Court found that there were serious questions at a preliminary stage, NAW cannot show that is now the case. After a five-day trial, this Court issued a 71-page opinion with extensive findings and conclusions, thoroughly addressing NAW's evidence and arguments. There are no remaining unanswered serious questions. *See A & B Steel Shearing & Processing, Inc. v. United States*, 174 F.R.D. 65, 69–70 (E.D. Mich. 1997) ("[W]ith respect [to] the [likelihood-of-success] element, the movant has a significantly heavier burden showing that such an element is present at the appeal stage than at the preliminary injunction stage due to the fact that the court has issued a decision on the merits which denied the movant's requested relief.").

As to the merits, NAW repeats arguments that this Court has rejected and attempts to re-raise questions that this Court has already answered. Indeed, NAW itself acknowledges that the Court "addressed each of th[o]se questions with care." (Pl.'s Mot. at 17.) Given the thoroughness



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

of the Court's opinion, and the multiple, overlapping reasons that NAW's claims failed at trial, NAW cannot meet its burden to establish a likelihood of success on the merits.

### 1. Dormant Commerce Clause

With regard to the dormant Commerce Clause, NAW reasserts its *Pike* balancing test argument: that the RMA imposes a substantial burden on interstate commerce that is clearly excessive in relation to the law's putative benefits. (Pl.'s Mot. at 6–9.) This Court rejected that argument for multiple reasons, concluding that NAW had not shown a substantial burden, and that even if NAW had made such a showing, the burden was not clearly excessive. (Findings of Fact and Conclusions of Law, ECF No. 205 ("Trial Order") at 51–53.) NAW's renewed arguments do not undermine the Court's reasoning on either of those elements.

The Court correctly concluded that NAW had not shown a substantial burden on interstate commerce. As the Court explained, and as NAW itself acknowledges, the dormant Commerce Clause "protects the interstate market, not particular interstate firms from . . . burdensome regulations." (Trial Order at 52 (quoting *Flynt v. Bonta*, 131 F.4th 918, 932 (9th Cir. 2025), *cert den.*, 146 S. Ct. 1490 (2026)); Pl.'s Mot. at 7.) Thus, NAW's "anecdotal evidence" of compliance costs incurred by its members does not establish a substantial burden. (Trial Order at 52.) While NAW's motion points to witness testimony about broader impacts, none of that testimony "quantif[ied] the theoretical interstate effect of the RMA." (*Id.*) As the Court further noted, even if the costs of the RMA might cause companies to re-route operations or raise prices, "[i]n our interconnected national marketplace, . . . many (maybe most) state laws have the 'practical effect' of controlling extraterritorial behavior." (*Id.* (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374 (2023)).) While NAW argues that extraterritoriality is a separate inquiry from *Pike* balancing, that argument misses the point. (*See* Pl.'s Mot. at 8.) The fact remains that NAW failed to present evidence sufficient to show a substantial burden on interstate commerce.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

And “even if NAW had made the requisite threshold showing, the RMA’s supply chain burdens are not ‘clearly excessive’ in relation to the putative benefits to Oregon.” (Trial Order at 52.) NAW argues that Oregon “has yet to quantify many of the law’s anticipated environmental benefits.” (Pl.’s Mot. at 9.) But *Pike* balancing does not require the State to prove “the actual benefits” of a law. *Nat’l Ass’n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1155 (9th Cir. 2012). “[U]nless the benefits of the state’s law are ‘illusory,’ courts typically accept the state’s articulation of the law’s claimed benefits.” *Flynt*, 131 F.4th at 925.

Here, as the Court recognized, “Oregon has a great and longstanding interest in protecting its citizens from the externalities created by waste and products at the end of their life . . . .” (Trial Order at 52.) The RMA is an exercise of the state’s “fundamental police powers” of “mitigating waste pollution and protecting the health and safety of its citizenry.” (*Id.* at 52–53.) And at trial, DEQ showed that the RMA serves those interests in a variety of ways, including by providing funding for local governments and their service providers, establishing recycling depots and drop-off centers, funding the transportation of covered products, and funding educational resources and promotional campaigns. (*See* Trial Ex. 15 at 20–189 (“Operations Plan” section of CAA Oregon Program Plan).)

NAW cannot show—and does not contend—that those benefits are “illusory.” *See Flynt*, 131 F.4th at 925. Instead, NAW argues that *Pike* requires consideration of whether there are “alternatives” for serving the State’s interests that would have “‘a lesser impact on interstate activities.’” (Pl.’s Mot. at 9 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).) But as more recent applications of *Pike* confirm, “an examination of alternatives” is required only if the law itself is “discriminatory.” *Nat’l Ass’n of Optometrists*, 682 F.3d at 1157 (citing *Dep’t of Revenue v. Davis*, 553 U.S. 328, 338–39 (2008)). “[T]he dormant Commerce Clause does not impose a ‘least burdensome’ requirement for state laws.” *Ass’n des Eleveurs de Canards et d’Oies du Quebec v. Bonta*, 33 F.4th 1107, 1119 (9th Cir. 2022). “[C]ase law requir[es] the consideration of less restrictive alternatives only when heightened scrutiny is required.” *Pharm.*



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Research & Mfrs. of America v. Cnty. of Alameda*, 768 F.3d 1037, 1045 n.4 (9th Cir. 2014). "Because the [RMA] is not discriminatory and does not directly regulate interstate commerce, heightened scrutiny is not required." *See id.* (*See also* Trial Order at 39–49 (concluding that the RMA is not discriminatory).)

**2. Due Process**

NAW's motion also reasserts NAW's due process arguments. (Pl.'s Mot. at 9–17.) The Court has extensively considered and correctly rejected those arguments. (Trial Order at 53–71.) Nothing in NAW's renewed arguments calls the Court's conclusions into question.

Much of NAW's due process argument focuses on the threshold question of whether NAW has a protected property interest. (Pl.'s Mot. at 9–12.) This is the one element that the Court itself concluded was a "close call," and it accordingly assumed this element in NAW's favor. (*See* Trial Order at 59–60 ("[T]he Court will assume without deciding that NAW had satisfied the threshold requirement of showing a protected property interest.").) Thus, even if NAW's arguments were correct, a different outcome on this question would not have affected the outcome of the case.

Even with that assumption, the Court rejected NAW's due process arguments for multiple reasons. As the Court explained, NAW's arguments were undermined by the fact that "the RMA does not require that producers join CAA; producers may form their own PRO or avail themselves of the RMA's private recycling rule." (*Id.* at 61.) NAW's motion again attempts, and fails, to show that all of those alternative options are illusory. While NAW argues that private recycling is not available for all products (Pl.'s Mot. at 13–14), NAW has not shown that it would be infeasible to form another PRO that would cover those products, especially given that "DEQ . . . has never denied any PRO application (including one from any of NAW's members)." (*See* Trial Order at 61.) NAW's motion adds nothing new.

NAW then reasserts its arguments that DEQ does not exercise meaningful oversight over how fees are set. (Pl.'s Mot. at 14–15.) The Court thoroughly addressed these arguments too.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(Trial Order at 63–67.) As the Court recognized, DEQ retains ultimate decision-making authority over how fees are calculated. (*See id.* at 66 ("What matters for the constitutional inquiry is that DEQ is the body that ultimately approved the fee-setting methodology, including the CTM values.").)

NAW also reasserts its arguments about whether the RMA affords sufficient procedural safeguards against erroneous deprivation of property. (Pl.'s Mot. at 15–17.) The Court has already rejected those arguments for multiple reasons. As for the payment of PRO membership fees, the Court correctly found that those fees do not amount to a "property deprivation," because "NAW members' participation in CAA is voluntary," given the alternatives to joining CAA noted above. (Trial Order at 68.)

Further, the Court correctly concluded that the RMA affords sufficient procedural safeguards. (Trial Order at 68.) NAW again argues that CAA's contracts and the arbitration provision of CAA's Oregon Addendum deprive NAW members of due process. (Pl.'s Mot. at 16–17.) The Court rejected these arguments for multiple reasons, explaining that arbitration itself can provide due process, that the arbitration requirement here is not derived from the RMA, and that the Oregon Addendum itself permits a producer to ask a court to enjoin arbitration proceedings while DEQ enforcement proceedings play out. (Trial Order at 70.) NAW's motion simply ignores that injunctive-relief provision. Further, while NAW argues that the RMA provides no authority for DEQ to act against a PRO that issues an erroneous invoice (Pl.'s Mot. at 16), NAW omits that the RMA provides enforcement mechanisms against PROs as well as producers. *See* ORS § 459A.962(3) (authorizing DEQ to "issue an order requiring compliance with the [RMA]"), (5) (authorizing DEQ to "suspend or revoke a producer responsibility program plan" for certain violations). As for enforcement against producers themselves, the Court correctly found that there are "substantial procedural protections" before the issuance of any civil penalty and "the risk of erroneous deprivation is minimal." (Trial Order at 70.)



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

In short, given the multiple reasons that NAW's due process claim failed, NAW's attempt to undermine the Court's conclusions faces a steep uphill battle. NAW's motion fails in that attempt.

**B. NAW is not likely to suffer irreparable harm absent an injunction.**

NAW has not shown that it is "likely to suffer irreparable harm" in the absence of an injunction. *See Szanto*, 2022 WL 377896, at *1. The direct effect of the requested injunction would be to bar DEQ from seeking civil penalties or taking other enforcement actions against NAW or its members. NAW has offered no evidence that DEQ is proceeding to initiate enforcement against any NAW member. And even if DEQ were to initiate enforcement proceedings against any producer, Oregon law would provide "substantial procedural protection," and "no penalty payment [would be] due to DEQ until all appeals have been exhausted." (Trial Order at 70–71.)

To the extent that NAW members would rely on the injunction to avoid payment of PRO membership fees, the asserted harms from paying those fees are merely the economic effects of complying with the same valid regulations as all other similarly situated producers. Even if NAW could show that its members' RMA costs would be irrecoverable, those impacts must be considered in a broader context. Specifically, if NAW members were exempted from PRO fees, their non-NAW competitors would still be subject to those fees. As a result, rather than shielding NAW members from *harms* caused by the RMA, NAW's injunction would grant NAW's members a unique market advantage over their competitors. The status quo after this Court's judgment is that the RMA is valid and enforceable.

The new declarations from NAW members only undermine their own assertions of harm. The declarations show that at least some of NAW's members are withholding fees even without an injunction. (Decl. of Cory Rodriguez ¶ 5, ECF No. 212-2 ("RJ Schinner has not paid any of the invoice[s] CAA has issued to it.").) Further, at least some of the costs incurred by NAW



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

members appear to stem not from the RMA, but rather from members misinterpreting their obligations.

For example, Mr. Winkle asserts that if upstream suppliers "disregard Oregon's EPR requirements" for a product, then Harbor Foods must "report and pay for that product itself." (Decl. of James Winkle ¶ 10, ECF No. 212-3.) That is not how the RMA works. The RMA designates one obligated producer for each product type. ORS § 459A.866. If a supplier is the obligated producer for a product, and that supplier refuses to pay fees, then the supplier is out of compliance with the RMA, but the supplier is still the obligated producer. The supplier's failure to pay does not turn downstream entities into obligated producers. To the extent that NAW members are erroneously reporting and paying fees on products for which they are not the obligated producer, those costs are self-incurred.

**C. The balance of equities tips sharply against an injunction.**

Under the third and fourth factors, NAW must show that "the balance of equities tips in favor of [NAW]" and that "an injunction is in the public interest." *Szanto*, 2022 WL 377896, at *1. Where the government is the party opposing the injunction, the balance of equities factor and the public interest factor merge. *Bark v. U.S. Forest Serv.*, No. 3:18-cv-01645-MO, 2019 WL 2344771, at *3 (D. Or. June 3, 2019). Because NAW is relying on a purported showing of "serious questions going to the merits," NAW must show that "the balance of hardships tips *sharply* in [NAW's] favor." *See Szanto*, 2022 WL 377896, at *1 (emphasis added); *Doe*, 19 F.4th at 1177.

Here, the balance of equities tips sharply against an injunction. For this factor, NAW again attempts to tie this Court to its findings from the preliminary injunction stage. (Pl.'s Mot. at 17–19.) But as with the likelihood-of-success factor, NAW must show that "the balance weighs in favor of granting the injunction *now*, regardless of if [it] weighed in favor of granting a preliminary injunction previously." *See A & B Steel*, 174 F.R.D. at 69 (emphasis added). The Court's finding on the equities of the *preliminary* injunction was expressly premised on that



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

injunction being a short-term remedy, subject to an expedited trial schedule.[3] While NAW argues that the earlier injunction caused only "minimal" harm to the RMA program, NAW ignores that the shortness of that injunction was expressly designed to limit such harm. (*See* Pl.'s Mot. at 18.) As the Court explained, the equities "would be different if we were talking about delaying this a year or two or three." (*See* Feb. 6, 2026 Hr'g Tr. at 98:7–8.)

NAW is now seeking a longer injunction. An injunction pending appeal could easily last a year or more as the case works its way through the Ninth Circuit and (potentially) the Supreme Court.[4] Withholding millions of dollars in fees every year for the duration of an appeal would thus have a cumulative impact far greater than a preliminary injunction that barely lasted for a half-year billing cycle. Further, contrary to NAW's assertion, CAA is actively managing program funds, including reserves. It is not "sitting on" $90 million in reserve and surplus funds that it could use to cover for NAW members' fees, without any harm to the program. (*See* Pl.'s Mot. at 18.)[5] Indeed, CAA is already in the process of returning approximately $80 million in program reserves to producers through reduced fee rates for 2027. (*See* Decl. of Kimberly A.

[3] (*See* Feb. 6, 2026 Hr'g Tr. at 98:3–19 ("There are some articulated equities that tip in favor of plaintiff, but I see nothing to counterbalance that on behalf of defendant, provided we get to trial and make a decision soon. This would be different if we were talking about delaying this a year or two or three, but the trial is going to be set—and firmly set—to begin on Monday, July 13th . . . I think that if we move expeditiously to trial, and I move expeditiously to get you a decision, there will not be any seriously adverse repercussions to the implementation of the plan, and therefore the balance of equities tip sharply in favor of the plaintiff.").)

[4] *See, e.g.*, *Capitol Specialty Ins. Corp. v. Colo. River Consulting Inc.*, No. CV-21-00858-PHX-ROS, 2026 WL 1020667, at *7 n.4 (D. Ariz. Apr. 15, 2026) ("For the fiscal year ending September 30, 2024, the median time interval for cases decided on the merits to proceed through the appellate process in the Ninth Circuit from filing a notice of appeal to final disposition was 12.7 months.").

[5] The $90 million figure that NAW cites does not represent the actual amount of reserves accumulated by CAA. Rather, it represents the difference between CAA's projected and actual spending for 2025, without taking into account the difference between projected and actual revenue or the amount set aside as earmarked reserves. (*See* Tr. Ex. 97 at 63 (2025 budget compared with actual expenditures and revenue), 67 (earmarked funds raised against specific budget items "must be reserved for either investment or a producer fee reduction against that specific budget item").) In any event, regardless of the exact amount of current reserves, CAA's active management of those funds shows that a significant reduction of revenue would have real impacts, as explained below.



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Holmes in Support of Defs.' Opp. to Pl.'s Mot. for Stay Pending Appeal ¶¶ 2–4, Ex. A (2027 Oregon Producer Fees Schedule).)[6] A significant reduction of program funds would have significant impacts on the program and potentially on the fee rates that other producers would have to pay to cover for NAW members. Notably, at least some of NAW's members *have paid nothing into those funds*. (*See* Decl. of Cory Rodriguez ¶ 5, ECF No. 212-2 ("RJ Schinner has not paid any of the invoice[s] CAA has issued to it.").) Thus, at bottom, NAW's injunction would result in others picking up its members' tabs.

Indeed, an injunction would impact not only the program itself but also the non-NAW producers who would be subsidizing NAW's free ridership under its injunction. Even if CAA *could* cover the losses without impacts on fee rates or program activities, the injunction would grant NAW members a unique market advantage over their fee-paying competitors. Specifically, competitors would still be subject to those fees, requiring those competitors to absorb costs and increase prices, allowing NAW's members to undercut with lower prices and to enjoy larger profits. In addition to that unfair market advantage, NAW's Oregon members would enjoy the benefit of infrastructure improvements funded by their competitors without paying their fair share. And for all NAW's arguments about threatened loss of customers and goodwill (*see* Pl.'s Mot. at 4–5), NAW's injunction would enable its members to scoop up customers from their fee-paying rivals.

In short, NAW's injunction would not "restore the status quo." (*See* Pl.'s Mot. at 2, 17–18.) To the contrary, the Court's judgment on the merits has already restored the status quo. The status quo, at the time NAW filed this suit and for several months afterward, was that all obligated producers were subject to the RMA, whether NAW members or not. The Court's preliminary injunction temporarily altered that status, with the express intention of keeping the

---

[6] The 2027 Oregon Producer Fees Schedule is also publicly available online. (*See* Decl. of Kimberly A. Holmes ¶ 2; Circular Action Alliance, 2027 Oregon Producer Fees Schedule (2026), https://perma.cc/4S6G-RJGE.)



Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

alteration brief so as to limit any disruption, while the Court decided the merits. *See Turner Broadcasting Sys., Inc. v. F.C.C.*, 507 U.S. 1301, 1302 (1993) ("By seeking an injunction, applicants request that I issue an order *altering* the legal status quo."). Now, after NAW's claims have failed on the merits, NAW is seeking a new, lengthier injunction that would deprive the RMA program of millions of dollars and grant NAW members a privileged place in the market, likely for years. The balance of equities tips sharply against that injunction.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Stay Pending Appeal should be denied.

DATED October 30, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s. Alexander C. Jones*

SARA D. VAN LOH #044398
Senior Assistant Attorney General
ALEXANDER C. JONES #213898
YOUNGWOO JOH #164105
Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov
Alex.Jones@doj.oregon.gov
YoungWoo.Joh@doj.oregon.gov
Of Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on October 30, 2026, I served the foregoing by email **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR STAY PENDING APPEAL** upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Darin Sands<br>Bradley Bernstein Sands LLP<br>1211 NW Glisan Street, Ste 204<br>Portland, OR 97209<br>*Of Attorneys for Plaintiff* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>_x_ E-MAIL<br>___ E-SERVE<br>*dsands@bradleybernsteinllp.com* |
| David R. Carpenter<br>Caleb J. Bowers<br>Sidley Austin LLP<br>350 South Grand Avenue<br>Los Angeles, CA 90071<br>*Of Attorneys for Plaintiff* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>_x_ E-MAIL<br>___ E-SERVE<br>*drcarpenter@sidley.com*<br>*cbowers@sidley.com* |
| Gordon D. Todd<br>Richard W. Smith<br>Sidley Austin LLP<br>1501 K Street, N.W.<br>Washington, DC 20005<br>*Of Attorneys for Plaintiff* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>_x_ E-MAIL<br>___ E-SERVE<br>*gtodd@sidley.com* |

*s/ Alexander C. Jones*

SARA VAN LOH #044398
Senior Assistant Attorney General
ALEXANDER C. JONES #213898
YOUNGWOO JOH #164105
Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov
alex.jones@doj.oregon.gov
Of Attorneys for Defendants